1  HANSON BRIDGETT LLP
   DAVINA PUJARI, SBN 183407
2  dpujari@hansonbridgett.com
   CHRISTOPHER A. RHEINHEIMER, SBN 253890
3  crheinheimer@hansonbridgett.com
   SAMIR J. ABDELNOUR, SBN 271636
4  sabdelnour@hansonbridgett.com
   MELISSA M. MALSTROM, SBN 314012
5  mmalstrom@hansonbridgett.com
   425 Market Street, 26th Floor
6  San Francisco, California 94105
   Telephone:    (415) 777-3200
7  Facsimile:    (415) 541-9366

8  Attorneys for Tetra Tech EC, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JAHR, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH EC, INC.,<br><br>Defendant. | Case No. 3:13-CV-03835 JD<br><br>**DEFENDANT TETRA TECH, EC INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT IN INTERVENTION (FRCP 12(b)(1), 12(b)(6))**<br><br>Date: October 31, 2019<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

| | Page |
|---|---:|
| I. INTRODUCTION | 1 |
| II. PLAINTIFF'S SOIL SAMPLE ALLEGATIONS DO NOT STATE A CLAIM FOR RELIEF UNDER THE FCA | 2 |
|     A. Plaintiff cannot demonstrate that TtEC made a false claim or statement to the Navy. | 2 |
|     B. The Navy's undisputed conduct demonstrates that the alleged false claims or statements were not material to the Navy's payment decisions. | 4 |
| III. PLAINTIFF'S BUILDING SCAN ALLEGATIONS DO NOT STATE A CLAIM FOR RELIEF UNDER THE FCA | 5 |
| IV. PLAINTIFF'S ALLEGATIONS DO NOT SATISFY THE FCA'S SCIENTER REQUIREMENT | 7 |
| V. THE COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIMS | 9 |
| VI. CONCLUSION | 10 |

i     Case No. 3:13-CV-03835 JD

DEFENDANT TETRA TECH, EC INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT IN INTERVENTION (FRCP 12(b)(1), 12(b)(6))

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Soc'y of Mech. Engrs. v. Hydrolevel Corp.*
    456 U.S. 556 (1982) ..................................................................................................................7

*U.S. ex rel. Becker v. Tools & Metals, Inc.*
    3:05-CV-0627 & 3:05-CV-2301, 2009 WL 577604 (N.D. Tex. March 5, 2009) ......................10

*U.S. ex rel. Berg v. Honeywell Int'l, Inc.*
    740 F. App'x 535 (9th Cir. 2018), *cert. denied,* No. 18-1030, 2019 WL 485403
    (2019) .......................................................................................................................................9

*U.S. ex rel. Costner v. URS Consultants, Inc.*
    317 F.3d 883 (8th Cir. 2003) ....................................................................................................9

*Decker v. GlenFed, Inc.*
    42 F.3d 1541 (9th Cir. 1994) ....................................................................................................7

*U.S. ex rel. Durkin v. County of San Diego*
    300 F. Supp. 3d 1107, 1129 (S.D. Cal. 2018) ..........................................................................9

*U.S. ex rel. Dye v. ATK Launch Systems, Inc.*
    1:06-CV-39 TS, 2008 WL 4642164 (D. Utah Oct. 16, 2008) ................................................10

*In re Exxon Valdez*
    270 F.3d 1215 (9th Cir. 2001) ..................................................................................................8

*Grand Union Co. v. U.S.*
    696 F.2d 888 (11th Cir. 1983) ..................................................................................................7

*Harrison v. Westinghouse Savannah River Co.*
    176 F.3d 776 (4th Cir. 1999) ..................................................................................................10

*Hooper v. Lockheed Martin Corp.*
    688 F.3d 1037 (9th Cir. 2012) ..................................................................................................9

*U.S. ex rel. Jordan v. Northrop Grumman Corp.*
    CV 95-2985 ABC (EX), 2002 WL 35454612 (C.D. Cal. Aug. 5, 2002) ................................10

*Neubronner v. Milken*
    6 F.3d 666 (9th Cir. 1993) ....................................................................................................6, 7

*Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.*
  767 F.2d 1379 (9th Cir. 1985) ...................................................................................................8

*U.S. ex rel. Rosales v. San Francisco Hous. Auth.*
  173 F. Supp. 2d 987 ................................................................................................7, 8, 9

*U.S. ex rel. Shemesh v. CA, Inc.*
  89 F. Supp. 3d 67 (D.D.C. 2015) ...........................................................................................10

*U.S. ex rel. Swoben v. United Healthcare Ins. Co.*
  848 F.3d 1161 (9th Cir. 2016) ..................................................................................................7

*U.S. v. First Choice Armor & Equipment, Inc.*
  808 F. Supp. 2d 68 (D.D.C. 2011) ..........................................................................................10

*U.S. v. Fox Lake State Bank*
  240 F. Supp. 720 (N.D. Ill. 1965) .............................................................................................7

*U.S. v. Marovic*
  69 F. Supp. 2d 1190 (N.D. Cal. 1999) ................................................................................9, 10

*U.S. v. Menominee Tribal Enterprises*
  601 F. Supp. 2d 1061 (E.D. Wisc. 2009) ...............................................................................10

*U.S. v. O'Connell*
  890 F.2d 563 (1st Cir. 1989) .....................................................................................................7

*U.S. v. Ridglea State Bank*
  357 F.2d 495 (5th Cir. 1966) .....................................................................................................7

*U.S. v. Rockwell Int'l Corp.*
  795 F. Supp. 1131 (N.D. Ga. 1992) ........................................................................................10

*U.S. v. Salus Rehabilitation, LLC*
  304 F.Supp.3d 1258, 1263 (M.D. Fla. 2018) ...........................................................................5

*U.S. v. Scan Health Plan*
  No. CV-09-5013-JFW, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) .......................................9

*Universal Health Services v. U.S. ex rel. Escobar*
  136 S. Ct. 1989 (2016) ..........................................................................................................4, 5

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*
  529 U.S. 765 (2000) ..................................................................................................................8

*Williams v. Dep't of Veterans Affairs*
  No. 10-CV-1254-LAB (NLS), 2010 WL 3788843 (S.D. Cal. Sept. 22, 2010) .....................6, 7

**Federal Statutes**

United States Code, Title 31
 § 3279 ....................................................................................................................................4

Contract Disputes Act ........................................................................................................9, 10

False Claims Act ............................................................................................................. *passim*

**Other Authorities**

Federal Rules of Civil Procedure
 Rule 9 ....................................................................................................................................6

iv  Case No. 3:13-CV-03835 JD

DEFENDANT TETRA TECH, EC INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT IN INTERVENTION (FRCP 12(b)(1), 12(b)(6))

## I. INTRODUCTION

It is easy to understand why Plaintiff wants the Court to ignore the existence of the 2014 Investigation Report. But as much as Plaintiff begs the Court to ignore the 2014 Report—which Plaintiff concedes it will have to deal with at some point in this litigation—*it cannot ask the Court to ignore the contents of the reports identified on Exhibit 1 of its Amended Complaint*.[1] Plaintiff's Exhibit 1 reports establish unequivocally that the Navy and all relevant federal, state, and local regulatory agencies were aware of the 2014 Investigation Report, and Stephen Rolfe's and Justin Hubbard's admitted wrongdoing, within months after the 2014 Report was issued, if not earlier.

Plaintiff attempts to characterize the 2014 Investigation Report as "self-serving," but in doing so ignores the fact that the Report specifically identified the *exact* soil samples that were switched by Rolfe and Hubbard *three years before* they pleaded guilty to such conduct. The 2014 Investigation Report was therefore anything but "self-serving"—rather, it provided a roadmap for the years-long criminal investigation that led to the Rolfe and Hubbard guilty pleas, but did not result in the criminal prosecution of any other TtEC employee.

Regardless of the 2014 Investigation Report's admissibility, Plaintiff has failed to adequately plead the elements of a False Claims Act ("FCA") cause of action against TtEC. Specifically, Plaintiff has not sufficiently alleged that (1) TtEC submitted a false claim, or false statement in support of a claim, to the Navy for payment; (2) even if TtEC did submit a false claim or false statement in support of a claim for payment, it did so knowingly; or (3) any allegedly false information provided by TtEC was material to the Navy's payment decisions. Moreover, Plaintiff cannot rely on these insufficiently pleaded fraud claims to support this Court's jurisdiction over Plaintiff's breach of contract claims.

Plaintiff's Opposition cannot save the Amended Complaint. Indeed, Plaintiff fails to even address some of the most glaring deficiencies in the Amended Complaint, such as how the allegation regarding Jane Taylor in any way supports Plaintiff's FCA claim. Further, Plaintiff's attempt to re-write some of its factual allegations—such as Stephen Rolfe's role in building scan

---

[1] The 2014 Investigation Report is properly before the Court pursuant to the Request for Judicial Notice filed concurrently with TtEC's Motion.

1 data collection—improperly mischaracterizes the Amended Complaint.

Plaintiff's investigation into TtEC's alleged fraud is now in its seventh year. Yet, Plaintiff's allegations remain nothing more than a rehashing of conduct that TtEC reported to the Navy and corrected three years before that conduct was described in the Rolfe and Hubbard guilty pleas, coupled with vague allegations of building scan data duplication or manipulation that no TtEC employee is even alleged to have known about—let alone any TtEC employee involved in submitting claims to the Navy. If Plaintiff had sufficient facts to support its causes of action, it surely would have alleged them by now. Granting Plaintiff leave to amend again would be futile. Thus, the Amended Complaint should be dismissed with prejudice.

## II. PLAINTIFF'S SOIL SAMPLE ALLEGATIONS DO NOT STATE A CLAIM FOR RELIEF UNDER THE FCA

### A. Plaintiff cannot demonstrate that TtEC made a false claim or statement to the Navy.

Plaintiff's reliance on allegations of conduct by Rolfe, Hubbard, and Anthony Smith that was investigated and corrected by TtEC at no cost to the Navy does not support Plaintiff's FCA cause of action. *See* Mot. (ECF No. 97) at 6-8. Attempting to broaden the scope of its soil sample switching allegations, Plaintiff now contends: "The government's complaint specifically identifies eight parcels and 200 survey units where this type of soil switching occurred. . ." Opp. (ECF No. 107) at 3. Although Exhibit 1 to the Amended Complaint lists eight parcels and 200 survey units for which TtEC submitted reports to the Navy, the only *factual allegations* of soil sample switching in the Amended Complaint are those specific to Rolfe, Hubbard, and Smith, all of which are limited to five soil survey units. Indeed, the very next sentence in the Opposition confirms as much: "TtEC managers Hubbard and Rolfe admitted that *this* fraudulent conduct occurred and pleaded guilty to related federal crimes." *Id*. (emphasis added). Plaintiff has failed to tie its Exhibit 1 reports to the factual allegations in the Amended Complaint.

Plaintiff also completely ignores the fact that the TtEC reports identified in Exhibit 1 openly discuss the same soil sample switching Plaintiff now relies on to accuse TtEC of misrepresenting its work to the Navy. Those reports expressly state that the data from switched soil samples was *rejected* and *not used for remediation decisions*. *See, e.g.,* Pujari Decl. (ECF No.

DEFENDANT TETRA TECH, EC INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT IN INTERVENTION (FRCP 12(b)(1), 12(b)(6))

1   97-1), ¶ 5 and Ex. 3 (ECF No. 97-4) at 16 of 22 ("During review of the final sampling data, the
2   systematic samples were identified as having much lower 226Ra, bismuth-214 (214Bi), 214Pb,
3   and 40K activity than any of the previous samples collected from the same footprint. These results
4   appeared to suggest that the final systematic samples were not representative of the Survey Unit 1
5   soil, as stated in the Investigation of Anomalous Soil Samples report (TtEC 2014). Based on the
6   findings of a subsequent investigation, the set of systematic samples was rejected, and the results
7   were not used for remediation or final systematic sample decisions."), and 20–22 of 22; *see also*
8   Pujari Decl., ¶ 4 and Ex. 2 (ECF No. 97-3) at 16–17 of 17.

9   Thus, the Court need not rely on the 2014 Investigation Report—the Court can determine that TtEC did not misrepresent anything to the Navy merely by comparing the reports in Plaintiff's Exhibit 1 to the contents of the Rolfe and Hubbard plea agreements, which Plaintiff relies on in the Amended Complaint. *See* AC (ECF No. 82), ¶¶ 62–63. The 2014 Investigation Report merely provides relevant context tying statements in the Exhibit 1 reports to the statements describing soil sample switching in the Rolfe and Hubbard plea agreements. Although Plaintiff now spuriously disputes that the Navy was on notice of Rolfe's and Hubbard's criminal conduct long before their guilty pleas (*see* Opp. at 10), it cannot dispute that the reports identified in Exhibit 1 openly discuss TtEC's investigation, corrective actions, and rejection of data generated by Rolfe's, Hubbard's, and Smith's[2] criminal activities. Therefore, Plaintiff's FCA claim based on soil sample switching fails because the Amended Complaint does not contain factual allegations supporting Plaintiff's claim that TtEC misrepresented its work to the Navy. Put differently, if TtEC discussed Rolfe's and Hubbard's conduct with the Navy, then what did TtEC misrepresent to the Navy regarding such conduct?

Plaintiff also contends that the Amended Complaint goes "beyond the scope of Rolfe and

---

[2] Curiously, Anthony Smith was not criminally prosecuted despite admitting to engaging in criminal conduct. Rather, Plaintiff intervened on Smith's *qui tam* action against TtEC. Regardless, Smith's admitted soil sample switching, allegedly directed by Stephen Rolfe, occurred prior to the Navy's discovery of suspect samples and TtEC's subsequent investigation. Smith's conduct was identified and addressed during the investigation (RJN Ex. 1 [ECF No. 98-1] at 19 to 21 of 376 and Attachment 3 (page 171-227 of 376) and subsequent corrective actions. In fact, Smith's *qui tam* action itself relies upon the 2014 Investigation Report findings.

1  Hubbard's guilty pleas," because it "alleges that individuals working under Jane Taylor also took

2  soil samples from outside survey areas and improperly labeled them as though they had come

3  from a different survey area." Opp. at 4. However, as noted in TtEC's Motion to Dismiss, the

4  Amended Complaint does not allege who Jane Taylor is, what she did at Hunters Point, or who

5  knew about her alleged conduct. Plaintiff's Opposition completely ignores these fatal deficiencies.

6  These inadequately pleaded allegations cannot support Plaintiff's claims.

### B. The Navy's undisputed conduct demonstrates that the alleged false claims or statements were not material to the Navy's payment decisions.

Even if Plaintiff had adequately alleged that TtEC submitted false claims or false statements to the Navy for payment, Plaintiff cannot plead around the lack of materiality evidenced by the Navy's undisputed conduct in paying TtEC's invoices. As discussed in TtEC's Motion to Dismiss, the Navy continued paying TtEC invoices and awarding TtEC contracts at Hunters Point after being made aware of soil sample switching by Rolfe, Hubbard, and Smith. Mot. at 7-8. Moreover, within six months of receiving the 2014 Investigation Report, the Navy acknowledged the findings of the Report to the United States Environmental Protection Agency ("EPA"), California Department of Toxic Substances Control ("DTSC"), and other federal, state, and local agencies, and told those agencies that it had completed "technical review" of subsequently-submitted TtEC reports, which the Navy presented to the agencies as final. *See* Pujari Decl. ¶ 3 and Ex. 1 (ECF No. 97-2) at 2–4 of 12. If the criminal conduct of Rolfe and Hubbard "tainted" TtEC's Survey Unit Project Reports, as Plaintiff alleges (Opp. at 3), why did the Navy submit those reports to the regulators as final reports, while acknowledging TtEC's investigation, and after the Navy completed its own "technical review" of those reports?

Plaintiff asserts that "TtEC's falsification of soil samples unquestionably went to the essence of its bargain with the Navy and, thus, was 'material' within the meaning of the FCA." Opp. at 10 (citing 31 U.S.C. § 3279(b)(4) and *Universal Health Services v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2002-03 (2016) ("*Escobar*")). However, materiality under the FCA cannot be assumed "merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S. Ct. at 2003.

"*Escobar* rejects a system of government traps, zaps, and zingers that permits the government to retain the benefit of a substantially conforming good or service but to recover the price entirely—multiplied by three—because of some immaterial contractual or regulatory non-compliance." *U.S. v. Salus Rehabilitation, LLC*, 304 F.Supp.3d 1258, 1263 (M.D. Fla. 2018) ("*Salus*").

Plaintiff's argument that the Navy could just keep paying TtEC's numerous invoices with knowledge of the soil sampling addressed in the 2014 Investigation Report, only to come back five years later and demand treble damages under the FCA, contravenes *Escobar's* demanding materiality analysis. *Escobar*, 136 S. Ct at 2003 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."). Where, as here, the Navy was indisputably aware of the sampling issue addressed in TtEC's reports, yet it continued to pay, materiality is a significant barrier to an FCA claim. *Salus*, 304 F.Supp.3d at 1268 ("Every day that the government continues to pay for a good or service, notwithstanding some known or unknown non-compliance and, consequently, the greater the proposed repayment times three in the event of a successful False Claims Act action, the greater the practical impediment to proof of materiality."). Plaintiff's allegations fail to overcome this barrier.

## III. PLAINTIFF'S BUILDING SCAN ALLEGATIONS DO NOT STATE A CLAIM FOR RELIEF UNDER THE FCA

In its Opposition, Plaintiff contends: "The government has specifically identified representative examples of TtEC's data duplication, attaching TtEC's Alpha/Beta Scan Measurement Reports identifying duplicated strings of data found in building scans conducted in 2008 to 2010 and again in 2014. *See* FAC, Exhs. 4 and 5." Opp. at 5. However, the only dates that appear on the documents attached as Exhibits 4 and 5 to the Amended Complaint are from February 2009. Yet, the invoices identified in Exhibits 2 and 3 of the Amended Complaint, which allegedly include false claims relating to building scan duplication and or manipulation (AC, ¶ 95), collectively cover the time period from 2006 to 2018.

Even taking Plaintiff's allegation as true that "duplicated strings of data [were] found in building scans conducted in 2008 to 2010 and again in 2014" (Opp. at 5), Plaintiff has not alleged

which invoices TtEC submitted to the Navy were based on duplicated building scans, or which of the Exhibit 1 reports allegedly incorporate duplicated building scans. And Plaintiff has not alleged any facts or representative examples of building scan data duplication or manipulation for any time period other than February 2009, as demonstrated by Plaintiff's Exhibits 4 and 5. TtEC cannot determine which invoices or reports incorporate the allegations made in the Amended Complaint. Thus, Plaintiff has failed to allege building scan data duplication or manipulation with the requisite specificity to state a claim under the FCA. *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (Rule 9(b) requires "that allegations of fraud [be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *see also Williams v. Dep't of Veterans Affairs*, No. 10-CV-1254-LAB (NLS), 2010 WL 3788843, at *1 (S.D. Cal. Sept. 22, 2010) ("[T]he Court will not comb through the papers Plaintiff has submitted and create arguments for him.") (citation omitted).

The Opposition also fails to address—and instead exacerbates—the deficiencies in Plaintiff's allegations that workers failed to "properly perform building surveys . . . by holding the radiation detection device in one spot or just setting it down in one spot for up to 30 minutes while readings were recorded." *See* AC, ¶ 69. As noted in TtEC's Motion to Dismiss, Plaintiff has not alleged that any TtEC employee was aware of such conduct. Indeed, there is no allegation that Stephen Rolfe understood how Anthony Smith and his fellow workers were interpreting Rolfe's alleged direction to "just get numbers." Mot. at 12. In response, Plaintiff mischaracterizes the Amended Complaint, stating: "The complaint further alleges details about how Rolfe instructed workers to hold a radiation detection device in one place, instead of properly scanning buildings." Opp. at 11 (citing AC, ¶ 69). What the Amended Complaint actually states is:

> As one example, RCT Anthony Smith and his fellow workers were instructed by Rolfe to "just get numbers" when doing building scans, which was accomplished by holding the radiation detection device in one spot or just setting it down in one spot for up to 30 minutes while readings were recorded. AC, ¶ 69.

Plaintiff has alleged only that Stephen Rolfe told "Smith and his fellow workers" to "just get numbers," and that it was Smith and his fellow workers who decided to accomplish that task

1  by failing to do their jobs of properly performing building surveys. Again, there is no allegation
2  that Rolfe (or any other TtEC employee) had any knowledge of Smith or any other worker's
3  alleged conduct.

4  Plaintiff alleges that TtEC falsified data in 19 buildings by manipulation, duplication, or
5  failure to properly perform building surveys. *See* AC, ¶¶ 68–69. But in paragraph 71 of the
6  Amended Complaint, Plaintiff alleges that TtEC's "falsification of data with regard to building
7  surveys caused the Navy to pay Tetra Tech for building survey work that has become worthless"
8  at 27 buildings. AC, ¶ 71. Yet, the Amended Complaint contains no allegation of data falsification
9  related to any building other than those identified in paragraphs 68 and 69. Thus, TtEC cannot
10 determine on what basis Plaintiff alleges false claims were submitted for 27 buildings at Hunters
11 Point. Therefore, Plaintiff has not alleged building scan data fraud with the requisite specificity to
12 state a claim under the FCA. *U.S. ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161,
13 1180 (9th Cir. 2016); *Neubronner*, 6 F.3d at 671-72; *Williams*, No. 10-CV-1254-LAB (NLS),
14 2010 WL 3788843, at *1.

## IV. PLAINTIFF'S ALLEGATIONS DO NOT SATISFY THE FCA'S SCIENTER REQUIREMENT

17 TtEC's Motion points out Plaintiff's failure to allege the requisite scienter in support of its
18 FCA claims, based on the standards set forth in recent, relevant authority within the Ninth Circuit.
19 Mot. at 8-12. In response, Plaintiff reaches for outdated, out-of-circuit, and irrelevant authority in
20 an attempt to save its deficient pleading. *See* Opp. at 11-12.[3] The only FCA case from the Ninth
21 Circuit that Plaintiff discusses regarding scienter supports dismissal of the Amended Complaint.

22 As quoted on page 13 of the Opposition, the Court in *U.S. ex rel. Rosales v. San Francisco*
23 *Hous. Auth.*, 173 F. Supp. 2d 987. 1003 (N.D. Cal. 2001), explained:

24 When an agent acts in the name of the entity, taking advantage of her unique
25 position within the entity to secure government funding, the fraudulent intent of

---

[3] Citing non-FCA cases: *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1546 (9th Cir. 1994), and *Am. Soc'y of Mech. Engrs. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982); and out-of-circuit FCA cases at least 30 years old: *Grand Union Co. v. U.S.*, 696 F.2d 888, 891 (11th Cir. 1983); *U.S. v. Ridglea State Bank*, 357 F.2d 495, 498 (5th Cir. 1966); *U.S. v. O'Connell*, 890 F.2d 563, 569 (1st Cir. 1989); *U.S. v. Fox Lake State Bank*, 240 F. Supp. 720, 722 (N.D. Ill. 1965).

7  Case No. 3:13-CV-03835 JD
DEFENDANT TETRA TECH, EC INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT IN INTERVENTION (FRCP 12(b)(1), 12(b)(6))

> the agent is indistinguishable from the intent of the entity. So long as the agent has actual or apparent authority to bind the entity, the fraud of the agent is sufficient to support civil liability against the entity.

Absent from the Amended Complaint is any factual allegation that Stephen Rolfe or Justin Hubbard (1) held a "unique position" within TtEC, (2) took advantage of such position "to secure government funding," or (3) had "actual or apparent authority to bind" TtEC. *Rosales*, 173 F. Supp. 2d at 1003.[4] Also absent from the Amended Complaint is any factual allegation that Rolfe and Hubbard were TtEC "managers." In fact, Rolfe's and Hubbard's plea agreements state that Rolfe and Hubbard were *supervisors*, not managers. Plaintiff's unfounded assertions in the Amended Complaint that Rolfe and Hubbard were TtEC managers have no more factual support than if they were alleged to be astronauts.

Plaintiff also contends that "TtEC ignores the allegation that William Dougherty, TtEC's Program Manager 'was responsible for managing all aspects of Tetra Tech's work' and 'gave direction to' Rolfe and Hubbard.'" Opp. at 12 (citing AC, ¶ 48[5]). Not so. Dougherty's alleged responsibility for management of "all aspects" of TtEC's work at Hunters Point, and "daily contact with, and [] direction to, Rolfe and Hubbard" (AC, ¶ 48) are not synonymous with any knowledge of or direction to commit fraud, or any knowing submission of any false claim or statement in support of a claim for payment. Plaintiff does not attribute to Dougherty a single statement or other direction *to commit bad acts* allegedly made to Rolfe, Hubbard, or anyone else. Nor does Plaintiff allege that Dougherty or any other TtEC employee was aware of any alleged duplication, manipulation, or falsification of building scan data. In other words, Plaintiff has not alleged the element of scienter for an FCA claim under any standard applied within the Ninth

---

[4] The Court in *Rosales* relied on *Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1387 (9th Cir. 1985), to conclude that the Ninth Circuit's standard for analyzing scienter under the FCA requires establishing that the agent whose acts are alleged to bind the company was "employed in a managerial capacity." *Rosales*, 173 F. Supp. 2d at 1004. *Protectus* remains the law of the Ninth Circuit on vicarious liability for corporations when punitive damages are at issue. *In re Exxon Valdez*, 270 F.3d 1215, 1235 (9th Cir. 2001); *see also Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784 (2000) ("[T]he FCA imposes damages that are essentially punitive in nature. . . .").

[5] The Opposition erroneously indicates paragraph 49 for these allegations; they are found in paragraph 48.

Circuit. *See U.S. ex rel. Durkin v. County of San Diego*, 300 F. Supp. 3d 1107, 1129 (S.D. Cal. 2018) (vague and conclusory allegations of knowledge are insufficient to establish scienter); *U.S. v. Scan Health Plan*, No. CV-09-5013-JFW (JEMx), 2017 WL 4564722, at *5 (C.D. Cal. Oct. 5, 2017) ("Generally, for scienter to be attributed to a corporation, Plaintiffs must sufficiently plead that at least one of the corporation's officers had the requisite scienter at the time they made the allegedly misleading statements."); *Rosales*, 173 F. Supp. 2d at 1004 (applying vicarious liability standard to scienter in FCA claim based on "egregious acts of one employed in a managerial capacity and acting in the scope of employment").

Moreover, as discussed above, the Exhibit 1 reports unequivocally demonstrate that the Navy knew about the soil sample switching to which Rolfe and Hubbard pleaded guilty within months of the 2014 Investigation Report, if not earlier. Therefore, Plaintiff also fails to adequately plead scienter because it has failed to rebut indisputable evidence of government knowledge. *See U.S. ex rel. Berg v. Honeywell Int'l, Inc.,* 740 F. App'x 535, 538-539 (9th Cir. 2018) (affirming dismissal of FCA claim where relators failed to rebut evidence of government knowledge)*, cert. denied,* No. 18-1030, 2019 WL 485403 (2019); *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1050-51 (9th Cir. 2012) ("the extent and the nature of government knowledge may show that the defendant did not 'knowingly' submit a false claim. . ."); *U.S. ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 887–88 (8th Cir. 2003).

## V. THE COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIMS

In its Opposition, Plaintiff asserts: "Even if the Court dismissed the FCA claims, the contract claims would still be based on allegations of fraud and would, therefore, be exempt from the [Contract Disputes Act]." Opp. at 14 n.3. In other words, Plaintiff asks the Court to write a loophole into the Contract Disputes Act ("CDA") that would permit any breach of contract claim otherwise subject to the CDA to bypass that law's procedural requirements and go straight to federal court if the plaintiff merely includes the word "fraud" in its complaint, without any requirement to adequately plead fraud. Interpreting the CDA as Plaintiff proposes would improperly turn the "very limited [fraud] exception" into a "very broad exception." *U.S. v.*

*Marovic*, 69 F. Supp. 2d 1190, 1193 (N.D. Cal. 1999) (citing *U.S. v. Rockwell Int'l Corp.*, 795 F. Supp. 1131, 1134 (N.D. Ga. 1992)).

In fact, in every case cited by Plaintiff, the court determined that fraud was adequately pleaded, and thus, it could exercise jurisdiction over the accompanying breach of contract claims. *See* Opp. at 14 & n.3 (citing *U.S. v. First Choice Armor & Equipment, Inc.*, 808 F. Supp. 2d 68 (D.D.C. 2011); *U.S. ex rel. Shemesh v. CA, Inc.*, 89 F. Supp. 3d 67 (D.D.C. 2015); *U.S. ex rel. Becker v. Tools & Metals, Inc.*, 3:05-CV-0627 & 3:05-CV-2301, 2009 WL 577604 (N.D. Tex. March 5, 2009); *U.S. ex rel. Jordan v. Northrop Grumman Corp.*, CV 95-2985 ABC (EX), 2002 WL 35454612 (C.D. Cal. Aug. 5, 2002); *U.S. v. Menominee Tribal Enterprises*, 601 F. Supp. 2d 1061 (E.D. Wisc. 2009) (finding that government adequately pleaded FCA claims against individual defendants even though tribe's business arm was not a "person" under the FCA); *U.S. ex rel. Dye v. ATK Launch Systems, Inc.*, 1:06-CV-39 TS, 2008 WL 4642164, *2 (D. Utah Oct. 16, 2008) (acknowledging in dicta: "If Defendant is able to obtain a judgment in its favor on all claims 'involving fraud,' the Court may be without jurisdiction under the CDA. This is an issue for a different day.")).

Here, as in *Marovic*, if the Court determines that Plaintiff has failed to allege FCA claims against TtEC, a breach of contract claim under the CDA may still lie—if adequately supported—without the need to determine whether TtEC committed fraud. *See Marovic*, 69 F. Supp. 2d at 1194 ("The fraud exception does not apply if a claim can be decided under the CDA without a determination of fraud."); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 782, 789 (4th Cir. 1999) (claims of a "scheme . . . to increase the cost of performance and its fees" amounted to "no more than allegations of poor and inefficient management of contractual duties," and thus, were not actionable under the FCA). Therefore, if the Court dismisses Plaintiff's FCA claims, it should also dismiss Plaintiff's breach of contract claims for lack of jurisdiction.

## VI. CONCLUSION

For the foregoing reasons and those discussed in TtEC's Motion to Dismiss, TtEC respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

DATED: September 25, 2019  HANSON BRIDGETT LLP

By: /s/ Davina Pujari
  DAVINA PUJARI
  CHRISTOPHER A. RHEINHEIMER
  SAMIR J. ABDELNOUR
  MELISSA M. MALSTROM
  Attorneys for Tetra Tech EC, Inc.