Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.,) | |
| Plaintiff, ) | |
| VS. ) | **NO. C 13-3835 JD** |
| TETRA TECH EC, INC., et al., ) | |
| Defendants. ) | |
| _____) | |
| UNITED STATES OF AMERICA ex rel. ) | |
| KEVIN MCLAUGHLIN, ) | |
| Plaintiff, ) | |
| VS. ) | **NO. C 14-1509 JD** |
| SHAW ENVIRONMENTAL & ) | |
| INFRASTRUCTURE, INC., et al. ) | |
| Defendants. ) | |
| _____) | |
| UNITED STATES OF AMERICA ex rel. ) | |
| ANTHONY SMITH, et al., ) | |
| Plaintiffs, ) | |
| VS. ) | **NO. C 16-1106 JD** |
| TETRA TECH, INC., et al., ) | |
| Defendants. ) | San Francisco, California |
| _____) | Thursday, June 17, 2021 |

**TRANSCRIPT OF PROCEEDINGS VIA ZOOM WEBINAR**

**(CAPTION AND APPEARANCES CONTINUED ON NEXT PAGES)**

Reported By:  Katherine Sullivan, Official Reporter, CRR, RMR

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3      BEFORE THE HONORABLE JAMES DONATO, JUDGE

4  UNITED STATES OF AMERICA ex rel. )
   DONALD K. WADSWORTH, et al.,     )
5                                   )
            Plaintiffs,             )
6                                   )
     VS.                            )   **NO. C 16-1107 JD**
7                                   )
   TETRA TECH, INC., et al.,        )
8                                   )
            Defendants.             )
9  _____  )
   LINDA PARKER PENNINGTON, et al., )
10                                  )
            Plaintiffs,             )
11                                  )
     VS.                            )   **NO. C 18-5330 JD**
12                                  )
   TETRA TECH, INC., et al.,        )
13                                  )
            Defendants.             )
14 _____  )
   BAYVIEW HUNTERS POINT RESIDENTS, )
15                                  )
            Plaintiffs,             )
16                                  )
     VS.                            )   **NO. C 19-1417 JD**
17                                  )
   TETRA TECH, INC., et al.,        )
18                                  )
            Defendants.             )
19 _____  )
   KEVIN ABBEY, et al.,             )
20                                  )
            Plaintiffs,             )
21                                  )
     VS.                            )   **NO. C 19-7510 JD**
22                                  )
   TETRA TECH, INC., et al.,        )
23                                  )
            Defendants.             )
24 _____  )

25     **(CAPTION AND APPEARANCES CONTINUED ON NEXT PAGES)**

1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3       BEFORE THE HONORABLE JAMES DONATO, JUDGE

4  FIVE POINT HOLDINGS, LLC, et al.,)
                                    )
5          Plaintiffs,              )
                                    )
6    VS.                            )   **NO. C 20-1480 JD**
                                    )
7  UNITED STATES OF AMERICA,        )
                                    )
8          Defendants.              )
   _____)
9  FIVE POINT HOLDINGS, LLC, et al.,)
                                    )
10         Plaintiffs,              )
                                    )
11   VS.                            )   **NO. C 20-1481 JD**
                                    )
12 TETRA TECH, INC., et al.,        )
                                    )
13         Defendants.              )
   _____)
14 CPHP DEVELOPMENT, LLC, et al.,   )
                                    )
15         Plaintiffs,              )
                                    )
16   VS.                            )   **NO. C 20-1485 JD**
                                    )
17 TETRA TECH, INC., et al.,        )
                                    )
18         Defendants.              )
   _____)
19

20

21     **(CAPTION AND APPEARANCES CONTINUED ON NEXT PAGES)**

22

23

24

25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

| | |
|---|---|
| TETRA TECH EC, Inc.                    )<br>                                        )<br>          Plaintiff,                    )<br>                                        )<br>   VS.                                  )<br>                                        )<br>CH2M HILL INC., et al.,                 )<br>                                        )<br>          Defendants.                   )<br>_____) | **NO. C 20-4704 JD** |
| KEVIN ABBEY, et al.,                    )<br>                                        )<br>          Plaintiff,                    )<br>                                        )<br>   VS.                                  )<br>                                        )<br>UNITED STATES OF AMERICA,               )<br>DEPARTMENT OF THE NAVY,                 )<br>                                        )<br>          Defendant.                    )<br>_____) | **NO. C 20-6443 JD** |
| TETRA TECH EC, Inc.                    )<br>                                        )<br>          Plaintiff,                    )<br>                                        )<br>   VS.                                  )<br>                                        )<br>UNITED STATES ENVIRONMENTAL             )<br>PROTECTION AGENCY, et al.,              )<br>                                        )<br>          Defendants.                   )<br>_____) | **NO. C 20-8100 JD** |

(CAPTION AND APPEARANCES CONTINUED ON NEXT PAGES)

<pre>
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3             BEFORE THE HONORABLE JAMES DONATO, JUDG

 4  MARLENE HEIDECK and EDCYDZIK,     )
    Personal representatives of the  )
 5  Estate of Michael Toropovsky,    )
                                     )
 6            Plaintiff,             )
                                     )
 7     VS.                          )    NO. C 21-2798 JD
                                     )
 8  TETRA TECH EC., INC.,            )
                                     )
 9            Defendants.           )
    _____)

10

11  APPEARANCES: (via Zoom Webinar)

12  For Pennington Plaintiffs:
                        COTCHETT, PITRE & MCCARTHY, LLP
13                      840 Malcolm Road
                        Burlingame, California 94010
14          BY:  ANNE MARIE MURPHY, ESQ.

15  For Qui Tam Relators:
                        LAW OFFICE OF DAVID C. ANTON
16                      1717 Redwood Lane
                        Davis, California 95616
17          BY:  DAVID C. ANTON, ESQ.

18  For Abbey Plaintiffs:
                        WALKUP, MELODIA, KELLY & SCHOENBERGER A
19                      650 California Street, 26th Floor
                        San Francisco, California 94108-2615.
20          BY:  SARA M. PETERS, ESQ.

21  Attorneys for Plaintiffs Five Point Holdings, LLC and CP
    Development Co., LLC:
22                      ALSTON & BIRD LLP
                        333 South Hope Street, 16th Floor
23                      Los Angeles, California 90071
            BY:  JEFFREY D. DINTZER, ESQ.
24               MATTHEW C. WICKERSHAM, ESQ.

25          (APPEARANCES CONTINUED ON NEXT PAGE)
</pre>

1   **APPEARANCES (continued):**

2   Attorneys for Plaintiffs CPHP Development, LLC; HPS Development
    CO., LP; HPS1 Block 50, LLC; HPS1 Block 51, LLC; HPS1 Block 53,
3   LLC; HPS1 Block 54, LLC; HPS1 Block 55, LLC; HPS1 Block 56/57,
    LLC; and Lennar Corporation:
4                              O'MELVENY & MYERS LLP
                               1999 Avenue of the Stars, 8th Floor
5                              Los Angeles, California 90067-6035
                          BY:  **MADHU POCHA, ESQ.**
6
    For Defendant United States of America:
7                              US Department of Justice
                               Civil Division, Torts Branch
8                              P. O. Box 340
                               Washington, D.C. 20044
9                         BY:  **MICHELE GREIF, COUNSEL**

10                             US DEPARTMENT OF JUSTICE
                               175 N Street NE
11                             Washington, DC 20002
                          BY:  **ROBERT E. CHANDLER, COUNSEL**
12
    For Defendants Tetra Tech, Inc., Tetra Tech EC, Inc., Daniel
13  Batrack, Steven Burdick, and Andrew Bolt:
                               HANSON BRIDGETT LLP
14                             425 Market Street, 26th Floor
                               San Francisco, California 94105
15                        BY:  **CHRISTOPHER RHEINHEIMER, ESQ.**

16  For the Shaw Defendants:
                               BRADLEY ARANT BOULT CUMMINGS LLP
17                             One Federal Place
                               1819 Fifth Avenue North
18                             Birmingham, Alabama 35203
                          BY:  **NICHOLAS A. DANELLA, ESQ.**
19
    For Defendant CH2M Hill, Inc.:
20                             MUNGER TOLLES & OLSON, LLP
                               560 Mission Street, 27th Floor
21                             San Francisco, California 94105-2907
                          BY:  **BLANCA FROMM YOUNG, ESQ.**
22

23              **(APPEARANCES CONTINUED ON NEXT PAGE)**

24

25

1  **APPEARANCES (continued):**

2  For Plaintiffs Bayview Hunters Point Residents:
                        LAW OFFICES OF CHARLES A. BONNER
3                       475 Gate Five Road, Suite 211
                        Sausalito, California 94965
4               BY:  **A. CABRAL BONNER, ESQ.**

5  For Defendant Radiological Survey & Remedial Services, L.L.C.:
                        ROPERS MAJESKI KOHN & BENTLEY
6                       545 Middlefield Road, Suite 175
                        Menlo Park, California 94025
7               BY:   **NICOLE S. HEALY, ESQ.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **Thursday - June 17, 2021**                              **1:02 p.m.**

2                              **P R O C E E D I N G S**

3                              ---oOo---

4        **THE CLERK:**  Calling Civil 13-3835, United States of

5    America versus Tetra Tech; Civil 14-1509, United States

6    United States versus Shaw Environmental and Infrastructure;

7    Civil 16-1106, Smith versus Tetra Tech; 16-1107, Wadsworth

8    Wadsworth versus Tetra Tech; Civil 18-5330, Pennington versus

9    Tetra Tech; Civil 19-1417, Bayview Hunters Point Residents

10   versus Tetra Tech; Civil 19-7510, Abbey versus Tetra Tech;

11   Civil 20-1480, Five Point Holdings, LLC versus United States of

12   America; Civil 20-1481, Five Point Holdings versus Tetra Tech;

13   Civil 20-1485, CPHP Development, LLC versus Tetra Tech; Civil

14   20-4704, Tetra Tech, Inc. versus CH2M Hill Inc.; Civil 20-6443,

15   Abbey versus United States of America; Civil 20-8100, Tetra

16   Tech, Inc. versus United States Environmental Protection

17   Agency; and Civil 21-2798, Heideck versus Tetra Tech.

18       Counsel for the plaintiffs, please state your appearances.

19       **MS. PETERS:**  Good afternoon, Your Honor.  Sara Peters

20   on behalf of the Abbey plaintiffs.

21       **MS. MURPHY:**  Good afternoon, Your Honor.  Anne Marie

22   Murphy on behalf of the Pennington plaintiffs.

23       **MR. CHANDLER:**  Good afternoon, Your Honor.  Robert

24   Chandler on behalf of the United States and the plaintiffs in

25   the FCA matters.

1          **MR. ANTON:**  David Anton on behalf of relators in the

2     False Claims Act cases.

3          **MR. DINTZER:**  Good afternoon, Your Honor.  Jeffrey

4     Dintzer on behalf of Five Point Holdings against the United

5     States and the separate matter against Tetra Tech.

6          **MR. POCHA:**  Good afternoon, Your Honor.  Madhu Pocha

7     for the Lennar-related entities, which are plaintiffs and

8     defendants depending on which action we're talking about.

9          **THE CLERK:**  Counsel for defendants.

10         **MR. RHEINHEIMER:**  Good afternoon, Your Honor.  Chris

11    Rheinheimer for the Tetra Tech parties.

12         **MR. DANELLA:**  Your Honor, good afternoon.  Nick

13    Danella, from Bradley Arant, for the Shaw defendants.

14         **MS. YOUNG:**  Good afternoon, Your Honor.  Blanca Young

15    in the CH2M matter on behalf of the CH2M defendants.

16         **MR. WICKERSHAM:**  Good afternoon, Your Honor.  Matt

17    Wickersham also on behalf of Five Point Holdings and Emile

18    Haddad.

19         **MS. HEALY:**  Good afternoon, Your Honor.  Nichole Healy

20    on behalf of the RSRS defendants in the False Claims Act

21    actions.

22         **MS. GREIF:**  Good afternoon, Your Honor.  Michelle

23    Greif for the United States in the Abbey, Lennar, and Five

24    Point matters as defendants.

25         **THE COURT:**  Okay.  Is that it?  All right.  No

1  Mr. Baghdadi?

2       **MS. PETERS:**  No, Your Honor.  This is Sara Peters with

3  his office.  He sends his apologies.  He's with a family member

4  going through a medical issue today, and so I'm here instead.

5       **THE COURT:**  All right.  Well, what's happening,

6  Ms. Peters?

7       **MS. PETERS:**  So we asked for the hearing --

8       **MR. BONNER:**  I'm sorry, Your Honor.  This is Cabral

9  Bonner.  I've been on, but I was not a panelist.  I represent

10  the neighborhood plaintiffs.  I just got promoted to a

11  panelist, so I wasn't able to unmute.  This is Cabral Bonner

12  appearing on behalf of the Hunters Point Neighborhood

13  plaintiffs.

14       **THE COURT:**  All right.

15     Okay.  Go ahead, Ms. Peters.

16       **MS. PETERS:**  Yeah, so we requested the hearing because

17  we thought you would want an update on our progress, or lack of

18  progress, related to what you'd asked us to do, I think,

19  actually, initially, back in January of 2020.

20     I know our administrative motion mentioned September, but

21  the story goes back even further that you had instructed us in

22  January to set up a central repository for discovery, that

23  everybody would have access to, with cost divided on a

24  per-capita share.  You asked us to work out the details.

25     I don't know if you've had a chance to look at the emails

1   and information that Mr. Baghdadi submitted, but he tried to

2   take the lead in facilitating that.   And, you know, not just

3   Walkup, but Hanson Bridgett, Jeffrey Dintzer, others have

4   devoted a lot of time to doing the geek squad portion of this

5   and working out the details of the repository.

6       So there's been a competitive bidding process.   There have

7   been interviews, selection of a vendor.   Specifically, Magna is

8   the vendor that was selected.   We have a negotiated contract

9   with Magna, and there have been rounds of negotiations related

10  to that.

11      There's been a carve-out to accommodate the United States'

12  security needs that they have a little bit of a separate

13  treatment, a different process.   And that was to try to

14  expedite this and have it, you know, not go through the entire

15  vetting process that they would need otherwise for the vendor.

16      And so we now have a plan in place.   We have a vendor.   We

17  have a contract.   It's ready to execute.   But we are lacking

18  full buy-in from all of the parties.   And right now we have

19  buy-in from five out of the 13 parties, the way that we're

20  defining parties, basically as an entity or group of entities

21  that would be conducting discovery or responding to discovery

22  together as part of this liability discovery.

23      And, you know, the problem is that without full

24  participation from all parties, it defeats the purpose of the

25  repository.   And, you know, as you had actually pointed out

1   earlier, it's designed for efficiency so that we can produce

2   documents electronically.  Everyone gets an alert.  There's no

3   lag time.  There's no questions who got what; did the FTP link

4   expire.  And it's not going to accomplish that without the

5   buy-in.

6        And, you know, we can't -- Mr. Baghdadi can't issue an

7   order.  So we are -- we're coming up on, as you know, with the

8   Ryu process, some productions of documents that will require

9   the database to be in place or some other alternative plan to

10  be in place.  And that's going to be the first week of July

11  that we would need this up and running.

12       There's not been any alternatives offered at this point,

13  but it seems that some parties are just not in agreement with

14  going forward, you know, with the database.  And rather than

15  speak on anyone else's behalf or try to accurately represent

16  objections and positions of other parties, we wanted to just

17  give you an update and then give an opportunity for any other

18  party to speak for themselves.

19       **THE COURT:**  Well, who is -- who's paying their fair

20  share right now?

21       **MS. MURPHY:**  Pennington plaintiffs have agreed.

22       **MR. RHEINHEIMER:**  The Tetra Tech parties have agreed.

23       **MR. DINTZER:**  The Five Point parties have agreed.

24       **MR. POCHA:**  The Lennar parties have also agreed.

25       **THE COURT:**  Okay.  So, Ms. Peters, who does that leave

 1    then?

 2         **MS. PETERS:**  Sort of a long list of everybody else, I

 3    think, who's on the call.

 4         You know, I think some of the -- pricing-wise, I think

 5    it's a cost of 18,000 a month divided 13 ways if everybody were

 6    in, which would come out to a cost of less than 1500 a month

 7    per firm.

 8         I do think some of the objections from some parties may be

 9    alleviated if there were more buy-in from more parties.  So I

10    think it's a bit difficult to say here's the list of who

11    objects and why.

12         **THE COURT:**  Just give me the name of somebody who's

13    not paying.  Who's not paying?

14         **MR. BONNER:**  I will speak on behalf --

15         **MS. HEALY:**  I was going to volunteer to speak on

16    behalf of the RSRS parties.

17         My client is a party only to the False Claims Act lawsuit,

18    is a very small company.  And I represent the current and

19    former owners.  We're talking about effectively a family-owned

20    operation.  They can't afford to pay even a portion of the

21    $18,000 a month, particularly since there's no documents in the

22    database right now.  And, again, we're only --

23         **THE COURT:**  I can barely hear you.  You need to either

24    get closer to your mic or turn up your volume.

25         **MS. HEALY:**  Yes, Your Honor.  Is this better?

1          **THE COURT:**  No.

2          **MS. HEALY:**  Okay.  Is this better, Your Honor?

3          **THE COURT:**  Not really.  Can you just get closer to

4     your microphone.

5          **MS. HEALY:**  I'm about as close as I can get.

6          **THE COURT:**  Now, I didn't hear who you represent.

7          **MS. HEALY:**  I represent the RSRS parties.  RSRS is a

8     small former subcontractor to Tetra Tech.  It's a family

9     owned --

10          **THE COURT:**  What case number is that?

11          **MS. HEALY:**  We are in the False Claims Act cases only,

12     not the other litigation.

13          **THE COURT:**  Just give me the case numbers, please.

14          **MS. HEALY:**  1509, I believe, is one of the matters.

15          **THE COURT:**  1509?

16          **MS. HEALY:**  1509.  I think 1106, 1107 are the other

17     matters.

18          **THE COURT:**  Okay.  Well, I mean, you're in the case.

19     What do you want me to do?  You're here.  Do you not want any

20     discovery?  That's sort of the flip side.

21          **MS. HEALY:**  It's not that we don't want discovery,

22     Your Honor.  We don't want discovery not involving the cases

23     that we're in.  So that would include everything about the

24     individual plaintiffs.

25          We also don't think that we should be treated in the same

1  way as a very large entity like the United States government.

2  My client doesn't have the resources to participate in the same

3  way as the United States government or Tetra Tech or some of

4  the other very large entities that are involved in this

5  lawsuit.

6         **THE COURT:**  Well, I mean, but you're a party.  So what

7  are you planning to do?  You're not going to get out of the

8  case just because you're small.  And we know that.  So what is

9  it you want to do?

10        The whole point of this is so that everybody gets to

11  amortize the cost of discovery.  I'm not having anybody do

12  discovery entirely on their own on the side.  That's going to

13  be far more expensive than $1,500 a month or whatever that

14  number was that Ms. Peters gave me.  So what is it you are

15  proposing, Ms. Healy?

16        **MS. HEALY:**  Well, we would propose only to access the

17  documents that are relevant to my client and the lawsuits that

18  my clients are in.  Or the lawsuit.  And that's going to be

19  only a portion of the documents that are going to be populating

20  this database.

21        And if we could actually only do something like pay as you

22  go, in other words only pay for the documents that we're using,

23  that would seem to be fairer than requiring us to pay a portion

24  including as to lawsuits in which my clients are not parties.

25        **THE COURT:**  Well, Ms. Peters, how about a $5 per page

1   or something?  How does that sound?  Want to do something like

2   that?

3       I mean, I'm not going to do this for everybody.  I'll just

4   take Ms. Healy's representation that, you know, as she put it,

5   this is a mom-and-pop outfit with no money.

6       Ms. Peters, how about a checkout fee like 3 bucks a page

7   or something?

8       **MS. PETERS:**  I don't know how feasible that would be,

9   but I will say there's no plaintiff documents.  Just for

10  clarity, there are some other databases through a different

11  company that are being used for all the productions of

12  plaintiffs'-side documents.

13      We could go back to the vendor and talk about whether the

14  contract can be modified to include, you know, a checkout fee

15  or, you know -- and would we just keep the flat rate.

16      You know, but this is one party of, I think, eight parties

17  that are not -- you know, are currently objecting to the plan.

18  So I'm a little worried that if it sets up a precedent we're

19  going to have eight other people that want a checkout fee too.

20      **THE COURT:**  Well, you might be right.

21      Look.  Let me just give you some guidance.  I'm lifting

22  the stays on discovery.  Okay.  So if you're imagining that --

23  I may have created a disincentive here, unintentionally.

24      But all the stays are going to be lifted.  If you're

25  banking on getting out, you know, I wouldn't do that.  I don't

1   know how these motions are going to work out.  And, in any

2   event, motions to dismiss do not hold up or stall discovery.

3   And unless there's an ironclad legal reason, like the statute

4   of limitations, or you're not within the scope of the FCA or

5   something there's almost certainly going to be leave to amend.

6        So nobody is walking out of this case in August or

7   September or November.  That's just not going to happen.  So

8   let's get going.

9        And I just -- I don't see any reason why we shouldn't have

10  all 13 people chip in $1,500 a month.  It's going to save you a

11  lot of money in the end.  It's really much more efficient.  I

12  mean, you're going to save a fortune.  So what is the problem

13  with that?

14       I mean, look.  You can try to work, I guess, a little bit

15  with Ms. Healy.  Maybe she's the one carve-out because the

16  reason she gave, but I'm not giving her a blanket pass at this

17  point.  I'm just going to ask you, Ms. Peters, to maybe talk

18  with Ms. Healy and, you know, see if there's something else.

19       But I will not accept the idea, oh, we're just passing

20  through because the old judge here is about to dismiss me.

21  That's not going to be your path to saving the $1,500 a month,

22  so don't tell me that, okay.  You might be right, you might be

23  wrong, but I'm not going to do that right now.

24       All right.  Is that a solution, Ms. Peters?

25            **MS. PETERS:**  Yes.  And then what would the plan be?

1   Is this -- I guess one question is whether there's going to be

2   an order or whether it's sort of back on the parties to

3   continue trying to reach an agreement.

4         **THE COURT:**  Well, I mean, you got all the paperwork

5   done; right?  You just want me to tell people to pay.  So

6   that's what I'm doing.  Time to pay.

7         **MR. CHANDLER:**  Your Honor, may I speak to the

8   Government's --

9         **THE COURT:**  Yeah, yeah.

10        **MR. CHANDLER:**  So we realized at a fairly early point

11  that the Government's participation in the document repository

12  was just not going to be feasible for any of the parties.  It

13  was going to drive up the costs and occasion delays based on

14  the Government's requirements to comply with a number of

15  regulations, including the Federal Information Systems

16  Modernization Act.  And it would have required certification of

17  the contractor and the process, and would have required

18  compliance with Government contracting --

19        **THE COURT:**  You know, I have to deal with GSA.  I know

20  all about this.  So, please, what is the punchline?  The

21  federal government's involved.  So what do you want to do

22  Mr. Chandler?

23        **MR. CHANDLER:**  So the parties have agreed to basically

24  excuse the United States from this process.  So we haven't

25  participated in the database.  In fact, that's reflected in the

1   order that Your Honor's -- the stipulated order Your Honor

2   signed on --

3          **THE COURT:**  Is that right, Ms. Peters, there's a

4   carve-out for the United States?

5          **MS. PETERS:**  That is correct.  We reached that

6   accommodation.

7          **THE COURT:**  You're off the hook then.  Don't worry

8   about it.

9          **MR. CHANDLER:**  Great.  Thank you, Your Honor.

10          **THE COURT:**  Okay.  Anybody else --

11          **MS. YOUNG:**  Hi, Your Honor.  This is Blanca Young for

12   the CH2M Hill defendants.

13      So we have not been participating in the discussions about

14   this repository because we were excused from them by Judge Ryu

15   in light of our pending motion to dismiss, which the Court

16   granted with leave to amend.  And we have a motion to dismiss

17   the amended complaint that's currently pending before Your

18   Honor.  It's under submission.

19      And so, you know, obviously if the Court decides that

20   against us we would be happy to participate in a meet and

21   confer in this process, but we have been excluded from the

22   process so far and would ask for the status quo to remain that

23   way until the Court decides our motion.

24          **THE COURT:**  Well, if Judge Ryu did it, I'm not going

25   to interfere with that.  Did she do that?

1          **MS. YOUNG:**  She did excuse us from participating in

2     the discussions over discovery and what to do at this point.

3          **THE COURT:**  I'm not going to -- if you got Judge Ryu

4     to do that, then I'll live with that.

5          **MS. YOUNG:**  Thank you, Your Honor.

6          **MR. RHEINHEIMER:**  Your Honor, just to be clear, Judge

7     Ryu has excused the CH2M parties from participating in the

8     Judge Ryu process, the discussions of early document

9     productions.  But I don't see this database stipulation as

10    being -- or contract as being part of those communications.

11    The database is for the cases writ large not just for these

12    early settlement process.

13         Once the database is in place, it's not like we can change

14    the contract if Ms. Young's clients want, you know-- so to the

15    extent they want to be engaged before we have a final contract,

16    now's the only time.  There is no later time possible.

17         **THE COURT:**  Look.  You need to talk to Judge Ryu.  If

18    she did something about this, then I'm not going to inject

19    myself into that.  So you two talk to Judge Ryu about -- what

20    is it CH2M?  CH2?  Whoever that is, talk to Judge Ryu.

21         **MS. YOUNG:**  CH2M.  And we will, Your Honor.

22         **THE COURT:**  Okay.  Good.

23         **MR. DANELLA:**  Your honor, may I raise one issue

24    related to costs?

25         **THE COURT:**  Yes.

1          **MR. DANELLA:**  This is Nick Danella for the Shaw

2     defendants.  We are defendants in two of the FCA cases.

3     14-cv-1509 is McLaughlin.

4          **THE COURT:**  1509.

5          **MR. DINTZER:**  And 3:16-cv-1106 --

6          **THE COURT:**  Oh, okay.  Yeah.

7          **MR. DINTZER:**  We intend to participate.  We've always

8     intended to participate in the repository.  The one issue or

9     concern that I'd like to raise for the Court's guidance is a

10    proposal that we had made for reasonable limitations to access.

11         I haven't seen the latest draft of the proposal, but my

12    understanding is that all parties and in all cases would have

13    access to all documents.  And, again, given that we're only

14    defendants in two of the cases, we had proposed a reasonable

15    limitation such that documents produced into the repository

16    would only be accessible to the parties in that case,

17    recognizing that some documents may be produced in a number of

18    cases.

19         But just unrestricted access to all, for all, we think

20    would be akin to really unrestricted nonparty discovery and a

21    loophole around Rule 45.

22         So, again, we intend to participate, we've always intended

23    to participate, but we would appreciate the Court's guidance on

24    that concern, that issue.

25         **THE COURT:**  Well, have you talked about that,

1    Ms. Peters?

2         **MS. PETERS:**  Yeah, we have.  Just looking back at the

3    January 30th hearing, you had actually given some fairly

4    specific guidance on that issue that you didn't want to have us

5    trying to carve out and getting into a back and forth about who

6    gets to see what, which party will get to see which documents.

7         Because, obviously, with this many parties and significant

8    overlap, but also significant areas where there may be edges

9    outside of the venn diagram, outside of the overlap, that could

10   become a very complex proposition.  And this is all involving

11   the same site.

12        That's how we took your -- your guidance, that we should

13   simply have one liability-related database, and everybody would

14   get everything rather than create worries about who's gotten

15   what.  So that's the current draft of the contract.

16        **THE COURT:**  Okay.  Well, what's the problem with that,

17   Mr. Danella?

18        **MR. DANELLA:**  I think the same concern, Your Honor.

19   And don't know enough about the technology, but --

20        **THE COURT:**  No, no.  What is it you don't want people

21   to see?

22        **MR. DANELLA:**  Sorry, Your Honor.  Go ahead.

23        **THE COURT:**  What's the issue?

24        **MR. DANELLA:**  This, at this point, is in the

25   hypothetical because as far as the settlement discovery -- and

1   I know you've lifted the stay, but right now we don't have any

2   document subjects that would go into the repository.  But,

3   theoretically, we just don't think it's appropriate for all the

4   documents that we produce to be accessible to --

5          THE COURT:  Why not?  What is it that's in there

6   that's giving you heartburn?

7          MR. DANELLA:  Well, Your Honor, I don't have anything

8   in mind in particular, if that's what you're asking.

9          THE COURT:  Look.  If you have a trade secret issue or

10  if you have something that is going to embarrass your client,

11  you know, the usual standards, I'll take a look at it.

12      And that goes for everybody, okay.  I mean, if there's

13  something that's special, of course, we're not going to publish

14  it.  Within your world, I mean, it's not published to the

15  public, it's just in your database.  I'm happy to consider it,

16  but I'm not going to do blanket carve-outs at this point.

17      So you go ahead and put everything in there, and

18  case-by-case basis I will be happy to take it up.

19          MR. DANELLA:  Thank you, Your Honor.

20          THE COURT:  Anything else?  Somebody else had

21  something?

22          MR. RHEINHEIMER:  Your Honor, I wanted to ask for some

23  clarification on the lifting of the stay on discovery.

24          THE COURT:  Yes.

25          MR. RHEINHEIMER:  Is that intended to be effective at

1   a certain point or is that --

2           **THE COURT:**  Yes.

3           **MR. RHEINHEIMER:**  -- following the Ryu process?

4           **THE COURT:**  Effective at 1:15.  So seven minutes ago

5   or six minutes ago.  Consider it done.

6           **MR. RHEINHEIMER:**  We had a process among a number of

7   the parties about Case Management Order Number 1 to guide this

8   first round of discovery.  I think it got put to the side

9   during the Judge Ryu process, but I think it makes sense to

10  pick that back up so that when discovery commences it's

11  according to a plan that organizes all of the cases in a

12  reasonable way.  And we've done a lot a work on that.

13          **THE COURT:**  That's what the whole point of this was.

14  This repository is where everything you all have discussed on

15  coordination is supposed to land.  Okay.

16      So you're stocking the repository based on inputs that are

17  coordinated and efficient and well managed.  So if you haven't

18  talked about that part then, yes, you should start talking

19  about that.

20          **MR. RHEINHEIMER:**  So we have discussed, initially,

21  initial document production.  But the CMO goes further; right?

22  It has discovery; right?  All the parts of it, the written

23  discovery, initial disclosures, plans to orderly proceed.

24      So if the stay on discovery is lifted for everything, not

25  just these initial document productions, then I think it makes

1    sense to proceed and --

2         **THE COURT:**  You all do whatever you want.  The cases

3    are on.  Okay.  The doors are open.  The windows are open.  The

4    shades are up.  Go nuts.  Get your work done.  Okay.  Whatever

5    you need to do, just do it.

6         I can't -- I don't know -- you know, I've got 300 cases,

7    and I don't know exactly what all is going on right now in your

8    case because I don't need to know.  So just make it happen.

9    All right.  Just get going.  This is not initial discovery.

10   The bar is open.  You know, place your orders, okay.  So that's

11   what I'm saying.  Okay.

12        All right.  Anything else for today?

13        **MS. PETERS:**  One more point, Your Honor.  Sara Peters

14   here again.  Just piggybacking on Mr. Rheinheimer's comment.

15        At some point you had asked us to, I think, propose CMO 1.

16   Do you still -- we're going to go nuts, absolutely, but I know

17   you wanted us to do that nonduplicatively --

18        **THE COURT:**  I mean that figuratively.

19        **MS. PETERS:**  Yes.  Nonduplicatively in coordination

20   with one another.  And so would you like to see a CMO 1?  Is

21   that still something --

22        **THE COURT:**  No, no, no.  I don't need to.  If I said

23   that earlier, it's fine.  There's a lot of water under the

24   bridge now.  You're all getting along, so just build on that

25   and just make it happen.  Okay.

1   　　　If you want me to do something, I'm fine.  If you all

2   agree that for some reason you'd like me to do, you know, some

3   kind of stipulated proposed order, I don't have a problem with

4   that.  But don't wait on me, okay.  You know, discovery is

5   self-executing.

6   　　　Happy to come in at any time.  Anytime you want me to come

7   in, that's perfectly fine.  But if you don't need -- I'm not

8   sure what a CMO is.  What is it, a case management order?  If

9   you don't need that, fine, I don't need to do that.  If you'd

10  like one, happy to do it.  But I'm just going to rely on you to

11  guide me on what's best for you.  Okay?

12  　　　　　**MS. PETERS:**  Understood.

13  　　　　　**THE COURT:**  Mr. Dintzer, you had a comment?

14  　　　　　**MR. DINTZER:**  No, no.  I wanted to say thank you very

15  much, Your Honor, for your time.

16  　　　　　**THE COURT:**  All right.  Great.  Everybody, we're all

17  set.  Thanks very much.

18  　　　(Counsel thank the Court.)

19  　　　(At 1:27 p.m. the proceedings were adjourned.)

20  　　　　　　　　　　- - - - -

21

22

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4            I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6    DATE: Monday, June 28, 2021

7

8

9

10   _____

11        Katherine Powell Sullivan, CSR #5812, RMR, CRR
                    U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25