1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

UNITED STATES ex rel. JAHR et al.,

Case No.  13-cv-03835-JD

8

Plaintiffs,

**ORDER RE MOTIONS TO DISMISS
RELATORS' COMPLAINTS**

9

v.

10

TETRA TECH EC, INC. et al.,

11

Defendants.

12

UNITED STATES ex rel. SMITH,

Case No.  16-cv-01106-JD

13

Plaintiff,

14

v.

15

TETRA TECH EC, INC. et al.,

16

Defendants.

17

UNITED STATES ex rel. WADSWORTH
et al.,

Case No.  16-cv-01107-JD

18

Plaintiffs,

19

20

v.

TETRA TECH EC, INC. et al.,

21

Defendants.

22

UNITED STATES ex rel. MCLAUGHLIN,

Case No.  14-cv-01509-JD

23

Plaintiff,

24

v.

25

SHAW ENVIRONMENTAL &
INFRASTRUCTURE, INC. et al.,

26

27

Defendants.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**INTRODUCTION**

These *qui tam* cases under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, are part of the sweeping litigation before the Court that challenges work by government contractors to remediate radiation contamination in the soil at the former Hunters Point Naval Shipyard in San Francisco.  The Hunters Point cases are the functional equivalent of an intra-district MDL proceeding, in that the Court has related multiple complex lawsuits within the District to be managed much as an MDL case would be handled.

This order resolves motions to dismiss the relators' complaints.  Dkt. Nos. 171, 176, 178, 200.[1]  The parties' familiarity with the record, including the Court's many prior orders on other aspects of the litigation, is assumed.

The rather convoluted procedural history of the FCA cases is our starting point.  On August 19, 2013, relators Arthur R. Jahr, III, Elbert G. Bowers, Susan V. Andrews, and Archie R. Jackson (Jahr relators) filed the first FCA *qui tam* complaint under seal, naming as defendants Tetra Tech EC, Inc., Tetra Tech, Inc., New World Environmental, Inc. dba New World Technology, and Aleut World Solutions.  Dkt. No. 1.  On April 1, 2014, relator Kevin McLaughlin filed a complaint, naming Shaw Environmental & Infrastructure, Inc. and Chicago Bridge & Iron Company N.V.  *McLaughlin* Dkt. No. 1.  Relator Anthony Smith filed a complaint on March 4, 2016, against Tetra Tech EC, Inc., Radiological Survey & Remediation Services, LLC (RSRS), the Shaw Group, Shaw Environmental and Infrastructure, Inc., and Chicago Bridge & Iron, Inc.  *Smith* Dkt. No. 1.  Relators Donald K. Wadsworth and Robert McLean (Wadsworth relators) filed a complaint on the same day, naming Tetra Tech EC, Inc., RSRS, and IO Environmental & Infrastructure Incorporated (IO Environmental).  *Wadsworth* Dkt. No. 1.

After several years of investigation, during which the complaints remained sealed and inactive, the United States filed on January 14, 2019, the same complaint-in-intervention in the three cases filed by the Jahr relators, Smith, and the Wadsworth relators.  *See* Dkt. No. 28; *Smith*

---

[1] Unless otherwise noted, all docket number references are to the ECF docket in the *Jahr* action, Case No. 13-cv-03835-JD.

United States District Court
Northern District of California

1    Dkt. No. 23; *Wadsworth* Dkt. No. 23.  In *McLaughlin*, the government declined intervention, and

2    the Court unsealed the case on July 1, 2019.  *McLaughlin* Dkt. No. 30.

3          On July 15, 2019, the United States filed a first amended complaint alleging FCA claims

4    against Tetra Tech EC, Inc. only.  Dkt. No. 82.  This is the operative complaint-in-intervention in

5    *Jahr*, *Smith*, and *Wadsworth*.  On February 27, 2020, the Jahr, Smith, and Wadsworth relators

6    filed in *Jahr* a combined second amended complaint (CSAC), which is the operative complaint for

7    these relators.  Dkt. No. 148.  The allegations and claims by the Jahr relators are the same as those

8    made by the United States in the complaint-in-intervention.  *See id.* ¶ 22.  The Smith and

9    Wadsworth relators made allegations that they say were not encompassed by the United States'

10   complaint.  *See id.* ¶¶ 23-97.  On February 27, 2020, relator McLaughlin filed a third amended

11   complaint (TAC), which is his operative complaint.  *McLaughlin* Dkt. No. 61.

12         Defendants fired a cannonade of attacks on the relators' complaints.  Defendants Tetra

13   Tech EC, Inc., Tetra Tech, Inc., IO Environmental, RSRS, Daryl DeLong, and Brian Henderson

14   jointly ask to dismiss all relators' complaints based on various statutory bars in the False Claims

15   Act.  Dkt. No. 171.  The Shaw defendants (Shaw Environmental & Infrastructure, Chicago Bridge

16   & Iron Co., Aptim Corp., Aptim Federal Services, and Aptim Environmental & Infrastructure)

17   joined this motion.  Dkt. No. 201.  Defendants RSRS, DeLong, and Henderson ask to dismiss the

18   *Jahr* CSAC and the TAC in *McLaughlin*.  Dkt. No. 176.  IO Environmental filed a motion to

19   dismiss the *McLaughlin* TAC, and relator Wadsworth's allegations in the *Jahr* CSAC.  Dkt.

20   No. 178.  The Shaw defendants also ask to dismiss *McLaughlin*'s TAC, and relator Smith's

21   allegations in the *Jahr* CSAC.  Dkt. No. 200.

22                              **DISCUSSION**

23   **I.    STATUTORY BACKGROUND**

24         The Court has extensively analyzed the False Claims Act and its *qui tam* provisions in

25   other cases.[2]  *See Silbersher v. Valeant Pharmaceuticals Int'l, Inc.*, 445 F. Supp. 3d 393, 400-02

26   _____

27   [2] "Qui tam is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte
     sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his
28   own.'"  *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 768
     n.1 (2000).

                                        3

(N.D. Cal. 2020).  "The FCA, which Congress originally enacted in 1863, is the government's 'primary litigative tool for combatting fraud' against the federal government."  *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993).  The statute imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the United States government.  31 U.S.C. § 3729(a)(1)(A).  The *qui tam* provisions of the FCA permit a private individual, as a "relator," to bring an action alleging an FCA violation "in the name of the Government."  *Kelly*, 9 F.3d at 745-46 (quoting 31 U.S.C. § 3730(b)(1)).

Since its enactment over 150 years ago, the FCA has gone through a number of significant amendments.  The three statutory bars at issue here -- (1) the first-to-file bar (31 U.S.C. § 3730(b)(5)); (2) the government action bar (31 U.S.C. § 3730(e)(3)); and (3) the public disclosure bar (31 U.S.C. § 3730(e)(4)(A)) -- were added by the 1986 amendments, which sought "to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs."  *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001); *see also Silbersher*, 445 F. Supp. 3d at 401 ("the 1986 amendments were intended to encourage more private enforcement lawsuits," and "[a]t the same time, Congress sought to '*bar* a subset of those suits that it deemed unmeritorious or downright harmful.'") (citations omitted; emphasis in original).[3]  While there is no question that Congress added these bars "in an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits," courts have wrestled with the 1986 amendments because "Congress was never completely clear about what kind of 'parasitic' suits it was attempting to avoid."  *Graham County Soil and Water Conservation District v. United States ex rel. Wilson*, 559 U.S. 280, 295 & 296 n.15 (2010) (quotations and citation omitted).

## II.     INTERVENTION AND THE FCA

Before determining how the statutory bars might apply here, there is a question of whether

---

[3] The public disclosure bar was amended again in 2010.  *See Silbersher*, 445 F. Supp. 3d at 401-02.  These cases were filed after those amendments, and there is no suggestion by any party that the pre-2010 version of the statute applies.

United States District Court
Northern District of California

1    the relators in *Jahr*, *Smith*, and *Wadsworth* can proceed at all under the FCA.  Defendants contend

2    that "[o]nce the United States intervenes in an FCA case, nothing in the Act permits a relator to

3    continue separately prosecuting an FCA claim in that same case."  Dkt. No. 171 at 16.  In effect,

4    defendants say that once the government takes the field, all other players are excluded.

5         The point is not well taken.  Defendants do not cite an express provision of the FCA for

6    their position, but suggest that it emanates as an abstract but perceptible principle from two

7    indirect sources:  (1) Section 3730(b)(4)(A), which states that if the United States elects to

8    intervene, it "shall proceed with the action, in which case the action shall be conducted by the

9    Government"; and (2) Section 3730(c)(1), which states that "[i]f the Government proceeds with

10   the action, it shall have the primary responsibility for prosecuting the action, and shall not be

11   bound by an act of the person bringing the action."  *See* Dkt. No. 171 at 16.

12        These portions of the FCA do not carry the load that defendants posit.  Leaving aside the

13   question of whether divining emanations is a sound approach to statutory construction, which is

14   doubtful, nothing in the text of the provisions necessarily excludes a relator from a case after

15   government intervention.  The government may have "primary" responsibility for the litigation,

16   but that does not mean "exclusive" responsibility.  Defendants also overlook the fact that another

17   provision in the FCA expressly contemplates that relators may litigate FCA claims in intervened

18   cases.  Section 3730(c)(1) plainly states that in cases where the government has elected to

19   "proceed[] with the action," the "person bringing the action . . . shall have the right to continue as

20   a party to the action," subject to certain limitations, such as the government's right to seek an

21   order "limiting the participation by the [relator] in the litigation" upon a "showing . . . that

22   unrestricted participation . . . by the person initiating the action would interfere with or unduly

23   delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for

24   purposes of harassment."  31 U.S.C. § 3730(c)(2)(C).

25        Overall, the plain language of the FCA closes the door to defendants' theory.  For this

26   reason, the Court concludes, as many other courts have concluded, that the FCA does not

27   automatically bar relators from the litigation after the government intervenes.  *See, e.g., United*

28   *States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 28 (D.D.C. 2014) ("Nothing in

the text of section 3730 indicates that a relator no longer has standing following intervention by the Attorney General."); *United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-cv-01745-BLF, 2016 WL 3880763, at *10 (N.D. Cal. Jul. 18, 2016) ("Because the United States has partially intervened, its Amended Complaint is the operative complaint for the intervened claims," and "[t]he allegations in the Second Amended Complaint are operative only as to the claims that Dresser is pursuing on her own"). The Supreme Court has also said as much in *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007). The United States intervened, after which the "Government and [relator] filed a joint amended complaint," and "both [the relator's] counsel and the Government's counsel" presented closing arguments to the jury at trial. *Id*. at 464-66. It also bears notice that the government here filed a statement expressing the view that "relators have the right to litigate those causes of action as to which the United States did not intervene." Dkt. No. 245 at 10.

Consequently, dismissal is denied on the ground that "the *Jahr*, *Smith*, and *Wadsworth* Relators are required to cede prosecution of the entire action to the United States." Dkt. No. 171 at 16. Because this conclusion does not involve a controlling question of law over which there is a substantial ground for a difference of judicial opinion, and an immediate appeal would unduly delay the fair and efficient management of this intra-district MDL, defendants' request to certify an interlocutory appeal is denied. *See* 28 U.S.C. § 1292(b); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) ("Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly.").

**III.     THE COURT'S JUNE 14, 2019 ORDER**

Defendants' suggestion that the *Jahr* CSAC should be dismissed because it "defied this Court's June 14, 2019 order" is also denied. Dkt. No. 171 at 4. The Court's minute entry stated that "[t]he relators' amended complaint should focus on those allegations that are not related to Hunters Point as to which the relators wish to proceed. For the allegations related to Hunters Point, the United States will have the primary responsibility for prosecuting the action. 31 U.S.C. § 3730(c)(1)." Dkt. No. 75 at 2. The Court did not "order" the relators "to drop" any allegations

1   relating to Hunters Point, Dkt. No. 171 at 4, and a request for dismissal with prejudice on the basis

2   of this order is an overreach by defendants.

3   **IV.   GOVERNMENT ACTION BAR**

4          The FCA states:  "In no event may a person bring [a *qui tam* action under 31 U.S.C.

5   § 3730(b)] which is based upon allegations or transactions which are the subject of a civil suit or

6   an administrative civil money penalty proceeding in which the Government is already a party."  31

7   U.S.C. § 3730(e)(3).  Defendants say this "government action bar" forecloses the "claims

8   regarding Hunters Point in the *Jahr* Combined Complaint," and relator McLaughlin's "claims

9   against defendants for FCA violations at Hunters Point," because they are "based on the same

10  allegations and transactions at issue in the U.S. Complaint."  Dkt. No. 171 at 4-7.

11         Case law on Section 3730(e)(3) is sparse, and the issue appears to be rarely disputed.  The

12  First Circuit has concluded that Section 3730(e)(3) is "ambiguous" and should be applied "with

13  caution."  *United States ex rel. S. Prawer and Co. v. Fleet Bank of Maine*, 24 F.3d 320, 322, 328

14  (1st Cir. 1994).  Defendants rely almost entirely on *United States ex rel. Bennett v. Biotronik, Inc.*,

15  876 F.3d 1011 (9th Cir. 2017), *see* Dkt. No. 171 at 4-7, which is largely irrelevant, as will be

16  shown shortly.  Most helpful is our circuit's observation in *United States ex rel. Kelly v. Boeing*

17  *Co.*, 9 F.3d 743, 746 (9th Cir. 1993), which construed Section 3730(e)(3) to mean that, if "the

18  government files an action to enforce the FCA, a would-be relator may not later bring any action

19  based on the same underlying facts."  That was the same scenario presented by the handful of

20  circuit cases that have addressed the bar, including *Biotronik*.  *See Biotronik*, 876 F.3d at 1014-15

21  (considering applicability of the government action bar to a *qui tam* complaint filed by relator

22  Bennett in October 2014, following the United States' May 2014 intervention in relator Sant's

23  earlier-filed case); *see also Costner v. URS Consultants, Inc.*, 153 F.3d 667, 672-73, 676 (8th Cir.

24  1998) (considering potential applicability of bar where relators filed *qui tam* action following

25  "previous suits and administrative proceedings in which the government has participated"); *S.*

26  *Prawer and Co.*, 24 F.3d at 323-24 (concluding government action bar did not apply; *qui tam*

27  action at issue was filed in June 1993, following Federal Deposit Insurance Corporation's

28

United States District Court
Northern District of California

1   commencement of an earlier action in November 1992).  These decisions indicate that Section

2   3730(e)(3) operates to bar copycat lawsuits filed by relators after the government acts on a claim.

3        That is not the circumstance here.  The Jahr, McLaughlin, Smith, and Wadsworth relators

4   filed their *qui tam* complaints between August 2013 and March 2016.  The United States did not

5   become a party to any of these actions until January 2019.  The relator actions pre-dated the claims

6   asserted by the United States by years, and appear to have been the catalysts that motivated the

7   government to act at all.  Consequently, it cannot be said that the relators brought a claim "based

8   upon allegations or transactions which are the subject of a civil suit . . . in which the Government

9   is already a party."  31 U.S.C. § 3730(e)(3).  Defendants' view of the government action bar also

10  suffers from relying on the same untenable theory about the preclusive effect of government

11  intervention that the Court has rejected.  *See*, *e.g.*, Dkt. No. 171 at 6 (relators cannot go forward

12  with their Hunters Point claims because the United States has already "intervened as to some, but

13  not all, of the allegations at Hunters Point").  Dismissal under Section 3730(e)(3) is denied.

## V.    FIRST-TO-FILE BAR

15       The FCA states:  "When a person brings an action under this subsection, no person other

16  than the Government may intervene or bring a related action based on the facts underlying the

17  pending action."  31 U.S.C. § 3730(b)(5).  Defendants cite this "first-to-file bar" as another

18  ostensible ground of dismissal.  Dkt. No. 171 at 7-12.

19       Our circuit discussed the first-to-file question in *United States ex rel. Lujan v. Hughes

20  Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001), and in *United States ex rel. Hartpence v. Kinetic

21  Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) (en banc).  In *Lujan*, the circuit held that "Section

22  3730(b)(5)'s plain language unambiguously establishes a first-to-file bar, preventing successive

23  plaintiffs from bringing related actions based on the same underlying facts."  243 F.3d at 1187.

24  That a case might benefit the U.S. Treasury is no exception to the bar.  *Id*.  "The first-filed claim

25  provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar

26  stops repetitive claims."  *Id*.  The bar "precludes a subsequent relator's claim that alleges the

27  defendant engaged in the same type of wrongdoing as that claimed in a prior action even if the

28  allegations cover a different time period or location within a company"; it applies to "later-filed

United States District Court
Northern District of California

8

1    actions alleging the same material elements of fraud described in an earlier suit, regardless of

2    whether the allegations incorporate somewhat different details."  *Id.* at 1188-89.

3         The circuit court, sitting en banc, subsequently determined in *Hartpence* that "related but

4    distinct fraud claims" are not barred by the first-to-file bar.  792 F.3d at 1131.  The decision

5    underscored that the "two alleged frauds are materially different:  the KX fraud allegations are

6    based on government payment for devices which were used, but unnecessary for treatment, while

7    the DWOs fraud allegations are based on the government paying for devices that were never used

8    at all.  The alleged frauds, in short, exist completely independent of one another."  *Id.*  Because

9    "Godecke's second and third claims [we]re based on different material facts than the claims

10   contained in Hartpence's earlier-filed complaint," they were "not precluded by the first-to-file

11   bar." *Id.* at 1132.

12        The question here is whether the claims in the relators' actions are similar enough to

13   earlier-filed claims to be barred under *Lujan*, or distinct enough to go forward under *Hartpence*.

14   For the answer, the Court will use the relators' allegations as presently stated, *see Rockwell Int'l*

15   *Corp. v. United States*, 549 U.S. 457, 473 (2007),[4] to determine if they are precluded because the

16   government was previously notified "of the essential facts of [the] alleged fraud" by an earlier-

17   filed complaint.  *Lujan*, 243 F.3d at 1188.

18        **A.    Relator Smith's Claims**

19        Defendants jointly say that relator Smith's claims are barred because they are "premised on

20   the same alleged material elements of fraud underlying the *qui tam* complaint in *Jahr*, which was

21   filed two and a half years before Smith filed his *qui tam* complaint." Dkt. No. 171 at 8 (citing

22   *Jahr* Dkt. No. 1).  This argument calls for a comparison of the pertinent allegations in the original

23   *Jahr* complaint to Smith's claims in the *Jahr* CSAC to see if they essentially copied the original.

24   _____

25   [4] In *Rockwell*, the Supreme Court asked the question, "*Which* of the relator's allegations are the
     relevant ones?" in the context of the public disclosure bar.  549 U.S. at 473 (emphasis in original).

26   But the *Rockwell* court's reasoning for looking at the allegations "as amended" is equally
     applicable here.  *See id.*  This is so even though the first-to-file bar speaks of an "action" rather

27   than of "allegations" as in the public disclosure bar.  *See Hartpence*, 792 F.3d at 1131-32
     (applying the first-to-file bar on a claim-by-claim basis).  In any event, it makes little practical

28   sense to ask whether allegations that have now been superseded by amendment might have been
     subject to preclusion under the first-to-file bar.

1    Defendants focus on (1) paragraphs 32 and 33 of the *Jahr* original complaint as alleging "that

2    TtEC knowingly submitted false soil samples"; (2) paragraphs 47, 48, and 51 as alleging "that

3    TtEC managers ordered fraudulent soil sampling"; and (3) paragraph 55 as alleging "that TtEC

4    committed fraud in operating the portal monitor at Hunters Point." Dkt. No. 171 at 9 & nn.17-19.

5        Paragraphs 32 and 33 are much too general to preclude Smith's allegations about soil

6    sampling in the *Jahr* CSAC.  Paragraph 33 of the *Jahr* original complaint says that "[d]efendant

7    Tetra Tech EC, Inc. certified and implied certification [*sic*] that all soils and materials processed at

8    Hunters Point were processed, evaluated, and correctly designated as having met the Remediation

9    Goals, or had failed the Remediation Goals (RG) imposed by the contract with the United States

10   Navy contract, rules, regulations, and protocols." Dkt. No. 1 ¶ 33.  There are no details about the

11   "how" of the fraud, or any specifics about the allegedly false soil sampling.  Such broad and

12   nonspecific allegations would not have provided the government with notice of the material facts

13   of the fraud alleged by Smith in the *Jahr* CSAC, *see Lujan*, 243 F.3d at 1187, which presents far

14   more detailed statements like, "Radiation Control Technicians were ordered by their Tetra Tech

15   EC supervisors to appear to take samples from spray painted marked sample spots, but to actually

16   take samples from areas in the vicinity of the marked spots within the survey unit, usually within

17   25 feet or so." Dkt. No. 148 ¶ 37.

18       Paragraphs 47, 48, and 51 of the *Jahr* original complaint have a heavy focus on Jane

19   Taylor and Marie Winder, who are alleged to have been lacking in qualifications, among other

20   facts.  *See*, *e.g.*, Dkt. No. 1 ¶ 13 ("Jane Taylor was hired by New World Environmental, Inc. to

21   perform nuclear radiation RCT safety, remediation and oversight work for Tetra Tech on the

22   United States Navy remediation project at Hunters Point Naval Shipyard despite [New World]

23   being advised of [her] lack of qualifications").  Paragraph 51 alleged that "[s]upervisors and

24   management of Tetra Tech EC, Inc. observed the failures of Jane Taylor, Marie Winder and the

25   non-RTC laborers they supervised to test and sample the Survey Unit soil according to the terms

26   and conditions required by the United States Navy, and were informed of the failures of Jane

27   Taylor, Marie Winder and the non-RTC laborers they supervised.  Supervisors and management of

28   Tetra Tech EC, Inc. did not intercede and compel proper surveys and sampling of Survey Unit

United States District Court
Northern District of California

10

soils by Jane Taylor and Marie Winder. . . . The failure of supervisors and management of Tetra Tech EC, Inc. to intercede and enforce proper surveys and sampling of Survey Unit soil was due in part to the protected status of Jane Taylor due to her sexual relationship with Tetra Tech EC, Inc. Construction Superintendent, Dennis McWade." Dkt. No. 1 ¶ 51.

These allegations, and others of similar specificity, would plausibly have provided the government with notice of the material facts of similar claims by Smith about fraudulent soil sampling and surveying at Hunters Point with Jane Taylor's involvement. Paragraph 27 of the *Jahr* CSAC alleges, for example, that "Tetra Tech EC management . . . pressured New World Environment General Manager Mike Wilson to have the conveyer belt system alarm less frequently to save costs. Mike Wilson pressured his brother, Gary Wilson, and Jane Taylor, an HP who was in a sexual relationship with Gary Wilson at that time, to take steps so the conveyer belt system did not alarm properly in violation of the contractual terms with the Navy. . . . Gary Wilson and Jane Taylor decreased the sensitivity and then later in late 2005 and early 2006 turned off the PCB Hot Spot alarm." These allegations are dismissed under the first-to-file bar.

Paragraph 55 of the *Jahr* original complaint alleged that in December 2010, "[t]he portal monitor was shut down and packed away," and two tankfuls of "chemical and liquid wastes from a Radiologically Controlled Area" were permitted out of Hunter Point without being "subjected to portal monitor screening, nor screening upon leaving the Hunters Point Shipyard by radiation remediation RCT specialists." Dkt. No. 1 ¶ 55. Smith's claims in the *Jahr* CSAC similarly allege that radioactive waste was improperly removed from Hunters Point via manipulation of the portal monitor. *See* Dkt. No. 148 ¶ 30 ("Tetra Tech EC also took steps to obtain false portal monitor clearance of the PCB Hot Spot soil. Tetra Tech EC had Hubbard and Joe Lavelle harass HPs to give clearance to trucks processed through the portal monitor. Tetra Tech also falsely shut down the portal monitor under the guise of needs for repair when PCB Hot Spot soil shipments were planned to go through the portal monitor."); ¶ 47 ("Pipe that was falsely given clearance as non-radioactive waste was loaded into large tractor trailers. At times, when a large number of trucks of falsely scanned and cleared pipes and debris were to be shipped off Hunters Point, TTEC would

United States District Court
Northern District of California

1    not permit the portal monitor to operate claiming it was not working properly"). These allegations

2    are also dismissed.

3            Relator Smith's claims are not barred simply because other relators had alleged earlier than

4    Smith "that the Tetra Tech Defendants violated the FCA at Hunters Point." Dkt. No. 171 at 9.

5    That is much too nondescript to have provided the government with notice of the material facts of

6    the specific frauds alleged by Smith.[5] Defendants did not identify any other portions of the *Jahr*

7    original complaint or any other complaint, and so the Court declines to dismiss Smith's other

8    claims under the first-to-file bar at this time.

9            **B.    Wadsworth Relators' Claims**

10           For the Wadsworth relators' claims, defendants have pointed to paragraph 55 of the *Jahr*

11   original complaint as alleging that "vehicles and loads were not properly scanned at the portal

12   monitor." Dkt. No. 171 at 9. The Wadsworth relators do not make any allegations about the

13   portal monitor in the *Jahr* CSAC, *see* Dkt. No. 148, so there is no preclusion on this basis.

14           Defendants also pointed to paragraph 44 of the *Jahr* original complaint as making

15   "allegations concerning IO Environmental." Dkt. No. 171 at 9. The paragraph alleged that IO

16   Environmental improperly hired Thorpe Miller, who was the son of a Navy RASO Radiological

17   Site Manager, as well as his wife, Karisa Miller, on the basis of "nepotis[m]" and "without a

18   competitive hiring process." Dkt. No. 1 ¶ 44. The Wadsworth relators' claims in the *Jahr* CSAC

19   contain the allegation that "Thorpe Miller knew that he did not have the education, training, skills,

20   and experience . . . and that he was hired into the position in large part due to the request of his

21   mother," and that "Karisa Miller . . . was offered the position due to the involvement of TTEC

22   General Manager Dougherty due to her in-law relationship with RASO manager Laurie Lowman."

23   Dkt. No. 148 ¶ 62. These claims are repetitive of the earlier-filed *Jahr* claims, and are dismissed.

24           Defendants' suggestion that "[b]ecause the Court deemed *Wadsworth* related to *Jahr*, as a

25   matter of law, the later-filed *Wadsworth* case is barred," Dkt. No. 171 at 10, is not well taken.

26

27   _____

28   [5] The same is true of the Shaw defendants' argument that "*McLaughlin* precludes *Smith* under the first-to-file bar" because "both Relator Smith and Relator McLaughlin allege[d] supposed fraud at Treasure Island, and Relator McLaughlin filed his complaint first." Dkt. No. 201 at 5.

1    Cases are related under our District's Civil Local Rule 3-12(a) when:  "(1) The actions concern

2    substantially the same parties, property, transaction, or event; and (2) It appears likely that there

3    will be an unduly burdensome duplication of labor and expense or conflicting results if the cases

4    are conducted before different Judges."  This is not at all the inquiry of "relatedness" for purposes

5    of the first-to-file bar.  *See Lujan*, 243 F.3d at 1189 (bar applies to "later-filed actions alleging the

6    same material elements of fraud described in an earlier suit, regardless of whether the allegations

7    incorporate somewhat different details").  Defendants also overlook the principle that the first-to-

8    file bar does not preclude "related but distinct fraud claims."  *Hartpence* 792 F.3d at 1131.

9        **C.    Relator McLaughlin's Claims**

10    Relator McLaughlin's claims are barred in their entirety.  In response to defendants'

11    motion, Wadsworth stated that he "does NOT contest for this motion that the essential elements of

12    the *Wadsworth* 2016 complaint, *if* one ignores who the prime contractor was for Parcels D-1, IR-

13    18, and IR-07, **and ignores** where the RAD fraud was conducted, are similar to McLaughlin's

14    allegations at section K paragraphs 239-251 of his TAC."  Dkt. No. 180 at 12 (emphasis in

15    original).  McLaughlin forthrightly acknowledged that "[t]his concession could meet the first part

16    of the *Hartpence* test for application of the first-to-fi[l]e bar."  *Id.*

17    McLaughlin says that the "second part of the test for the first-to-file bar, that *McLaughlin*'s

18    action be found to have 'provided no additional benefit to the government' is not met."  *Id.*  But

19    the question of a government benefit is not a relevant consideration.  *Lujan* turned away a similar

20    argument by the relator to the effect that "§ 3730(b)(5) should not bar her case because her action

21    could benefit the U.S. Treasury," and concluded that "Section 3730(b)(5)'s plain language

22    unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related

23    actions based on the same underlying facts," and "*does not contain exceptions*."  *Lujan*, 243 F.3d

24    at 1187 (emphasis added); *see also Hartpence*, 792 F.3d at 1131.  Consequently, to say that

25    McLaughlin's claims may have "provided [an] additional benefit to the government" is of no

26    moment.

27    So too for the fact that relator McLaughlin alleged the same kind of fraud for different

28    parcels.  *See Lujan*, 243 F.3d at 1188 (bar "precludes a subsequent relator's claim that alleges the

United States District Court
Northern District of California

1    defendant engaged in the same type of wrongdoing as that claimed in a prior action even if the

2    allegations cover a different time period or location within a company").  Simply saying that the

3    same fraud occurred on different parcels of the Hunters Point Shipyard does not make for two

4    different frauds that "exist completely independent of one another."  *Hartpence*, 792 F.3d at 1131.

5    It may be that a "Fact Sheet" put out by the Navy did not include the parcels identified by

6    McLaughlin in "the geographic areas that [the Navy] investigated for fraud," Dkt. No. 180 at 12-

7    13, but that does not establish that the government was not on "notice of the essential elements of

8    [the] alleged fraud" as to those parcels as well.  *Lujan*, 243 F.3d at 1187.

9          Overall, relator McLaughlin's claims are barred by the first-to-file bar.  They are dismissed

10   on that basis, and the Court need not take up defendants' other arguments directed to those claims.

11   The *McLaughlin* case, No. 14-1509, will be closed.

12   **VI.    PUBLIC DISCLOSURE BAR**

13         The public disclosure bar is set out in 31 U.S.C. § 3730(e)(4)(A), which provides:

14         The court shall dismiss an action or claim under this section, unless opposed
           by the Government, if substantially the same allegations or transactions as
15         alleged in the action or claim were publicly disclosed --

16         (i) in a Federal criminal, civil, or administrative hearing in which the
           Government or its agent is a party;
17
           (ii) in a congressional, Government Accountability Office, or other Federal
18         report, hearing, audit, or investigation; or

19         (iii) from the news media,

20         unless the action is brought by the Attorney General or the person bringing
           the action is an original source of the information.
21

22         In addition, under 31 U.S.C. § 3730(e)(4)(B), "original source" is defined as "an individual

23   who either (i) prior to a public disclosure under subsection(e)(4)(a), has voluntarily disclosed to

24   the Government the information on which allegations or transactions in a claim are based, or

25   (2) who has knowledge that is independent of and materially adds to the publicly disclosed

26   allegations or transactions, and who has voluntarily provided the information to the Government

27   before filing an action under this section."

28

United States District Court
Northern District of California

1       For the substantial similarity required under this bar, our circuit has stated in *United States*

2  *ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565 (9th Cir. 2016), that "whether [a relator's]

3  complaint is substantially similar to prior public reports depends on the level of generality at

4  which the comparison is made," and in making this comparison, courts are not to "read[] *qui tam*

5  complaints at only the 'highest level of generality,'" thereby "wip[ing] out *qui tam* suits that rest

6  on genuinely new and material information."  816 F.3d at 575-78 (citations omitted).  The bar

7  does not apply where a relator's complaint "alleges fraud that is different in kind and in degree

8  from the previously disclosed information."  *Id*. at 578.  A relator's complaint may go forward

9  where it contains "specific allegations" in contrast to prior public reports that "merely allege

10  general problems" such as "mismanagement, technical difficulties, and noncompliance with

11  contract and policy directives."  *Id*. at 579.  The Court is to "allow relators who provide the

12  Government with genuinely new and material information of fraud to move forward with their *qui*

13  *tam* suits."  *Id*.

14       A relator's allegations are substantially similar to a prior disclosure, and are barred, where

15  the allegations and disclosure are "similar in kind, even if slightly less so in degree."  *United*

16  *States ex rel. Solis v. Millennium Pharmaceuticals, Inc.*, 885 F.3d 623, 627 (9th Cir. 2018).  "The

17  prior disclosure 'need not be identical with'" the relator's allegations to have a preclusive effect,

18  and a relator's claims are "substantially similar to those in the prior public disclosures" when they

19  are "close enough in kind and degree to have put the government on notice to investigate the

20  alleged fraud before [the relator] filed his complaint."  *Id*. (citing *Mateski*, 816 F.3d at 574).

21       For relators Smith and Wadsworth, defendants proffer four "public disclosures":  three

22  local media reports in 2014, and Tetra Tech EC, Inc.'s 2014 Investigation Report.  Dkt. No. 171 at

23  13-14; Dkt. Nos. 172, Ex. 1-4.  For the last of those items, defendants make a cursory argument

24  that "[a] disclosure may . . . bar a relator's claim if it is made in a federal report, hearing, audit, or

25  investigation made to a public official 'whose duties extend to the claim in question in some

26  significant way,' even if not widely disclosed to the general public.'"  Dkt. No. 171 at 13-14

27  (citations omitted).  This undeveloped comment is a weak rejoinder to the relators' observation

28  that the report does not squarely fit any of the statutorily defined channels for the public disclosure

United States District Court
Northern District of California

1   bar.  *See* Dkt. No. 180 at 14 n.8 ("Exhibit 4, the 'Investigation Conclusion: Anomalous Soil

2   Samples at Hunters Point Naval Shipyard' report . . . does not meet any of the subsection criteria

3   as 'publicly disclosed'"); *see also* 31 U.S.C. § 3730(e)(4)(A)(i), (ii), (iii).  In light of the

4   defendants' failure on this score, the Court declines to consider the Investigation Report as a

5   possible public disclosure.

6        For the three 2014 local media reports, the relators do not deny that they qualify as "news

7   media" under 31 U.S.C. § 3730(e)(4)(A)(iii) and can properly be considered by the Court.  Dkt.

8   No. 180 at 14-15 & n.8.  The Court finds that these allegations were publicly disclosed by those

9   news reports, and the relators are consequently barred from asserting them:

10      • Soil from Hunters Point was not "being screened for radiological contamination."

11         Dkt. No. 172-1.

12      • Dirt was removed from Hunters Point "without proper testing" for radiation or

13         being "cleared for disposal. *Id*.; Dkt. No. 172-2.

14      • Soil "dug up near buildings contaminated with radiation [was] being shipped off

15         site to 'state facilities not . . . licensed to accept low-level radioactive waste.'"  Dkt.

16         No. 172-1.

17      • The "sensitivity of the portal monitors was decreased below the manufacturer's

18         specifications." Dkt. No. 172-2.

19      • Trucks "left the site with potentially radioactive material" without ever "pass[ing]

20         through the portal monitor." *Id*.

21      • Trucks that "failed the portal monitor" were "still 'released to go off site.'"  *Id*.

22      • "Unqualified personnel" were promoted to "senior, safety-sensitive roles."  *Id*.

23       Substantially similar allegations appear in the Smith and Wadsworth relators' claims, at a

24  minimum at Dkt. No. 148 ¶¶ 30, 47, 62, and those claims are barred.  The original source

25  exception does not apply because the relators' allegations that they are original sources are

26  conclusory and implausible. *Id*. ¶¶ 1, 6, 12; *see Silbersher*, 445 F. Supp. 3d at 406-07.  And the

27  government has not opposed the dismissal of relators' claims pursuant to the public disclosure bar.

28  *See* 31 U.S.C. § 3730(e)(4)(A).

The Shaw defendants have identified three other news articles from 2012 and 2014 that relate to Treasure Island.  Dkt. No. 201 at 6-7; Dkt. No. 202, Exs. A-C.  The relators "do not dispute that these three stories are 'news media' under subsection (iii)."  Dkt. No. 212 at 11.  The Court agrees, and takes judicial notice of the three articles.  The articles are fairly general, but they do specifically disclose that Shaw Environmental & Infrastructure Inc. received a notice of violation "for repeatedly digging, piling, spreading and transporting dirt from sites contaminated with toxic chemicals," which materials Shaw "had not tested . . . for radioactivity," Dkt. No. 202-1 at ECF p. 7; and Chicago Bridge and Iron directed a truck to "remov[e] radioactive and chemically contaminated soil from one known toxic site, then transport[] and dump[] it on a site being 'cleaned,'" Dkt. No. 202-3 at ECF p. 6.  Similar allegations in the relators' claims, *see*, *e.g.*, Dkt. No. 148 ¶¶ 72-77, 80, are barred by the public disclosure bar and are dismissed.

## VII.    INDIVIDUAL MOTIONS TO DISMISS

The separate dismissal motions, Dkt. Nos. 176, 178, 200, are denied with one exception because they ask for too much with too little supporting authority.  For example, defendants say that the relators did not specifically identify a false claim for payment by Tetra Tech.  *See* Dkt. No. 176 at 7-9; Dkt. No. 178 at 11; Dkt. No. 200 at 19.  This is not the fatal flaw defendants suggest.  A *qui tam* plaintiff "may, but need not, provide representative examples to establish the payment element of the prima facie case.  The Rule 9(b) standard may be satisfied by pleading with particularity a reasonable basis to infer that the government either paid money or forfeited moneys due."  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 n.4 (9th Cir. 2010).

The Shaw defendants make the much more persuasive point that Smith's complaint did not comply with Federal Rule of Civil Procedure 10(b), which requires a "practicable" organization of a complaint by numbered paragraphs and other measures to "promote clarity."  In the Court's experience, it is a rare day when Rule 10(b) comes into play.  But as the Shaw defendants aptly note, "Smith 'has not set forth separate claims in separate counts,' and 'does not even identify a single cause of action.'"  Dkt. No. 200 at 17 (citations omitted).  The same goes for the Wadsworth relators' claims.  *See* Dkt. No. 148.  The *Jahr* CSAC is also striking in that it contains

1 | 97 substantive paragraphs, and it is impossible to tell how many claims relators intend to
2 | prosecute.

3 | These shortcomings may not rise to a violation of Rule 8's requirement of a short and plain
4 | statement of a claim, but they made reading the relators' complaints, and evaluating their
5 | sufficiency under Rule 9(b) and Rule 12(b)(6), an unnecessary and burdensome struggle.  As it
6 | stands presently, the combined complaint does not comply with Rule 10(b).  The *Jahr* CSAC is
7 | dismissed in its entirety for this reason.  This should be readily fixable in an amended complaint.
8 | Relators should use this opportunity to improve the overall focus and clarity of their claims.
9 | Claims dismissed in this order must be removed.  Defendants may renew specific dismissal
10 | arguments, as warranted, in response to the relators' amended claims.

## VIII.   REQUESTS FOR JUDICIAL NOTICE OF DOCUMENTS FILED ON DOCKET

12 | Defendants filed multiple requests for the Court to take judicial notice of complaints,
13 | briefs, and other filings on the ECF dockets of the very same action in which the RJN was filed, or
14 | a related action.  *See*, *e.g.*, Dkt. No. 172, Exs. 7-10; Dkt. No. 189, Exs. 1-2; Dkt. No. 177, Exs. 1-
15 | 5; Dkt. No. 178 at 1 n.4.  These requests are denied as inappropriate and highly inefficient.  These
16 | ECF dockets are already voluminous enough, and there simply is no need for another request for
17 | court action.  In the future, filed documents like these must be cited to by ECF case and docket
18 | number.  All other requests for judicial notice are denied except as otherwise noted, and the Court
19 | made no use of any disputed facts in this order.

20 | ## CONCLUSION

21 | The *Jahr* CSAC and the *McLaughlin* TAC are dismissed.  The Smith and Wadsworth
22 | relators may amend their claims, and are directed to file a combined third amended complaint in
23 | the *Jahr* action by July 28, 2022, consistent with this order.  The relators may not add new claims
24 | or defendants without prior approval by the Court.  The *McLaughlin* case will be closed.

25 | **IT IS SO ORDERED.**

26 | Dated:  June 28, 2022

27

28 | JAMES DONATO
United States District Judge