UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES ex rel. JAHR et al.,<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH EC, INC. et al.,<br><br>Defendants. | Case No. 13-cv-03835-JD<br><br>**OMNIBUS ORDER RE MOTIONS TO DISMISS, STRIKE AND AMEND** |
| UNITED STATES ex rel. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH EC, INC. et al.,<br><br>Defendants. | Case No. 16-cv-01106-JD |
| UNITED STATES ex rel. WADSWORTH et al.,<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH EC, INC. et al.,<br><br>Defendants. | Case No. 16-cv-01107-JD |

The pending motions in these related False Claims Act (FCA) cases are resolved as follows. The parties' familiarity with the facts and record is assumed.

## I.   MOTIONS TO DISMISS RELATORS' COMBINED THIRD AMENDED COMPLAINT

The Court dismissed the relators' Combined Second Amended Complaint (CSAC) in its entirety under Federal Rule of Civil Procedure 10(b), and also dismissed certain of the relators'

allegations pursuant to the first-to-file bar and public disclosure bar in the False Claims Act (FCA), 31 U.S.C. § 3730. *See* Dkt. No. 283.[1] Relator Anthony Smith and the Wadsworth relators (Donald K. Wadsworth and Robert McLean) were granted leave to amend, and they have filed a Combined Third Amended Complaint (CTAC). Dkt. No. 289.[2]

The Tetra Tech defendants (Tetra Tech) and the Shaw defendants (Shaw) have again moved to dismiss Smith's and the Wadworth relators' claims in the CTAC. Dkt. Nos. 297, 296.

**A.     First Cause of Action - "Hunters Point PCB Hot Spot Soil Fraud 2006-2007"[3]**

Tetra Tech's suggestion that the relators' first cause of action is precluded by the Court's prior order and the public disclosure bar, Dkt. No. 297-1 at 5, is not well taken. Tetra Tech reads the *qui tam* complaint "at only the highest level of generality," which our circuit has disapproved. *United States ex rel. Mateski v Raytheon Co.*, 816 F.3d 565, 578 (9th Cir. 2016) (cleaned up). Tetra Tech points to news articles that disclosed that "soil at Hunters Point did not receive 'proper testing' and purportedly did not go through the required 'screening process.'" Dkt. No. 297-1 at 5. But the relators' complaint alleges in much greater detail that Tetra Tech, *inter alia*, "took actions to have the conveyer belt system operate at excessive speeds, and at decreased radiological sensor sensitivity levels," and "TTEC supervisors had RCTs hand scan soil loads that were far in excess of the thickness density for the radiological sensors contrary to the contract, and hand scanned at speeds and distances that were greater than set forth." CTAC ¶¶ 30, 36. Tetra Tech's reference to public disclosures of "general problems" does not support the preclusion under the public disclosure bar of complaint allegations that present much more "specific allegations." *Mateski*, 816 F.3d at 579.

Tetra Tech's attempt to dismiss the relators' allegations as precluded under the first-to-file bar also fails. Tetra Tech says that the "Original *Jahr* complaint alleges 'the same type of

---

[1] Unless otherwise noted, all docket number references are to the ECF docket for *Jahr*, Case No. 13-cv-03835-JD.

[2] The Jahr relators are also parties to the CTAC, but they "bring no allegations and bring no claims against any defendants other than as set forth in the USFAC that were initially alleged in the August 19, 2013 JAHR complaint, Case Number CV-13-3835." CTAC ¶ 27.

[3] These subheadings for the relators' causes of action are taken from the CTAC. Dkt. No. 289.

wrongdoing' -- *i.e.*, the improper screening of soil at Hunters Point," but this is unsupported. Dkt. No. 297-1 at 5-6 (citing ¶ 62 of the original *Jahr* complaint). Paragraph 62 had to do with the scanning of "equipment leaving Hunters Point Naval Shipyard" including, for example, the failure to scan "rented fencing [that] was used at Hunters Point" before returning it. *See* Dkt. No. 311-1, Table 1 at 2-3. The relators' first cause of action, on the other hand, refers to the scanning of soil. *Id*. at 2-6. The scanning of equipment leaving the job site and soil at the site are not the same thing. The first-to-file bar only stops "repetitive claims" which allege that the "defendant engaged in the same type of wrongdoing." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187-88 (9th Cir. 2001). Tetra Tech has not shown that that applies here.

Tetra Tech's cursory limitations argument also falls short. Dkt. No. 297-1 at 6. Under 31 U.S.C. § 3731(b), the relators' claims are timely if they are brought within 6 years from the date of the FCA violation, or within "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed." 31 U.S.C. § 3731(b)(1)-(2). As the Supreme Court has clarified, the extended limitations period in § 3731(b)(2) is available in "relator-initiated suit[s]" like this one in which "the Government has declined to intervene." *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1511-14 (2019). Tetra Tech's sole support for the argument that the relators' claim is untimely even under § 3731(b)(2) is that on May 24, 2012, the relators filed a state court complaint alleging both that there had been "improper practices relating to remediation of radioactive material by Tetra Tech EC, Inc.," and that these practices had been "report[ed] to investigators of the United States Nuclear Regularly [*sic*] Commission." Dkt. No. 297-1 at 6 (quoting "*Andrews* Complaint ¶¶ 5-10"). On that basis, Tetra Tech asserts that "the government knew or should have known the facts relevant to such violations by May 24, 2012," and so "[t]he limitations period . . . expired at the latest by May 24, 2015, ten months before Smith's complaint." *Id*. Even assuming that the "*Andrews* Complaint" allegations can properly be considered in this context, that the *Andrews* complaint alleged a supposed report to the United States Nuclear Regulatory Commission by no means establishes for purposes of 31 U.S.C.

3

§ 3731(b)(2) that by the date that complaint was filed, the "facts material to the right of action" were "known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." The limitations defense consequently is not established "on the face of the [relators'] complaint," nor by the "matters outside of the pleadings" that Tetra Tech has pointed to. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

### B. Second Cause of Action - "Hunters Point Soil and Pipe Sample 'Vicinity Fraud'"

The relators' second cause of action is also not precluded by the first-to-file bar. The allegations in the Original *Jahr* Complaint that were identified by Tetra Tech, *see* Dkt. No. 297-1 at 6-7, and the allegations in the relators' CTAC, *see* Dkt. No. 289 ¶¶ 41-57, allege "related but distinct fraud claims." *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1131 (9th Cir. 2015). The Original *Jahr* Complaint allegations identified by Tetra Tech focused on the "towed array" detector device and the "fraudulent use of the towed array report in the taking of soil samples"; improper soil sampling taken and supervised by Jane Taylor and Marie Winder; destruction of radiation survey records that had results above release levels; and the improper radiological survey of rented fencing that was to be returned. *See* Dkt. No. 311-1, Table 2. The relators' second cause of action in the CTAC, on the other hand, focuses on "'vicinity fraud' soil sampling," *i.e.*, the taking of soil samples "in the vicinity of the identified elevated radiological areas but not from the actual elevated radiological identified spots"; and the fraudulent scanning and sampling of removed sewer line and stormwater drain line pipes, including by scanning only one portion of the pipe instead of the entire pipe and by performing hand scans too fast and too far from the surface of the pipes. *Id.*

The soil sampling vicinity fraud allegations are, however, barred by the public disclosure bar. Tetra Tech has proffered that an October 13, 2014 NBC Report disclosed that "TtEC employees 'collected [soil samples] from locations different than the ones specified' so that less radiation was measured." Dkt. No. 297-1 at 7. In addition, a Nuclear Regulatory Commission (NRC) investigation report that was disclosed to TtEC on February 11, 2016, discussed that TtEC employees "falsely obtained lower radiological readings by moving 5 to 10 feet in another

4

1   direction and obtaining a new sample from that location rather than from specified areas that were
2   physically marked and also identified on a map." *Id*. at 7-8 (cleaned up).  Relator Smith "does not
3   contest" that the NRC report "is a public disclosure that references 'vicinity fraud' soil sampling,"
4   and he requests leave to amend his original source allegations.  Dkt. No. 304 at 8-9.  He fails to
5   discuss the NBC news report at all.  Smith has had many opportunities to amend.  At this
6   advanced stage of the case, his request for further leave to amend is denied, and his soil sampling
7   vicinity fraud allegations are dismissed with prejudice pursuant to the public disclosure bar.
8   31 U.S.C. § 3730(e)(4)(A).

9   The pipe scanning allegations in the second cause of action will go forward.

10   **C.    Third Cause of Action - "Hunters Point Building Survey Scanning Fraud"**

11   Tetra Tech's request to dismiss the third cause of action under the first-to-file bar is denied.
12   Dkt. No. 297-1 at 8-9.  As Tetra Tech acknowledges, relator Smith's third cause of action "alleges
13   that Defendant TtEC improperly scanned buildings for radiological contamination by running
14   building scans too quickly and by manipulating the data generated by those scans."  Dkt. No. 327
15   at 6 (citing CTAC ¶ 61).  Paragraph 62 of the Original *Jahr* complaint, on the other hand, had to
16   do with the improper scanning of "equipment leaving Hunters Point Naval Shipyard."  Dkt.
17   No. 311-1, Table 3 at 2.  These are "distinct" frauds.  *Hartpence*, 792 F.3d at 1131.

18   Even so, relator Smith's third cause of action is too close to a claim in which the
19   Government has already intervened.  Paragraphs 67 and 68 of the United States' First Amended
20   Complaint in Intervention Against Tetra Tech EC, Inc., Dkt. No. 82, allege that "Tetra Tech
21   manipulated and falsified the building survey data that it provided to the Navy, rather than
22   providing actual radiation detection results from a full building survey.  Tetra Tech falsified data
23   collected from radiological scans of buildings throughout Hunters Point, including but not limited
24   to Buildings 103, 113, 113A, 130, 146, 253, 272, 351, 351A, 365, 366, 401, 411, 439, and 810."
25   Dkt. No. 82 ¶¶ 67-68.  As the Court has stated, the Government will prosecute the action for its
26   intervened claims.  Dkt. No. 283 at 5-6 (citing 31 U.S.C. § 3730).  For that reason, the relators
27   were directed not to allege claims that duplicate or overlap with the Government's intervened
28   claims.  *See* Dkt. No. 75; *see also* 31 U.S.C. § 3730(c)(3) ("If the Government elects not to

5

proceed with the action, the person who initiated the action shall have the right to conduct the action."). The relators' CTAC states that its third cause of action is alleging "fake[d] building scans in ways in addition to and different from the fraud schemes" alleged by the Government, Dkt. No. 289 ¶ 61, but that is not a fair characterization of the relators' or the United States' operative complaints. The third cause of action is dismissed with prejudice on that basis.

### D. Fourth Cause of Action - "Hunters Point Copper Removal and Sale"

Dismissal is denied for the fourth cause of action. Tetra Tech points to the Court's prior ruling barring "claims that trucks left the site with potentially radioactive material without ever passing through the portal monitor." Dkt. No. 297-1 at 9-10 (cleaned up). But relator Smith's fourth cause of action has to do with something entirely different: "copper scavenging" and Tetra Tech's theft of copper and other valuable metals from Navy buildings. CTAC ¶¶ 65-68.

The first-to-file bar argument is denied for the same reason. The thrust of the Original *Jahr* complaint allegations pointed to by Tetra Tech is that Tetra Tech allegedly failed to "screen all trucks and their loads through the portal monitor," Dkt. No. 297-1 at 10 (quoting Original *Jahr* ¶¶ 55, 70), not that it engaged in the theft of copper and other valuable metals.

Tetra Tech's cursory statute of limitations argument, *id.*, is denied for the same reasons discussed for the relators' first cause of action above.

Tetra Tech improperly raised a new argument in its reply that "the purported theft of copper is outside the scope of TtEC's remediation contracts." Dkt. No. 327 at 7. As the Court's Standing Order for Civil Cases indicates, reply papers may not raise new points that could have been addressed in the opening brief. Standing Order ¶ 15. The Court declines to consider the argument.

### E. Fifth Cause of Action - "Treasure Island - Copper Removal and Sale While on the Clock"

The fifth cause of action was alleged by relator Smith against Shaw. CTAC ¶¶ 73-78. Shaw's argument for dismissal under the statute of limitations, Dkt. No. 296 at 11-12, is denied. Shaw argues that Smith cannot state a claim "[u]nder the six-year FCA statute of limitations," *id.*, but *Cochise Consultancy*, 139 S. Ct. 1507, held that the limitations period may be tolled under 31 U.S.C. § 3731(b)(2) up to a maximum of 10 years, if that statutory subsection has been satisfied.

6

And Shaw cites to no valid, controlling authority that supports its assertion that Smith was required to "allege facts to plausibly establish that the Government did not know, or should not have known, facts material to its alleged right of action before March 4, 2013." Dkt. No. 296 at 12.

"A district court may dismiss a claim '[i]f the running of the statute [of limitations] is apparent on the face of the complaint.' However, a district court may do so 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting *Jablon*, 614 F.2d at 682). The assertions of the CTAC do not rule out the possibility that relator Smith will be able to prove that the statute was tolled under 31 U.S.C. § 3731(b)(2), and Shaw has not submitted any materials outside of the pleadings that establish otherwise. *See Jablon*, 614 F.2d at 682.

### F. Sixth Cause of Action - "False Reports and Certification for Payment That Radioactive Samples and Materials Had Been Properly Handled, Retained, or Disposed"

Shaw argues that the sixth cause of action should be dismissed because it is based "on the same core allegations that the Court dismissed." Dkt. No. 296 at 5. This is not a fair characterization of the sixth cause of action. It is true that paragraph 80 of the CTAC repeats the background allegations in paragraph 72 of the CSAC, which the Court found to be precluded by the public disclosure bar. *See* Dkt. No. 283 at 17. However, a more accurate description of relator Smith's sixth cause of action is that it expands on paragraphs 78 and 79 of the CSAC, Dkt. No. 148 ¶¶ 78-79, which the Court did not find to be barred. *See* Dkt. No. 283 at 17 (finding as barred Dkt. No. 148 ¶¶ 72-77, 80).

The public disclosures referenced by the Court had to do with "'repeatedly digging, piling, spreading and transporting dirt from sites contaminated with toxic chemicals,' which materials Shaw 'had not tested . . . for radioactivity,'" and directing trucks to "remove radioactive and chemically contaminated soil from one known toxic site, then transport and dump it on a site being 'cleaned.'" *Id.* (cleaned up). Smith's sixth cause of action, on the other hand, focuses on the handling, retention, or disposal of radioactive samples and materials. CTAC ¶ 81 ("Shaw/CB&I

7

did not properly segregate and control the radioactive samples but stored the samples in a manner contrary to contract, established Standard Operating Procedures (SOP), and accepted industry standards."). Shaw's request for dismissal pursuant to the prior order is denied.

### G. Seventh Cause of Action - "Treasure Island - Fraudulent Radiological Scans and Soil Samples"

For the seventh cause of action, Tetra Tech's public disclosure bar argument, Dkt. No. 297-1 at 10-11, is denied. The June 9, 2014 news article is too general in what it disclosed, and is not a close enough match with the relator's allegations in the CTAC. *See* 31 U.S.C. § 3730(e)(4)(A); *see also Mateski*, 816 F.3d at 579. Similarly, even assuming that the Former Naval Station Treasure Island Restoration Advisory Board (RAB) Meeting Minutes, Dkt. No. 297-3, Ex. 5, qualify as one of the three specified disclosure channels in the FCA, the portion that Tetra Tech highlighted clearly has to do with "air monitors" and "the air monitoring plan," and not with radiological scans and soil samples, as are the subject of the relator's allegations. *See* Dkt. No. 297-1 at 11 and Dkt. No. 297-3, Ex. 5 at 7, *and compare with* CTAC ¶¶ 87-90.

Shaw's public disclosure bar argument, Dkt. No. 296 at 5-6, is also denied. The disclosures in the news articles described in the prior order, Dkt. No. 283 at 17, are also not similar enough to relator Smith's allegations in the seventh cause of action. *See* 31 U.S.C. § 3730(e)(4)(A); *see also Mateski*, 816 F.3d at 579.

### H. Eighth Cause of Action - "Treasure Island Building 233 and Pandemonium Site II Demolition and Disposal Contrary to Contract"

Relator Smith's eighth cause of action against Shaw is dismissed with prejudice under the public disclosure bar, 31 U.S.C. § 3730(e)(4)(A). The Court's prior order found that news articles from 2012 and 2014, disclosed these facts for Treasure Island: "Shaw Environmental & Infrastructure Inc. received a notice of violation for repeatedly digging, piling, spreading and transporting dirt from sites contaminated with toxic chemicals, which materials Shaw had not tested for radioactivity." Dkt. No. 283 at 17 (cleaned up). Smith's eighth cause of action alleges that Shaw "demolished Building 233 prior to the building being fully and properly scanned and remediated," such that "radioactive contamination" was "extensively mixed with the demolished

debris," and "virtually all the demolition debris was put into intermodal containers as LLRW." CTAC ¶¶ 95-96. Shaw is also alleged to have taken "action to demolish and remove the concrete and related structures that comprised the Pandemonium Site II" without properly scanning the materials, and so "the excavated materials . . . were shipped off Treasure Island as non-radiologically impacted wastes." *Id.* ¶¶ 97, 99.

Relator Smith's allegations are "substantially similar to those in the prior public disclosures," and the public disclosures are "close enough in kind and degree to have put the government on notice to investigate the alleged fraud." *United States ex rel. Solis v. Millennium Pharmaceuticals, Inc.*, 885 F.3d 623, 627 (9th Cir. 2018). Smith has made no allegations that he is an original source under 31 U.S.C. § 3730(e)(4) for this cause of action. *See* CTAC ¶¶ 93-100.

### I. Ninth Cause of Action - "Treasure Island - Soil Movement from Site 12 to Site 6 Violated the Navy Contract"

Smith's ninth cause of action has to do with "work at Site 12 including excavation of soil, transportation of soil on Treasure Island, and the disposition of the excavated material from that site." CTAC ¶¶ 102-103. This cause of action, too, is precluded by the public disclosure bar. The 2012-2014 news articles disclosed that (1) Shaw was improperly "digging, piling, spreading and transporting dirt from sites contaminated with toxic chemicals," which materials Shaw had not tested for radioactivity, and (2) Chicago Bridge and Iron "directed a truck to remove radioactive and chemically contaminated soil from one known toxic site, then transport and dump it on a site being 'cleaned,'" all at Treasure Island. Dkt. No. 283 at 17 (cleaned up). These disclosures would have "put the government on notice to investigate" the fraud alleged in Smith's ninth cause of action. *Solis*, 885 F.3d at 627. Smith has not made any allegations about being an original source, *see* 31 U.S.C. § 3730(e)(4). The ninth cause of action is dismissed with prejudice.

### J. Tenth and Eleventh Causes of Action - "Treasure Island - Softball Area Site Improperly Excavated in Violation of Navy Contract" & "Treasure Island - Excavation and Removal of Treasure Island Soil in Violation of Navy Contract Requirements"

For the tenth and eleventh causes of action, relator Smith "acknowledges . . . that news articles cited by the Court support the idea that some areas excavated had not been tested for

9

radioactivity." Dkt. No. 306 at 11. Nevertheless, Smith claims that "[t]he public disclosure bar does not preclude these causes of action because Smith is an 'original source' under the FCA." *Id*.

Smith specifies that he should be deemed an original source under 31 U.S.C. § 3730(e)(4)(B)(2). This portion of the FCA defines as an original source an individual "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B)(2). Smith's complaint allegations on this score are more robust than Shaw gives him credit for, *see* CTAC ¶¶ 106, 115. Not nearly as robust are Smith's allegations that he provided this information to the Government before he filed his FCA action. He vaguely states that he provided "information" to the Government in a November 10, 2015 in-person meeting, and then goes on to definitively allege that he provided "written information via email" on February 22, 2016. *Id*. The descriptions of the information provided by email are cursory. Even so, Shaw's original source allegations are overall sufficient for these claims to go forward at this stage. Dismissal is denied.

### K. Twelfth Cause of Action - "Treasure Island - False Shipment of LLRW Using Manifests for Non-Rad Material"

Dismissal of the twelfth cause of action is similarly denied. The twelfth cause of action takes aim at Shaw's excavation of soil that was not properly scanned or tested for radiological contamination; and the removal of soil from Radiologically Controlled Areas and shipment of the soil in trucks from Treasure Island without proper scanning, sampling, or lab testing. CTAC ¶¶ 118, 122. These allegations are substantially similar to the information that was publicly disclosed in news articles, Dkt. No. 283 at 17. Even so, at this stage, Smith has adequately alleged that he is an original source under 31 U.S.C. § 3730(e)(4)(B)(2). *See* CTAC ¶ 124.

### L. Thirteenth Cause of Action - "Treasure Island - Fraud in Development and Approval of the TI July 1, 2014 Final Historical Radiological Assessment Supplement Technical Memorandum"

Tetra Tech's request to dismiss the thirteenth cause of action under the public disclosure bar, Dkt. No. 297-1 at 11-13, is denied. Tetra Tech fails to explain how YouTube postings of Tetra Tech's own public presentation would qualify as "news media" under the FCA. It would

1    appear that it does not.  In addition, Tetra Tech's own description of the 2014 local news media

2    article shows that it is not a public disclosure under the FCA for purposes of Smith's thirteenth

3    cause of action.  Tetra Tech says that the article "summariz[ed]" Tetra Tech's presentation,

4    "discussing CDPH's input, and linking to the YouTube videos."  Dkt. No. 297-1 at 12-13.  It also

5    says that the article "clearly put the government on notice to investigate any allegations that TTI

6    had purportedly failed to provide the required notice period for the Memorandum."  *Id*. at 13.

7    Missing from Tetra Tech's explanation, and from the article itself, Dkt. No. 297-3, Ex. 6, is any

8    "direct claim of fraud" or a disclosure of "facts from which fraud can be inferred."  *Mateski*, 816

9    F.3d at 570-71.

### M.   Fourteenth Cause of Action - "Conspiracies Under 31 U.S.C. § 3729(a)(1)(C) to Commit Violations of 31 U.S.C. § 3729(a)(1)(A) and (B), and for Violations of § 3729(a)(1)(A) and (B) Pursuant to Conspiracy"

The fourteenth cause of action is alleged by the Wadsworth relators against Tetra Tech. CTAC ¶¶ 131-47.  These allegations by the Wadworth relators are barred:  (1) that individuals were hired without due diligence, CTAC ¶¶ 133, 134; and (2) that TTEC and its subcontractors intentionally avoided taking soil samples from the highest radioactive areas, and instead took them from "lower radioactive areas," *id*. ¶¶ 137, 140.  These claims are repetitive of the Original *Jahr* complaint, which already alleged that the "defendant engaged in the same type of wrongdoing." *Lujan*, 243 F.3d at 1187-88.  They are dismissed with prejudice.

Other allegations called out by Tetra Tech in its motion to dismiss are not actually allegations of fraud.  *See* Dkt. No. 297-1 at 13-14 (taking aim at relators' allegations that TtEC's Navy contract "required a 'towed array'"; improperly taken "samples generated 'false laboratory results'"; results came from Hunters Point laboratory; Tetra Tech's likely motivation for its conduct).  The first-to-file bar "stops repetitive claims" which allege that the "defendant engaged in the same type of wrongdoing."  *Lujan*, 243 F.3d at 1187-88.  These allegations are not subject to that bar because they do not assert wrongdoing.

Tetra Tech has not otherwise offered any reason to dismiss the remainder of the Wadsworth relators' conspiracy allegations.  *See* Dkt. No. 297-1 at 13-14.  They will go forward.

### N. Shaw Defendants' Dismissal Arguments

Shaw also made some overarching dismissal arguments that are not specific to any particular cause of action. Those arguments do not support the dismissal of any of relator Smith's surviving claims against Shaw. Shaw's cursory first-to-file bar argument is much too general. *See* Dkt. No. 296 at 9-10. Shaw has failed to establish that the original *Jahr* complaint, and Smith's claims against Shaw, allege the same material elements of fraud. *See Lujan*, 243 F.3d at 1187-88. Shaw's arguments about the government action bar and the effect of the Government's intervention in this case, Dkt. No. 296 at 10-11, have already been denied by the Court. *See* Dkt. No. 283 at 4-8. And Shaw's arguments for dismissal under Federal Rules of Civil Procedure 8 and 9, Dkt. No. 296 at 12-15, are also denied. The relators' allegations are adequate under those rules.

## II. UNITED STATES' MOTION TO STRIKE TETRA TECH EC, INC.'S AFFIRMATIVE DEFENSES

In the United States' intervened action, Tetra Tech EC, Inc. has filed an answer to the United States' first amended complaint, including an assertion of twenty-nine affirmative defenses. Dkt. No. 315. The United States has moved to strike Tetra Tech's defense nos. 1, 3-13, 15-21, and 24-28 under Federal Rule of Civil Procedure 12(f), on the ground that those defenses "fail to satisfy the pleading requirements and are legally unsound and insufficient." Dkt. No. 324 at 1. Rule 12(f) provides that the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

The United States' motion to strike defense nos. 3-4, 13, 16, 19, 21, and 27-28 because they "impose unnecessary and substantial discovery and litigation burdens," Dkt. No. 324 at 3, is denied. The United States' desire to "limit unnecessary discovery burdens," *id*., is not a valid basis for striking Tetra Tech's affirmative defenses.

The following are not appropriate affirmative defenses and are stricken: nos. 1 (Failure to State a Claim); 5 (No Falsity); 6 (No Scienter); 7 (No Corporate Liability); 8 (No Materiality); 17 (No Causation); and 18 (Failure to Plead with Particularity).

The United States' request to strike Tetra Tech's affirmative defenses "grounded in equity" (nos. 3, 13, 16, 19, 27-28), Dkt. No. 324 at 4-7, is denied. The United States' own arguments show that these affirmative defenses are not precluded *per se*. The denial is without prejudice to renewal of the dismissal request at a later stage of the case, as warranted.

The United States' additional arguments, Dkt. No. 324 at 8-11, are denied. The request to strike defense no. 13 (waiver) relies on the United States' factual representation that "the DOJ diligently investigated the relators' allegations and intervened." *Id*. at 8. That is not a proper basis for a Rule 12 motion.

Dismissal of defense no. 28 (comparative fault) is denied. The United States presents no controlling authority for its argument that "government negligence provides no defense to the FCA." *Id*. at 9.

The United States' argument that nos. 4, 9, and 10 "have no bearing" on their claims, *id*. at 9, fails to establish that the defenses are "insufficient" or "redundant, immaterial, impertinent, or scandalous" such that they should be stricken under Rule 12(f).

For the United States' assertion that defense nos. 11-13, 15, 19-21, 24-25, and 28 should be stricken because they "lack any factual predicate or legal explanation," *id*. at 10-11, the defenses are understandable on their face and the United States can inquire about them in discovery.

### III. UNITED STATES' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

The United States requests leave to file a second amended complaint that "includes factual updates and two additional claims, CERCLA and common law fraud, based on information learned from discovery, including analysis by a scientific consulting firm." Dkt. No. 342 at 1. The proposed amendments are sufficiently related to the United States' existing allegations. *See id*. at 4-6.

The amendment request is granted under Rule 15(a)(2), which provides that the Court "should freely give leave when justice so requires." The United States is directed to file its second amended complaint as a separate document on the ECF docket by March 12, 2024.

13

Tetra Tech acknowledges that for the scheduling order in this case, "[t]he parties inadvertently omitted a deadline for amending pleadings." Dkt. No. 345 at 4 n.1. The Court makes clear that the time to join other parties or to amend the pleadings is now closed. *See* Fed. R. Civ. P. 16(b)(3).

The parties are in agreement that some additional discovery will likely be necessary in light of the United States' amendment. *See* Dkt. Nos. 345, 348. The parties are directed to meet and confer. If a change to the case schedule is needed, the parties should make every effort to request any changes jointly.

**IT IS SO ORDERED.**

Dated: March 5, 2024

JAMES DONATO
United States District Judge