# David Anton

**Contacts**
David & Joan Anton
1717 Redwood Lane, Davis, CA 95616
Cell: (530) 220-4435
E-Mail: davidantonlaw@gmail.com

August 26, 2024

Honorable James Donato
450 Golden Gate Venue
San Francisco, CA 94102

Re:   3:13-cv-03835-JD & 3:20-cv-01481-JD
      Subpoena For Off The Record Discussions At Deposition

To Judge Donato:

    Counsel for Tetra Tech EC (TtEC) submitted a letter to compel recordings made of off-the-record discussions during deposition breaks in these related cases. (13-cv-03835 Dkt. 421) As part of that submission, TtEC submitted emails as Exhibit D, which included an email I drafted and sent on August 6. (Dkt. 421-4, p.2-3) My email of August 6 took the basic position that recordings on the record were not objected to by Relators, but recordings of off-the-record during breaks that were somehow recorded were objected to as not authorized, consented to, or known to be taking place.

    Due to the inclusion of my email in TtEC's counsel's letter to the Court I am submitting this letter in response to Dkt. No. 421. As the TtEC letter mentioned, this Court on April 18, 2024 addressed as inappropriate the conduct of a number of counsel on both sides during the deposition of Tina Rolfe on March 27, 2024. Since the hearing on April 18, 2024, I have not witnessed conduct that was offensive to the deponent by any counsel on either side. The letter by TtEC's counsel focuses on Mr. Dintzer, counsel for Five Point Holdings. Mr. Dintzer and Five Point have aggressively pursued liability on the part of TtEC. Mr. Dintzer is aggressive, but I have not observed offensive conduct, or demeaning conduct, or yelling while off the record by Mr. Dintzer or any other counsel.

    The letter of TtEC pointed repeatedly to the conduct of Mr. Dintzer <u>while on the record</u>. There is little to no evidence of off-the-record conduct asserted to be sanctionable. The reason TtEC gave for recordings of discussions off-the-record is to support a sanctions motion. (Dkt. 421 p.1)

1

There is a substantial risk that the off-the-record discussions that the numerous counsel in these related cases did not know were being made, will potentially contain confidential communications that were unknowingly picked up by microphones not known to still be live on their person, or on the person of others, or on the table picking up conversations of individuals not fitted with a microphone. Due to the multi-party litigation involved, many attorneys for many parties were involved in these depositions, including Mr. Chiu's. The confidentiality of multiple parties for which there is no claim of improper conduct would be breached by TtEC's request.

The justification for producing all off-the-record discussions picked up during breaks for Mr. Chiu's deposition is not needed, necessary, or appropriate considering the substantial invasion of attorney-client and confidential communications that are possible. The letter of TtEC's counsel cites repeated transcript exchanges claiming that Mr. Dintzer yelled or conducted himself improperly while on the record, and cites to the record are provided. These on-the-record exchanges are cited by TtEC and the video can be used if TtEC's counsel believes the cited conduct was harassing or oppressive. Others may disagree, but I did not find the referenced conduct to be offensive or warrant sanctions as TtEC posits. Rather, some of the exchanges appeared to be part of questioning whether the information the deponent was addressing supported the claim that Mr. Chiu's employer engaged in fraudulent data manipulation, that Mr. Chu and Mr. Miller both discovered and confirmed the fraudulent data manipulation and what did these two individuals do with that information and conclusion. The topic involved is central to this litigation and Mr. Dintzer sought direct answers to those direct questions, where the deponent evaded direct responses time and again.

Further, the deposition of Mr. Chiu triggered very serious issues. Mr. Chiu testified to very important data falsification, and referenced numerous documents and emails he was part of that supported data falsification. After testimony without object to these matters and documents, after a break in the deposition that lasted 24 minutes in which it appeared TtEC counsel conferred with Mr. Chiu, counsel for TtEC claimed that the testimony should be stricken, and the documents clawed back as privileged. (See, Exhibit A, Deposition George Chui pages 458:5-473:8.)

TtEC's letter stated to the Court this was a "deposition of third-party witness George Chiu." However, Mr. Chiu testified that he was a TtEC employee from June 2013 through December of 2018, and that the counsel representing him in the deposition was paid for by TtEC. During the years Mr. Chiu worked at Hunters Point, October 2009 through December of 2018, Mr. Chiu took direction from TtEC, and testified he continues to be

loyal to TtEC. (Exhibit A, Deposition of George Chui pages 481:8-483:24, 485:9-486:13.) The clawback assertion by TtEC was surprising during the deposition because no objections were made during the testimony regarding the documents. The clawback claim was made after the testimony was elicited. (Id. p. 458:5-473:8) The issue of whether these documents should be subject to the clawback terms of the Protective Order is before the Court for resolutions on September 12, 2024, via numerous letters already before the Court. (Dkt. No. 424-No. 425; CPHD v. TtEC 20-cv-01485-JD Dkt. No. 245; Five Point v. TtEC 20-cv-01481-JD Dkt. No. 186)

If TtEC believes it has a basis for sanctions, bring the sanction request based on conduct during the depositions on the record. TtEC has not met the high burden of necessity to warrant the wholesale invasion of confidential discussions that may have unknowingly be captured while off the record.

Very truly yours,

David C. Anton