1  DAVID ANTON (SBN 94852)
   Law Office of David Anton
2  Margaret E. Roeckl (SBN 129783)
   1717 Redwood Lane
3  Davis, CA 95616
   Telephone: (530) 220-4435
4  davidantonlaw@gmail.com

5  Counsel for Relators

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA, ex rel.      **Case No. 3:13-CV-3835-JD**
    ARTHUR R. JAHR, III, et al., ANTHONY
    SMITH, & DONALD K. WADSWORTH et   Related Cases: 3:16-CV-1106-JD
13  al.,                                                     3:16-CV-1107-JD

14       Plaintiffs,

15       v.                             (corrected)

                                        **RELATORS' OBJECTIONS TO TOTAL**
16  TETRA TECH EC., INC., et al.,       **SETTLEMENT AS UNFAIR,**
                                        **INADEQUATE, AND UNREASONABLE**
17       Defendants.                    **TO RELATORS UNDER 31 U.S.C.**
                                        **§3730(d)(1) AND §3730(C)(2)(B)**
18

19                                      HEARING DATE: March 27, 2025

20                                      TIME:              10:00 a.m.

21                                      Courtroom:     11, 19th Floor

22                                      Judge:         Honorable James Donato

23

24

25

26

27

28

**LAW OFFICE OF DAVID ANTON**
1717 REDWOOD LANE
DAVIS, CA 95616

## TABLE OF CONTENTS                                              Page No.

I  INTRODUCTION ……………………………………………..  1

II.      RELATORS DO NOT CONTEST THE $97 MILLION SAC TOTAL
SETTLEMENT. ……………………………………………..  1

  A.    The United States Intervened in the Claim of the Relators That Hunters
Point Was Unsafe Because Radiological Contamination Remained due to the
Fraudulent Remediation Work of Tetra Tech. ………………………………  2

  B.    The Same Operative Facts From the FAC, That Tetra Tech Committed
Fraud by Hiding and Moving Radioactivity Which Forced The Navy To Hire
Contractors To Test And Clean Up The Radioactivity, Were Re-alleged in the
Second Amended Complaint of the USA. ……………………………………  3

III.     ALTHOUGH THE USA AND TETRA TECH SETTLED THE SAC
CLAIM FOR $97 MILLION, THE USA SEEKS TO LIMIT RELATORS'
RECOVERY TO 59% OF THE SETTLEMENT SUM. …....................................  4

  A. The FCA Statutory Language Directs That Relators Are to Share In The
Full Settlement For The "Claim" Encompassed All Causes Of Action…………..  5

    1. The "Claim" Is The Demand Made Upon Tetra Tech In The SAC………  5

    2. "Proceeds Of The Action" Accompanying "Proceeds Of The Settlement
Of The Claim" Support Relators' Right To Share in
The Full Settlement. ………………………………………………..............  6

    3. Statutory Interpretation Must be Done to Effectuate, not Thwart, the
Purposes of the Statute To Encourage And Reward Relators. …………………..  6

  B. Case Law Support Relators Sharing In The Full Settlement of The Second
Amended Complaint. ……………………………………………........................  7

    1. The "Claim" Based On Substantially The Same Operative Facts
Includes The FCA, CERCLA And All Causes Of Action. ……………………..  8

    2.  Ninth Circuit Precedent Interpreting Related §3730(c)(5) Supports
Relators Receiving A Full Share Of The Settlement. ……………………………..  9

    3.  Relators Are Entitled To Share In The Full "Proceeds" Of The
Settlement Of The Claim Regardless Of The Causes Of Action Or Whether
The Damages Are Termed Direct Damages, Punitive Damages, Or Other
Forms Of Damages. ……………………………………………………  11

1

**TABLE OF CONTENTS (CONT'D)**                                    **Page No.**

2

**IV.    RELATORS SHOULD RECEIVE  CLOSE TO THE MAXIMUM**
3
**        25 PERCENT OF THE SETTLEMENT PROCEEDS. …………………..    13**

4
**    A.    Based On Legislative Factors And Case Law Relators' Share Should Be**
**Set At The Upper Level. ……………………………………………………    13**
5

6
**    B.    The Relators' Share Should Be At The Upper Level To Be Fair,**
**Adequate, And Reasonable Under The Circumstances Because The Low**
7
**Settlement Of The FCA Case To Assist The USA's Defense In The Developers**
**Case Harms Relators Twofold. …………………………………………..    13**
8

9
**V.    CONCLUSION………………………………………………………...    15**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**                                                    **Page No.**

2

*Associated Mortgage Bankers Inc. v. U.S.,* 153 Fed. Cl. 189, 198 (2021) ............... 9

3

*Hermann v. Cencom Cable Ass.,* 999 F.2d 223, 226 (7th Cir. 1993) .................... 9

4

*Keene Corp. v. U.S.,* 508 U.S. 200, 212 (1993) ............................................ 9

5

6

*McCreary Cnty. v. ACLU,* 545 U.S. 844, 861 (2005) .................................... 6

7

*Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1028-29
     (9th Cir. 2019) ............................................................................ 9

8

9

*Mendoza v. Amalgamated Transit Union International,* 30 F.4th 879, 887
     (9th Cir. 2022) ............................................................................ 3,9

10

11

*Permanent Mission of India to the United Nations v. City of New York,*
     551 U.S. 193, 197 (2007) .............................................................. 5

12

*Polansky v. Executive Health Resources Inc.,* 17 F.4th 376, 385
     (3rd Cir. 2021) ........................................................................... 6

13

14

*Ramey v. Potomac Elec. Power Co.,* 580 F.Supp.2d 40, 43 (D.C. 2008) ............... 9

15

*Rille v. PricewaterhouseCoopers LLP,* 803 F. 368, 373-374 (8th Cir. 2015) ........... 7,8

16

*Roberts v. Accenture, LLP,* 707 F.3d 1011, 1017-1019 (8th Cir. 2013)................. 8

17

*S.E.C. v. McCarthy,* 322 F.3d 650, 656-657 (9th Cir. 2023)............................ 6

18

*U.S. v. Fleet Bank of Maine,* 1995 WL 626376, *1-2 (D. Maine 1995) ................. 9

19

*US v. Tohono O'Odham Nation,* U.S. 307, 317 (2011) ................................. 9

20

*U.S.ex rel. Anderson v. Quorum Health Group, Inc.,* 1717 F. Supp. 2d 1323, 1332
     (M.D. FL 2001)........................................................................... 13

21

22

*U.S. ex rel. Barajas v. U.S.,* 258 F.3d 1004, 1010, 1011 (9th Cir. 2001) ................. 5,7,10,
                                                                                            11

23

*U.S. ex rel. Killingsworth v. Northrop Corp.,* 25 F.3d 715, 724 (9th Cir. 1994) ........ 13

24

*U.S. ex rel. Roby v. Boeing Co.,* 79 F.Supp.2d 877, 892-895 (S.D. Ohio 1999) ........ 12

25

*U.S. ex rel. Sequoia Co. v. Baird-Neece Packing Corp.,* 151 F.3d 1139, 1145
     (9th Cir. 1998)............................................................................ 1

26

27

*U.S. ex rel. Sharma v. Univ. of Southern California,* 217 F.3d 1141, 1144-45
     (9th Cir. 2000) ........................................................................... 1, 13

28

1

**TABLE OF AUTHORITIES (CONT'D)**                                    **Page No.**

2

OTHER AUTHORITIES

3

*Black's Law Dictionary (11th ed. 2019)* …………………………………………………  5

4

5
31 USC §3730(c)(5) …………………………………………………...  6,10,11

6
31 USA §3730(c)(2)(B) ………………………………………………..  1

7
31 USC §3730(d)(1) …………………………………………………...  *passim*

8
31 USC §3730(d)(2) ……………………………………………………...  6

9
31 USC §3730(e)(4)(A) …………………………………………………  6

10
31 USC §3730(e)(4)(B) …………………………………………………  6

11
42 USC §9619(a)(2) …………………………………………………...  3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  INTRODUCTION

The time has come in this litigation where, after more than a decade of working together to expose the radiological fraud of Tetra Tech EC, Inc., (Tetra Tech) the interests of the United States (USA) and Relators diverge. The USA has interests in retaining as much of the settlement money as possible, and minimizing its exposure in other litigation, while Relators have an interest in getting their fair share of the settlement proceeds under 31 USC §3730 (d)(1). The USA allocated $40,000,000  of the $97 million  settlement to the CERCLA claim and asserts that Relators get none of these settlement proceeds. The USA assertion is contrary to the language of §3730(d)(1), contrary to case law, and is unfair, inadequate, and unreasonable. Settlement of the FCA and CERCLA claims require Court approval. The Court has the power and responsibility to modify the settlement to comply with the FCA and set the Relators' percentage share. *U.S. ex rel Sharma v. University of Southern California,* 217 F.3d 1141, 1144 (9th Cir. 2000) Relators request an Order that they share a high percentage of the full $97,000,000 settlement for the settlement to be fair, adequate, and reasonable pursuant to 31 USC §3730(c)(2)(B). The USA Second Amended Complaint In Intervention (SAC) has five causes of action, but one "claim" based on substantially the same facts. Under 31 USC §3730(d)(1) Relators are to receive a percentage of the total settlement of the claim, and their contribution warrants a high percentage.

## II.  RELATORS DO NOT CONTEST THE $97 MILLION SAC TOTAL SETTLEMENT.

Relators do not contest the Court giving approval under 31 USC §3730(c)((2)(B) for the total $97 million settlement of the SAC. Relators do contest infra the USA's effort to exclude Relators from sharing in the full settlement proceeds. Relators believe the USA may have litigation risk management reasons to settle the SAC cheaply, and align the USA with Tera Tech's denials of widespread fraud to support the USA defense against the developers' lawsuits. *U.S. ex rel. Sequoia Co. v. Baird-Neece Packing Corp.,* 151 F.3d 1139, 1145 (9th Cir. 1998).

A.    **The United States Intervened in the Claim of the Relators That Hunters Point Was Unsafe Because Radiological Contamination Remained Due to the Fraudulent Remediation Work of Tetra Tech.**

Relators filed three *qui tam* lawsuits against Tetra Tech beginning in 2013. Each suit alleged the Navy hired Tetra Tech to find and remove all hazardous radioactivity from Hunters Point Naval Shipyard (Hunters Point). The *qui tam* complaints showed Tetra Tech moved and hid radioactivity while Tetra Tech claimed the radioactivity had been found and removed. The fraud of Tetra Tech resulted in damage to the USA having to re-do the radioactive cleanup to turn over a safe Hunters Point to San Francisco.[1]

In 2019, after five years of investigation, the USA intervened and filed complaints in all three Relators' suits.[2]  At the direction of Judge Donato, the USA filed the First Amended Complaint In Intervention (FAC) using the ***Jahr*** case number.[3] The FAC contained three causes of action but alleged only one claim: Tetra Tech was hired to remove hazardous radioactivity from Hunters Point, in soil and buildings; Tetra Tech reported it had removed hazardous radioactivity from the soil and buildings, and Tetra Tech had taken efforts to move and hide the radioactive contamination physically and through data fraud.[4] The FAC alleged that due to Tetra Tech's conduct "the Navy must pay other contractors to re-test the soil and buildings in the Parcels where Tetra Tech worked in order to determine whether remediation is necessary. The Navy will also have to pay for any further remediation." (Dkt. 82, 26:24-27) The misconduct and damage allegations were alleged for the two FCA causes of action (Id. 27:17, 28:6), and the third cause of action for breach of contract (Id. 28:19). All three causes of action were based on the same facts that radioactivity was moved, hidden, and remained due to Tetra Tech's fraud.

---

[1] ***Jahr*** complaint, 13-cv-3835-JD Dkt. 1; ***Smith*** complaints 16-cv-1106-JD Dkt. Nos. 1 & 14; ***Wadsworth*** complaint 16-cv-1107-JD Dkt. 1.
[2] ***Jahr*** Dkt. Nos. 26, 28; ***Smith*** Dkt. Nos. 21, 23; ***Wadsworth*** Dkt. Nos. 22, 23.
[3] ***Jahr*** Dkt. No. 82. Subsequent docket references are to the ***Jahr*** case number docket unless specified.
[4] See, Dkt. 82, FAC allegations ¶47-74

**B.    The Same Operative Facts From the FAC, That Tetra Tech Committed Fraud by Hiding and Moving Radioactivity Which Forced The Navy To Hire Contractors To Test And Clean Up The Radioactivity, Were Re-alleged in the Second Amended Complaint of the USA.**

Four years after filing their FAC, the USA moved in August of 2023, to amend its complaint in intervention. (Dkt. 342) The Second Amended Complaint In Intervention (SAC) added a fraud cause of action based on the same fraud alleged in the FCA. (Dkt. 342, p.5:5-6:18) The amendment also was to add a cause of action under CERCLA, 42 USC §9601, based on the costs to hire contractors to re-test and do further remediation due to Tetra Tech's fraud in moving and leaving radioactivity at Hunters Point, (Id. p. 4:8-5:4), as had been alleged in the FAC. (Dkt. 82, 26:24-27).  In the USA Reply brief  to the Motion for Leave to File a Second Amended Complaint, the USA defended its need to allege a CERCLA cause of action stating:

> "If the United States is not permitted to bring its CERCLA claim in this Second Amended Complaint, it may face a challenge under a claim splitting theory in the future, **given the significant overlap of underlying facts between the CERCLA liability and FCA claims**. *See, Mendoza v. Amalgamated Transit Union Int'l,* 30 F.4th 879, 887-88 (9th Cir. 2022)." [emphasis added]        [Dkt. 348 p. 5:10-13]

The USA Reply justified adding the fraud claim stating, "This new fraud claim merely relies on facts amplifying and clarifying allegations already central to the FCA claims..." (Id. p. 5:17-18)

The USA was granted leave to file the SAC and did so on March 8, 2024. (Dkt. 372). The SAC provided more factual detail to the central claim that Tetra Tech's fraud resulted in dangerous radioactivity being moved, hidden, and left on Hunters Point in the soil and buildings, contrary to the contractual obligations with the Navy.  The SAC reiterated that the fraud caused the Navy to hire contractors to test and re-do the clean-up, stating at ¶137, the conduct of Tetra Tech "forced the Navy to undertake a new site investigation and clean up at the site, incurring significant costs." (See also, ¶139 of the SAC alleging same) The SAC alleges that as a direct damage of the fraudulent conduct of Tetra Tech, re-testing and re-work were performed, and additional remediation re-work will be required. (¶¶72, 94, 114, 115, 116, 137, 139, 141, 142.)

The operative facts pled in the SAC are the same as those contained in the FAC. The newly pled fraud and CERCLA causes of action realleged the FCA allegations in the SAC: Dkt. 372 ¶151 realleged FCA facts for Common Law Fraud cause of action; and ¶161 realleged FCA facts for CERCLA cause of action. Because the CERCLA claim is based upon intentional fraud, the USA alleged Tetra Tech is not eligible for immunity under 42 USC §9619(a)(2) of CERCLA.

The SAC alleged three theories of damages, two of which originated in the FAC. The FAC damages were pled due to 1) the USA having paid the false invoices listed in Exhibit 2 and 3, totaling $150,459,646.10, tripled over $450 million. (Dkt. 82-2 and 82-3); and 2) the USA paid contractors to re-test and remediate the false work of Tetra Tech,(Dkt. 82, ¶92, p. 26:24-27:3) tripled to between $300 million and $900 million. (See Navy's March 15, 2018 "Victim Impact Statement In The Matter of US v. Hubbard", Exhibit 20, which estimated the re-testing and re-do damages with a "range of $100M to $300M."[5]) The SAC added the third damage theory that the work Tetra Tech performed for the Navy was "worthless" so the USA could recover all the money paid to Tetra Tech, $235,354,000, tripled to $706, million.[6]

## III.    ALTHOUGH THE USA AND TETRA TECH SETTLED THE SAC CLAIM FOR $97 MILLION, THE USA SEEKS TO LIMIT RELATORS' RECOVERY TO 59% OF THE SETTLEMENT SUM.

On January 17, 2025, the USA filed two notices that the SAC had been settled with Tetra Tech. One notice set forth the settlement sum of $57 million for the release of monetary claims under the FCA, the Program Fraud Civil Remedies Act, 31 USC §3801-3812, breach of contract, mistake, unjust enrichment, and fraud. (Dkt. 452 p.10-11) The second notice titled a "Partial Consent Decree" stated it "resolves only the Fifth Claim For Relief...It is styled as a "partial

---

[5] See, Anton Decl. and Exhibit E.

[6] See, Dkt. 372 ¶116 "worthless" allegation. See also, USA Amended Response to TT First Set of Interrogatories, No. 5, in response to the interrogatory asking for the method the USA used to calculate the $235,354,000 damages, the USA responded"[T]he Government estimates in single damages based on the total amount paid by the Navy to TtEC for its work at Hunters Point.*".

consent decree because the First through Fourth Claims are not addressed herein." (Dkt. 453-1 p.2:21-24) The decree set the settlement payment at $40,000,000 plus interest. (Id. p.5:10-11), for total settlement proceeds of $97 million.

During December 2024 and January 2025, counsel for Relators and the United States discussed settlement terms. The USA made its position clear: Relators would not share in the total settlement of the SAC but only receive a percentage of the $57 million the USA allocated to the FCA claims. The USA confirmed its position stating: "Relators are not entitled to participate in the CERCLA Settlement as a matter of law." (Dkt. 460 p. 9:13) Relators contend that the United States is mistaken, and that Relators, under the terms of §3730(d)(1), are entitled to a percentage share of the full $97,000,000 settlement proceeds of the claim set forth in the SAC.

### A.    The FCA Statutory Language Directs That Relators Are to Share In The Full Settlement For The "Claim" Encompassed All Causes Of Action.

### 1. The "Claim" Is The Demand Made Upon Tetra Tech In The SAC.

The FCA, §3730(d)(1) states that:

> "If the Government proceeds with an action brought by a person under subsection (b), **such person shall...receive** at least 15 percent but not more than 25 percent of **the proceeds of the action** *or settlement of the claim*..."

The first step in interpreting a statute is to determine whether the language has a plain and unambiguous meaning. *U.S. ex rel. Barajas v. U.S.,* 258 F.3d 1004, 1010 (9th Cir. 2001) (herein "*Barajas*"). The "plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results." *Id.* 258 F.3d at 1010. Dictionary consultation is often used to determine the ordinary meaning. *Permanent Mission of India to the United Nations v. City of New York,* 551 U.S. 193, 197 (2007). In this case the critical term is the word "claim" to determine the scope of Relators' entitlement to the settlement share. A "claim" is "The assertion of an existing right; any right to payment or an equitable remedy." *Black's Law Dictionary (11th ed. 2019).* The term "claim" as used in the FCA means that Relators are to share

in the proceeds of the settlement that resulted from the "demand of a right" upon Tetra Tech,

which resulted in the $97 million dollar settlement.

### 2. "Proceeds Of The Action" Accompanying "Proceeds Of The Settlement Of The Claim" Support Relators' Right To Share in The Full Settlement.

In construing a term, the surrounding words and provisions are considered. *Polansky v. Executive Health Resources Inc.,* 17 F.4th 376, 385 (3rd Cir. 2021). Section 3730(d)(1) directs relators to receive "*proceeds of the **action**, or settlement of the **claim**".* The term "**action**" "is the formal and ordinary means by which parties seek legal and/or equitable relief before a court of law through the filing of a formal complaint..." *S.E.C. v. McCarthy,* 322 F.3d 650, 656-657 (9th Cir. 2023) [Court analysis including case law and Black's Law Dictionary of "action".] The language of §3730(d)(1) that Relators share in the "proceeds of the action" when followed by the phrase "or settlement of the claim," directs that Relators get a share of the proceeds of the "action" by verdict, and similarly get the proceeds from "settlement of the claim.".[7]

### 3. Statutory Interpretation Must be Done to Effectuate, not Thwart, the Purposes of the Statute To Encourage And Reward Relators.

Interpretation of a statute is to be done in light of the purposes Congress sought to serve. *McCreary Cnty. v. ACLU,* 545 U.S. 844, 861 (2005). Congress amended the FCA in 1986 to encourage Relators to report fraud, sometimes at risk and hardship to themselves, by providing a promise of bounty, with that bounty including triple damages and attorney fees to encourage not only relators, but attorneys to risk their own time and effort to help uncover fraud against the USA. Settlements are also encouraged over trial where possible. Interpreting §3730(d)(1) to limit

---

[7] "Claim" is used in additional paragraphs of §3730(d)(1) supporting "claim" to be the entire demand, and not to a theory of recovery or cause of action. See, §3730(c)(5) "government may elect to pursue its claim through any alternative remedy"; §3730(d)(2) repeating the language of (d)(1); §3730(e)(4)(A) "court shall dismiss an action or claim under this section"; §3730(e)(4)(B) "information on which allegations or transactions in the claim are based".

proceeds a relator receives compared to what a relator would receive if the matter went to verdict would be unfair to Relators, and contrary to encouragement of settlements.

The USA's effort to limit Relators to 59% of the $97 million dollar settlement, when Relators would receive a share of the full "proceeds of the action" if the case went to verdict is contrary to the statutory language and a perversion of Congress' purposes. All potential relators and their counsel, acting on contingency, need assurance that their industry and effort will be rewarded and not subject to hostile manipulation by the government they worked to help. Construction of the FCA allowing the USA to determine what part of a settlement Relators would receive would enable the USA to short Relators' financial recovery, for when the USA added contract and fraud causes of action here, as it could do in any FCA case, the USA could claim these causes of action were the basis of the settlement, not the FCA, and deny relators a share, as the USA is asserting here for the CERCLA claim. *To allow the USA to allocate* all, most, or even any amount to these non-FCA causes of action *and then deny Relators a share would be a stake to the heart of the FCA for relators would no longer trust the DOJ to treat them fairly*.

**B.  Case Law Supports Relators Sharing In The Full Settlement of The Second Amended Complaint.**

Relators are entitled to share in the full "proceeds of the settlement of the claim" under §3730(d)(1) because the United States intervened. *Barajas, supra,* 258 F.3d 1004, 1010 ["If the government chooses to intervene in a relator's action, and if the government recovers any proceeds in the action, the relator has a right to a share of those proceeds."] In *Rille v. PricewaterhouseCoopers LLP, (Rille),* 803 F. 368 (8th Cir. 2015), the court considered whether a relator was to share in the full settlement or only some portion of the settlement. The *Rille* court held when the government adds a non-overlapping claim that relators had nothing to do with, then the relator is not entitled to a share of the settlement proceeds. *Id. p.* 373. The *Rille* court held a

relator has a *right to share in the full settlement proceeds* when the conduct in the new claim

"*overlaps with the conduct alleged*" in the FCA complaint.

> "Otherwise, the government *could deprive* the relator of his right to recover simply
> *by recasting the same or similar factual allegations in a new claim...* But there
> must be a factual overlap for the relators to recover."
> *Rille,* 803 F.3d at p. 373. (emphasis added)

The CERCLA claim and the FCA factually overlap. Relators did not and could not file a

CERCLA violation. The USA could and did add the CERCLA claim in 2024, <u>five years</u> after

intervening. The USA set forth Relators FCA allegations in the SAC. *Id. p.* 374. ["[G]overnment,

after it elects to intervene, may 'clarify or add detail' to the claims brought by the relators..."] The

fact allegation in the SAC FCA causes of action states the facts upon which the CERCLA claim is

also based. The CERCLA claim listed and incorporated the FCA's fraudulent soil sampling and

movement, and mimicked the FCA damage claim for re-work.[8] The FCA allegations of Tetra

Tech's fraud form the basis of the CERCLA claim that Tetra Tech committed intentional fraud,

and eliminate the CERCLA defense of immunity 42 USC §9619(a)(2). (Dkt. 372, ¶173.) Due to

the factual overlap of the FCA and CERCLA fact allegations Relators are entitled to a full share

of the settlement under *Barajas* and the holding in *Rille,* despite the government's effort to

deprive Relators the settlement proceeeds required under §3730(d)(1). *Rille, Id. p.* 373-374.[9]

> **1.      The "Claim" Based On Substantially The Same Operative Facts
> Includes The FCA, CERCLA And All Causes Of Action.**

There are five causes of action pled in the SAC of the USA.  Whether there are multiple

causes of action with different legal theories is not relevant to the issue of what is a "claim".   A

---

[8] See Dkt. No. 372 ¶ 166-171, 173. See also, Anton Decl. ¶ 3.

[9] See also, *Roberts v. Accenture, LLP,* 707 F.3d 1011 (8th Cir. 2013) [Government intervened in FCA and claimed settlement of Contract 35F with Hewlett-Packard was not part of relators FCA complaint, unrelated to relators' actions, and refused to share proceeds of settlement attributed to Contract 35F. Court concluded relators entitled to share of Contract 35F settlement because the settled claim was factually related to the FCA action, relators complaint and assistance in prosecuting resulted in the Contract 35F claim and settlement reached, concluding the "relators' actions served its intended purpose, and the relators should be rewarded accordingly." *Id. p.* 1017-1019.

claim involving multiple causes of action is "based on substantially the same operative facts, regardless of the relief sought." *US v. Tohono O'Odham Nation,* U.S. 307, 317 (2011) The CERCLA cause of action and the FCA causes of action in the SAC are the same "claim" for they are "based on substantially the same operative facts". *Id.* Whether comparing separate lawsuits or different legal theories within a lawsuit, the test for determining whether it is one claim is the same: whether they "arise out of the same transactional nucleus of facts..." *Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1028-29 (9th Cir. 2019). [10]   The SAC "claim" made upon Tetra Tech comprised five causes of action arising out of the same nucleus of operative facts. CERCLA incorporated the FCA operative facts, and relied on FCA fraud for the "intentional misconduct" element required by CERCLA at 42 USC §9619(a)(2).[11] The "settlement of the claim" in §3730(d)(1) is the settlement of the entire SAC which arises from "substantially the same operative facts". *U.S. v. Tohono O'Odham Nation,* 563 U.S. 307, 317.

### 2.    Ninth Circuit Precedent Interpreting Related §3730(c)(5) Supports Relators Receiving A Full Share Of The Settlement.

Relators' claim for a full share of the settlement is made under §3730(d)(1). A related clause, §3730(c)(5) provides if the government pursued "its claim" through an "alternate remedy" in another proceeding, the relator shall have the same rights in the other proceedings the relator would have had if the action proceeded under the FCA. There are different terms and

---

[10] See also, *Keene Corp. v. U.S.,* 508 U.S. 200, 212 (1993) Claim - "the word 'claim'...has no reference to the legal theory upon which the claimant seeks to enforce his demand...That the two actions were based on different legal theories did not matter."]; *Ramey v. Potomac Elec. Power Co.,* 580 F.Supp.2d 40, 43 (DC 2008) [claim based on "the same nucleus of facts", and "not the legal theory upon which a litigant relies."]; *Associated Mortgage Bankers Inc. v. U.S.,* 153 Fed.Cl. 189, 198 (2021) [Same claim -"Court is to compare the operative facts asserted" and "legal theories underlying the asserted claims are irrelevant to this inquiry."] *Mendoza v. Amalgamated Transit Union International,* 30 F.4th 879, 887 (9th Cir. 2022) [same]; *Hermann v. Cencom Cable Ass.,* 999 F.2d 223, 226 (7th Cir. 1993) ["[T]wo claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations."]. See also, *U.S. v. Fleet Bank of Maine,* 1995 WL 626376, *1-2 (D. Maine 1995) [FCA use of "the action" and "the claim" encompasses the singular as well as multiple actions or claims.]

[11] The CERCLA cause of action incorporates all the factual allegations of the FCA, and relies upon the FCA fraud for the essential elements of radioactive soils having been moved and transported, and done by the intentional misconduct of fraud. Dkt. 372 ¶¶161, 142, 168, 169, 170, 171, 173, 174, and 175.

qualifications under §3730(c)(5) from §3730(d)(1), but the two clauses both pertain to the relator receiving a share of proceedings, and value may come from considering §3730(c)(5).

*Barajas* is binding precedent interpreting the FCA in the 9th Circuit. See, *Barajas,* 258 F.3d 1004. In *Barajas* the government intervened and settled the FCA case brought by relator Barajas against a defense contractor and Barajas obtained a share of that first settlement.  The government then entered into a second settlement agreement with the defense contractor to lift the work suspension and not pursue debarment against the contractor in exchange for replacement, repair, and cash payment of sums as reimbursement, investigative and administrative costs.[12]  The relator brought a second qui tam action covering the second settled claim contained in the debarment proceeding, and the government did not intervene in this second FCA action. The Ninth Circuit reversed the district court's denial of a share of the proceeds from the debarment process. The Ninth Circuit held the relator was entitled to share in the alternate remedy debarment settlement because the debarment remedy "replicated the remedy [the government] could have obtained if it had intervened in *Barajas'* second quit tam action." *Id.* 258 F.3d at 1011. With regard to §3730(d)(1), the Ninth Circuit stated directly: "If the government chooses to intervene in a relators' action, and if the government recovers any proceeds in the action, the relator has a right to a share of those proceedings." *Id. 1010.*  Here the USA has chosen to intervene in the Relators' case, and has recovered proceeds of $97 million for the claim. Relators have the right to share those proceeds.  Congress desired individuals to come forward with information of fraud, and gave encouragement with a relator's share of the proceeds.  *Id.* 258 F.3d at 1012.

---

[12] The Ninth Circuit noted in *Barajas* that debarment proceedings are very different from an FCA action. Relators cannot pursue a debarment, and the DOJ cannot initiate debarment actions. *Id. at p.* 258 F.3d at 1004, 1011. In this case, a CERCLA action procedurally is also different from a FCA action and Relators cannot initiate the action.

With regard to §3730(c)(5), the Ninth Circuit noted the government may, "seek a remedy … that effectively takes the place of the FCA remedy", and concluded relator had a right to share in the full debarment settlement holding:

> "It would be inconsistent not only with the plain meaning of the broad language employed in the statute, but also with the purposes of the statute, to allow the government to obtain from a qui tam defendant a remedy that could have been obtained in an already-filed FCA action, and then to argue that the proceeds of that remedy need not be shared with the whistleblower because the remedy was not an 'alternate remedy' within the meaning of the FCA." *Id.* 258 F.3d at p. 1012.

The Ninth Circuit's holding that relators have a right to share in the proceeds of an alternate remedy, when the government has not intervened, provides compelling support for awarding a relator a share in the full proceeds when there has been intervention and the government adds a cause of action in the FCA suit.  Here the USA added factually overlapping causes of action to the already-filed FCA action and now argues Relators should not share in the settlement proceeds of the claim. In this case, the FCA and CERCLA causes of action alleged the same fraudulent activity of Tetra Tech and the same damages to the USA for investigating and cleaning up Hunters Point due to Tetra Tech's fraud. [13] Relators should share in the full proceeds for CERCLA re-test and re-work remedy could have been obtained through the FCA suit as pled.

**3.    Relators Are Entitled To Share In The Full "Proceeds" Of The Settlement Of The Claim Regardless Of The Causes Of Action Or Whether The Damages Are Termed Direct Damages, Punitive Damages, Or Other Forms Of Damages.**

The terms of §3730(d)(1) provide Relators are to receive a share of the "proceeds of the action or settlement of the claim." The statute does not limit the recovery to the type of "proceeds", whether considered direct, punitive, consequential, fines, or restitution damages; the Relators are to share in all proceeds. The government has insisted Relators can only recover a

---

[13] See, Dkt. 372, SAC, see ¶¶137, 143, and 147 in FCA, Navy forced to "undertake a new site investigation and cleanup of the Site, incurring significant costs."; ¶142 "Navy has incurred over $30 million in unreimbursed Rework costs pertaining particularly to soil investigation so far, and work is on-going at the Site."

Objection To Total Settlement As Unfair, Inadequate, and Unreasonable To Relators    - 11 -

portion of the "proceeds" asserting that the range of damages available under the FCA is less than can be recovered under other causes of action alleged in the SAC. For example, the fraud cause of action can recover punitive damages, (3rd Cause of Action, Dkt. 373 ¶151), the contract cause of action (4th Cause of Action, Dkt. ¶157) can recover consequential damages, both damage types not available under the FCA. However, if the settlement included value for these types of damages they are still part of the "proceeds of the action, or settlement of the claim" that §3730(d)(1) directs Relators are to share without limitation.

The factual allegations of fraud and damage allegations in the FCA and CERCLA actions overlap, and are fully applicable to both FCA and CERCLA causes of action. The radioactivity re-testing, and re-work necessary due to the fraud of Tetra Tech were direct, foreseeable, and proximately caused damages totaling as of mid-2023 over $100 million dollars, and projected to go higher with time.[14]  Direct and incidental damages are recoverable under the FCA for they are proximately caused and foreseeable. See, *U.S. ex rel. Roby v. Boeing Co.,* 79 F.Supp.2d 877, 892-895 (S.D. Ohio 1999). The need to re-test, and re-work the radiologically contaminated  soil at Hunters Point was direct, proximately caused, and foreseeable as the Director of the Navy's BRAC program stated in the 2018 Navy's Victim Statement to this Court.

Relators submit that it would be unfair, inadequate, and unreasonable under all the circumstances to preclude Relators from sharing in the full $97 million settlement proceeds based on the language of §3730(d)(1), based upon the relevant and germane holding in *Rille* interpreting

---

[14] The March 15, 2018 "Victim Impact Statement In The Matter of U.S. v. Hubbard" by the Navy's Director of Base Realignment and Closure stated the fraud "caused the Navy concrete and measurable monetary losses" of $2.2 million for contractor Battelle to review Tetra Tech's data for falsification/manipulation, and $8.8 million to CH2MHill to review data, prepare work plans, and begin field re-work. The Statement continued that further re-work was required which was estimated would cost the Navy from $100 million to $300 million in direct damages due to the radiological fraud of Tetra Tech. Ex. 20 attached to Anton Decl. ¶9. The FAC continued allegation of re-test and re-work damages (Dkt. 82, ¶92). The SAC continued these damage allegations of re-test and re-work damages with over $30 million as of August 2023, and with more to come.  (Dkt. 372 ¶137, 142). Relators sought discovery as to the full re-test and re-work damages incurred to date, which this Court deferred.

§3730(d)(1) to require that relators share in the full settlement when the conduct overlaps and based upon the persuasive rationale set forth by the Ninth Circuit in *Barajas,*. The Court has the power and duty to determine the value of the proceeds of the settlement ensuring Relators receive their proper share. *U.S. ex rel. Killingsworth v. Northrop Corp.,* 25 F.3d 715, 724 (9th Cir. 1994); *U.S. ex rel. Sharma v. Univ. of Southern California,* 217 F.3d 1141, 1144-45 (9th Cir. 2000).

## IV.    RELATORS SHOULD RECEIVE CLOSE TO THE MAXIMUM 25 PERCENT OF THE SETTLEMENT PROCEEDS.

### A.    Based On Legislative Factors And Case Law Relators' Share Should Be Set At The Upper Level

The legislative history of the 1986 amendments to the FCA identified the following three factors for the Court to consider in setting Relators share:

1. The significance of the information to the government by the qui tam plaintiff;
2. The contribution of the qui tam plaintiff to the result; and
3. Whether the information in the suit provided by the relator was previously known to the government.

*U.S. ex rel. Anderson v. Quorum Health Group, Inc.,* 1717 F. Supp.2d 1323, 1332 (M.D. FL 2001).

The court in *Anderson* also mentioned the DOJ internal "Relator's Share Guidelines", which have received criticism and have been found to be contradictory. *Id. at p.* 1334, n. 32 and 34. Under either the Legislative directed factors, or the DOJ factors, or both, Relators in this case should be awarded a percentage close to the maximum 25%. Factual information supporting a share close to the maximum are set forth in the declaration of David Anton, at paragraphs 10 through 15.

### B.    Due to The Significantly Discounted Settlement Sum, The Relators' Share Should Be At The Upper Level To Be Fair, Adequate, And Reasonable Under The Circumstances

The USA alleged damages of $235,354,000, tripled to $706,062,000 based on the total amount paid by the Navy to Tetra Tech for the FCA liability. The USA also alleged an additional $100,000,000 plus in damages for the re-work done, tripled to over $300,000,000, to address the soil fraud of Tetra Tech on December 30, 2021. These allegations were made years before

CERCLA was added in 2024.[15] Prior to CERCLA being added, the damage potential asserted by the USA was over $1,000,000,000 (One Billion Dollars).

At the same time the USA was suing Tetra Tech, developers of Hunters Point sued the USA for negligence in the oversight of Tetra Tech.[16] The developers' discovery and disclosures asserted damages against the USA for over $4 billion. In August and September of 2024, the USA submitted Interrogatory responses in this FCA lawsuit that outlined radiological remediation fraud by Tetra for a decade at Hunters Point, as also asserted in the SAC.[17]

About November 1, 2024, the USA and Tetra Tech settled the SAC for $97 million, less than one-tenth of the billion plus damages the USA had asserted. On January 7, 2025, the USA responded to Admissions propounded by Five Point Holdings, LLC, Set One.[18] The Admission responses of the USA dramatically limited the scope of acknowledged Tetra Tech fraud.[19] USA Admission Responses of January 7, 2025 are a fundamental limitation and repudiation of the allegations that Tetra Tech engaged in decades-long multi-faceted radiological fraud at Hunters Point alleged in the SAC. The USA's cheap settlement with Tetra Tech allowed the USA to reverse course, deny the extensive radiological frauds of Tetra Tech and the USA's oversight negligence, in order to limit the USA's exposure to liability in the developers' lawsuits. The USA could not try the FCA case, and still deny in the developers' suits the massive radiological fraud of Tetra Tech and the Navy's failure to catch these frauds.

---

[15] See, December 30, 2021, United States' Amended Response To Defendant Tetra Tech EC, Inc.'s First Set of Interrogatories, Interrogatory Responses No. 5 and 7., see Exhibit A to Anton Decl.

[16] Five Point Holdings v. United States of America, 3:20-cv-1480-JD; CPHP Development, LLC v. Tetra Tech EC, 3:20-cv-1485-JD. See, Declaration of David Anton, herein Decl. Anton, ¶ 5.

[17] See, United States' Third Amended Objections and Responses To Defendant Tetra Tech EC, Inc.'s Second Set of Interrogatories, Nos. 8-16, dated August 16, 2024, Exhibit B to Anton Decl., and United States' Objections and Responses To Defendant Tetra Tech EC, Inc.'s Fourth Set of Interrogatories, dated September 30, 2024, Exhibit C to Anton Decl.

[18] Defendant United States of America's Amended Responses To Plaintiff Five Point Holdings, LLC's Request For Admissions, Set One, attached to Anton Decl. as Exhibit D.

[19] See Exhibit D, Admission Responses Nos.1-5, 11, 16, and 21. See also responses to Admissions 14, 15, 17, 18, 19, 20, 22, 29, 30, 31, 32, 33, 43, 54, 57, 61, 62, 66, 94.

The January 7, 2025, USA Admissions limited the scope of the fraud allegations stated in the USA FCA discovery responses and the SAC allegation. The USA's dramatic limiting of Tetra Tech's fraud has resulted in the Relators' decision to dismiss their non-intervened claims because the USA's Admissions negatively impact these non-intervened claimed. Counsel for Relators is taking steps to dismiss the non-intervened claims that had not been resolved as a result of the USA January 7, 2025 change in position Admissions.[20]

The USA's actions of settling the FCA claim cheaply and aligning its discovery responses with Tetra Tech's litigation posture to protect itself against exposure in the developers' suit, harm Relators in two ways. The cheap settlement reduced the settlement proceeds Relators are to share. The USA's Admissions in the developers' case limiting the scope of the fraud alleged undermines the basis of Relators' non-intervened claims. The Relators' non-intervened claims could have resulted in a $45 million dollar recovery for the USA (of which Relators would receive a 25-30%, share).

## V.    CONCLUSION

Relators should not fully bear the brunt of the USA's decision to short-change the FCA case to  protect the USA from massive exposure in the developers' cases. Relators should receive as high a percentage as the law allows to adjust for the unfairness, inadequacy, and unreasonableness of Relators sharing the low-ball $97 million dollar settlement and having their non-intervened claims destroyed by the USA self-protection.

Dated: February 21, 2025

Respectfully submitted,

David C. Anton
Margaret E. Roeckl
Attorneys for all Relators

---

[20] Since January 7, 2025, counsel for Relators has approached counsel for Tetra Tech, IO Environmental, and the Shaw Defendants and proposed or reached agreement on dismissals.