YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICK D. ROBBINS (CABN 189820)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
MICHAEL T. PYLE (CABN 172954)
SAVITH IYENGAR (CABN 268342)
Assistant United States Attorneys

      60 South Market, Suite 1200
      San Jose, California 95113
      Telephone: (408) 535-5087
      Facsimile: (408) 535-5081
      Email: savith.iyengar@usdoj.gov

JAMIE YAVELBERG
PATRICK M. KLEIN
A. THOMAS MORRIS
JONATHAN K. HOERNER
ADAM J. DICLEMENTE
Attorneys, Civil Division
United States Department of Justice

      P.O. Box 261
      Ben Franklin Station
      Washington, D.C. 20044
      Telephone: (202) 307-6946
      Email: jonathan.k.hoerner@usdoj.gov

Attorneys for the United States of America

David C. Anton (Cal. SBN 94852)
Margaret E. Roeckl (Cal SBN 129783)
Law Office of David Anton
1717 Redwood Lane
Davis, CA 95616

Tel: 530-220-4435
Email: davidantonlaw@gmail.com

Counsel for FCA Relators

UNITED STATES' AND RELATORS' COMBINED STATEMENT ON RELATOR'S SHARE
3:13-CV-3835 JD              i

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ARTHUR R. JAHR, III, *et al.*, ANTHONY SMITH, & DONALD K. WADSWORTH *et al.*, ) ) ) ) | CASE NOS: 3:13-CV-3835 JD |
| Plaintiffs, ) ) | RELATED ACTIONS: 3:16-CV-1106 JD 3:16-CV-1107 JD |
| v. ) ) | **UNITED STATES' AND RELATORS' COMBINED STATEMENT ON RELATOR'S SHARE OF THE FALSE CLAIMS ACT SETTLEMENT (RESPONDING TO ECF NO. 480)** |
| TETRA TECH EC, INC., ) ) ) | |
| Defendant. ) | |

**RELATORS' STATEMENT**

**1.    Relators Propose A 23% Share Of The Settlement Proceeds, With Case Allocation Deferred.**

Relators' propose a 23% share be Ordered for the Relators as a group, and any case specific allocation deferred. The USA has advised it is proposing a 20% share, with allocations between only two of the three Relators' cases. The extensive assistance the Relators as a group provided to the USA for over a decade warrant the 23% share.

**Allocation:** Although Relators are seeking the Court to defer decision on allocation, Relators are compelled to address the USA's allocation suggestion which seeks to exclude the *Smith* case from any share of the soil fraud claim, and the *Wadsworth* case from any share at all based on the first-to file bar. This Court has held twice that *Smith's* soil swapping fraud is not precluded by the first-to-file bar, pursuant to *United States ex rel. Hartpence v. Kinetic Concepts, Inc.,* 792 F.3d 1121, 1131 (9th Cir. 2015) (*Hartpence) overrule on other grounds by Stein v. Kaiser Found. Health Plan, Inc.,* 115 F.4th 1244 (9th Cir. 2024). (Dkt No.283 p. 8:14-12:8; and No.371 p. 4:8-22 "The relators' (*Smith)* second cause of action is also not precluded by the first-to-file bar.") The *Wadsworth* case contained multiple claims of soil sample fraud, building scan fraud, soil and building data manipulation fraud, and fraud in the development of reports used to submit false claims. The Wadsworth material allegations were "related but distinct" from the limited allegations in the first-filed *Jahr* complaint as this Court concluded. (Dkt. 283 p. 12:9-13:8.)[1]  This Court's Order conclusively established that *Wadsworth's* allegations about Thorpe and Karisa Millers' hire were barred by the first-to-file, but no other *Wadsworth* claims were barred. (Dkt. 283 p. 12:9-13.) The USA's effort to preclude the *Wadsworth* case from any recovery is also contrary to 31 U.S.C. §3730(d)(1) which directs that when the government intervenes and settles, then the relators *shall* receive at least 15% of the settlement proceeds. *Wadsworth* brought claims of soil

[1] For example, *Wadsworth* alleged data managers in a conspiracy with Tetra Tech EC (herein TtEC) destroyed soil samples, plotted false sample locations, and eliminated computer records for building 351A. (*Wadsworth* 16-cv-1107-JD, Dkt 1 p. 8:5-13:4.) This Court summarized the *Jahr* complaint to only give government notice "about fraudulent soil sampling and surveying at Hunters Point with Jane Taylor's involvement." (Dkt. 283 p.11:5-7.) The data managers were not Taylor. The USA Second Amended Complaint in Intervention (US-SAC) alleged building 351A reports submitted to the Navy were false and a basis for damages. (US-SAC, Dkt. 372-6, p.2, see Parcel G lines, "Building 351A file PC B351A FSSR N00217 001989".)  *Wadsworth* alleged TtEC generated and submitted false reports that changed radiological scan data for soil and buildings. (Wadsworth 16-cv-1107-JD Dkt. No. 1, p. 5:16-19, 14:4-16:8) These allegations are not in *Jahr. Wadsworth* alleged defendants engaged in scan data fraud by ordering Rad Techs to scan soils and buildings at excessive speed, also not in the *Jahr* complaint. (Id. Dkt. No.1, p. 16:23-17:15) *Wadsworth's* allegations are "related but distinct" from *Jahr* and not subject the first-to-file bar as this Court held. *Hartpence, supra,* 792 F.3d at 1131.

and building data fraud, and fraud in the preparation of reports used to bill the Navy which the government intervened in and settled, and is therefore entitled to a recovery under §3730(d)(1)'s terms. There is no valid basis to exclude the *Wadsworth* case from a share in the settlement proceeds.

Relators submit that no case specific allocation between the three Relator cases be set at this time due to the factual intensity of the issue, and because the issue may be settled if the Court awards a percentage for the Relators' share in total. Relators propose a Relators total share of 23%.

**Proposed Share Of 23%:** The statute provides that Relators are to receive a share that "depend(s) upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. §3730(d)(1). Cases normally apply congressionally suggested factors, and the DOJ guidelines. See, *U.S. ex rel. Johnson Pochardt v. Rapid City Regional Hospital,* 252 F.Supp.2d 892 (D. SD 2003) (*"Johnson Pochardt")*. These factors are addressed in the accompanying Statement Of Relators' Contribution To Prosecution Of Action (hereinafter SRC, Dkt. No. 490) by David Anton, filed under seal.[2] The Senate Factors applied to this case are set forth in the SRC, p.75:1-80:3. The DOJ Guidelines applied are set forth in the SRC p. 80:6-97:27. Application of the Congressional factors and the DOJ Guidelines warrant a maximum or near maximum share; a 23% share is fully warranted.

The DOJ and Congressional factors do not address the major contribution Relators made to the prosecution of this action which was to convince/compel a reluctant government to intervene and prosecute at multiple inflection points rather than resolve the allegations through quiet and cheap settlements in 2016 and 2017. The factual history set forth in the SRC demonstrates that the DOJ and Navy **did not want the FCA suit to go forward.[3]**  Even after learning from Anthony Smith's interview that he was ordered to engage in soil fraud, the DOJ showed no interest in intervening.  Attorney Anton enlisted the media. Smith's NBC TV interview revealed TtEC's orders to fraudulently leave radioactivity in the ground. SRC p. 60:1-61:2. Following the 2016 information from Relators Smith, Wadsworth and

---

[2] In settlement efforts, DOJ requested a history of Relators' efforts and input on Congressional and DOJ guidelines for the Relators' Share. The Statement resulted and was provided to the DOJ on April 8, 2025. The DOJ counsel has agreed to filing under seal. Settlement discussion have been redacted.

[3] Two years after the Jahr-4 Relators filed suit, the DOJ stated it was not inclined to intervene. Relators begged for more time. SRC p.44:9-25. In early 2016, the DOJ advised it was not intending to intervene because the NRC investigation concluded on February 11, 2016 finding minimal fraud. (The NRC later set with a minimal fine of $7,000.) The DOJ intended to resolve the fraud claims based on the NRC's action. Relators begged for more time. SRC p.54:9-55:6. Relators Smith and Wadsworth/McLean filed FCA suits in April of 2016, providing compelling evidence of TtEC's radiological soil fraud, building fraud, and report fraud. SRC p. 55:7-21; 58:14-26. After the filing, the DOJ expressed no inclination to intervene, and no encouragement to Relators. SRC p. 59:1-10.

UNITED STATES' AND RELATORS' COMBINED STATEMENT ON RELATOR'S SHARE
3:13-CV-3835 JD                                        2

McLean and the resulting media exposure, the EPA and Cal. Toxics and Public Health compelled the Navy to initiate an investigation. SRC p. 61:3-24.[4] In 2017 Relators learned the DOJ offered a quiet settlement to TtEC, without intervention, for less than $10 million. Relators' alerted the office of Senator Feinstein and Representative Pelosi, and the settlement effort was cancelled. SRC p. 69:19-70:18. In 2017 and 2018, Relators and their counsel engaged in public efforts to compel intervention.[5] Without Relators' dogged determination this FCA case would have been scuttled in order to hide the Navy's own potential liability. Cases recognize the importance of relators' perseverance with a reluctant government.

> "[W]here a relator perseveres in the face of initial dismissiveness by the government, and where counsel make every effort to remain involved even after the government has picked up the investigation, the cases suggest the contribution considerations counsel in favor of larger shares." (See cases cited therein) *U.S. ex rel. Toelkes v. TOA Corp.,* 2017 WL 11597548, *4 *5 (D. Guam 2017)

The Navy was reluctant to have TtEC's fraud revealed because the Navy's own negligent oversight would be exposed, subject other Navy base oversight to scrutiny, and subject the Navy to unwanted third-party litigation over Hunters Point, which happened. The Relators' efforts to assist the DOJ in the investigation and throughout this litigation, and Relators' unusual and unique efforts to bring pressure on the DOJ to intervene "substantially contributed to the prosecution of the action" warranting a very high share percentage. §3730(d)(1). The 23% share requested is well deserved and fully warranted.

**2. Relators are entitled to a Share of the full settlement value of $97 million.**

The government intervened in Relators' cases on October 15, 2018 (Dkt. 26). The Ninth Circuit in *U.S. ex rel. Barajas v. U.S.,* 258 F.3d 1004, 1010 (9th Cir. 2001) ("*Barajas*") held that the "alternative remedy" provisions on §3730(c)(5) only apply when there has been **no intervention** by the government.

---

[4] The investigation was by the Navy, not the DOJ. The Navy limited the investigation to data review, with no witness interviews. SRC p.61:25-62:26. Relators' counsel filed a public Petition to Revoke the NRC license of TtEC on June 28, 2017, with sworn witness statements so the Navy's data investigators could access witness statements. The data reports noted the importance of witness statements to the analysis. SRC p. 63:1-67:21.

[5] Over the two-year period of 2017-2018 Relators engaged in numerous press interviews and public demonstrations. Relator's counsel engaged in arranging the San Francisco Board of Supervisors to conduct a hearing on the TtEC Hunters Point radiological fraud, with Navy officials publicly questioned on May 14, 2018. Relators obtained the data reports from the Navy investigation and publicly disclosed the reports through the NRC Petition supplemental filings in January, February, and July 2018, and Relators' counsel made a presentation to the NRC in Washington DC in October of 2018. Relators' efforts to pressure the DOJ to intervene in the FCA resulted in the DOJ's intervention on October 15, 2018. SRC p. 67:22-68:15.

This is not an alternative remedy case and alternative remedy cases cited by the government to support a reduction in the total amount that the Relators can share in are inapplicable.  When the **government has intervened** under §3730(d)(1), the situation herein, the Ninth Circuit stated, "If the government chooses to intervene in a relator's action, and if the government recovers any proceeds in the action, the relator has a right to a share of those proceeds." *Id.*

There are *only two circuit decisions* that address how to determine whether Relators are entitled to share in the entire settlement of the action when a claim is made **in addition to the intervened FCA claim**, namely Rille v. PricewaterhouseCoopers LLP, 803 F.3d 368, 372-374 (8th Cir. 2015)(en banc), and *U.S. ex rel. Conyers,* 108 F.4th 351, 356-360 (5th Cir. 2024) which applies *Rille*. *Conyers* noted the test set forth by *Rille* is used to determine when the settled claim is sufficiently similar to a relator's claim under §3730(d)(1) for the relator to share in the non-FCA recovery.  The *Conyers* decision summarized the test:

> "A relator seeking recovery must establish that there exists an overlap between his allegations and the conduct discussed in the settlement agreement. This test 'ensures that the claim for which recovery is sought is one that the relator himself actually brought to the government's attention.' At the same time, it prevents the government from 'depriving the relator of his right to recover simply by recasting the same or similar factual allegations in a new claim or by pursuing the substance of the relator's claim in an alternative remedy." *Conyers,* 108 F.4th at 359. (citations omitted)
> "A court performs the overlap analysis to discern whether the Government has settled what are in essence the *relator's* claims. That necessarily involves comparing the facts of the particular claims.." *Conyers,* 108 F.4th at 360. (emphasis in original case)

A comparison of facts in the FCA case and CERCLA claim are a total overlap. The facts for the CERCLA claim are set forth in US-SAC, at p.50:21-52:17. (Dkt. No. 372.) All facts for the CERCLA claim are from the FCA case.  The FCA alleged that TtEC encouraged workers to avoid finding and remediating radioactive contamination, switched soil samples and deposited radioactive soil into open trenches, and analyzed and reported radioactive samples in an unreliable (fraudulent) manner, and used mislabeled, untested, inaccurately tested and contaminated soil as fill on site, just as CERCLA alleged. (Id. CERCLA ¶¶168-171). Relators' FCA case alleged that TtEC claimed radioactive contamination was removed, when instead it remained in place or moved. (Dkt. No. 372 p.20:24-23:8.) The designation "As described above" for CERCLA facts acknowledges the facts were from the FCA claim. (Id.) Because the CERCLA facts are a full overlap of the FCA facts the *Rille/Conyers* test of factual overlap is fully met.

The FCA and CERCLA overlap is not just in the facts, but also the damages.  *Smith* and

*Wadsworth* explicitly alleged under the FCA the Navy would be required to incur costs to redo the radiological remediation; the exact same damages the USA sought and recovered under CERCLA.

> "The fraudulent switching of soil samples to obtain a false clearance of areas contracted to be properly remediated of radioactive wastes deprived the United States of America of the basic service that was contracted for with Defendants…The Navy will and has incurred costs, expenses, and delays in the remediation of Hunters Point that should not have been incurred, but for the fraud of Defendants Tetra Tech EC, Inc. and RSRS in submitting fraudulent soil samples. The full costs directly and derivatively related to the fraud accomplished by Defendants Tetra Tech EC, Inc. and RSRS are extensive and as of yet not fully known, and will be established at trial." (*Smith* 13-cv-1106, Dkt. No. 14, p.17:5-12, see also *Wadsworth* 13-cv-1107, Dkt. No. 1 p. 25:2-20.)

If the Relators FCA case had gone to trial, the government could recover, as damages, the cost incurred for redoing the fraudulent work of TtEC. *See, Commercial Contractors, Inc. v. U.S.,* 154 F.3d 1357, 1372-1374 (Fed. Cir. 1998) (Costs of remedying defective environmental field work proper damages under FCA.) The damages under CERCLA are for remedying the same defective work of TtEC. In short, the CERCLA claim settled the same damages on the same facts as the intervened Relators' FCA case. *See also, U.S. ex rel. Birchall v. SpineFrontier, Inc.,* 2024 WL 4686985, *4-*8 (D MA 2024) [Appling *Rille* overlapping facts test in intervened FCA case settlement with separate claim under §3037 (d)(1).]

Relators expect the USA to cite and depend on the case of *U.S. ex rel. Kennedy v. Novo A/S,* 5 F.4th 47 (DC Cir. 2021) for the proposition that CERCLA does not depend on fraud as an element, and Relators can only recovery for claims based on fraud. *Kennedy* is a non-intervened case, so it has no application to this intervened case. *Kennedy* is in direct conflict with the Ninth Circuit *Barajas* decision. *Barajas* rejected the *Barajas* dissent's contention that debarment proceeding were not an "alternative remedy" because debarment "need not be based on commission of fraud." The Ninth Circuit rejected the argument holding despite the differences between the FCA and a debarment proceeding stating:

> "It would be inconsistent not only with the plain meaning of the broad language employed by the statute, but also with the purpose of the statute, to allow the government to obtain from a qui tam defendant <u>a remedy that could have been obtained in an already-filed FCA action</u>, and then to argue that the proceeds of that remedy need not be shared with the whistleblower because the remedy was not an 'alternative remedy' within the meaning of the FCA." *Barajas, supra,* 258 F.3d 1004, 1012. (emphasis added)

Following *Rille/Conyers* overlapping facts test, and that the Relators' FCA action sought the same damages to re-do the false radiological work of TtEC at Hunters Point as the USA recovered under CERCLA, the Relators have a right to share in the CERCLA settlement.

UNITED STATES' AND RELATORS' COMBINED STATEMENT ON RELATOR'S SHARE
3:13-CV-3835 JD                                         5

### UNITED STATES' STATEMENT ON RELATOR'S SHARE

The United States of America ("United States") respectfully submits this statement on (1) the scope of settlement proceeds from which the relators should receive a share, and (2) the proposed share amount.

### 1. Relators Are Not Entitled to a Share of the CERCLA Settlement

A relator's share is available only for the United States' $57 million False Claims Act ("FCA") settlement with Tetra Tech EC, Inc. ("Tetra Tech"). ECF No. 452 (the "FCA Settlement"). At the March 27, 2025 hearing, Relators conceded that the FCA Settlement is fair, adequate, and reasonable while continuing to demand a share of the CERCLA Settlement. Relators are not entitled to such a share. As shown in the United States' filings (ECF Nos. 460 & 472), the CERCLA Settlement is neither an "alternate remedy" pursuant to 31 U.S.C. § 3730(c)(5) nor part of the FCA "claim" under 31 U.S.C. § 3730(d)(1). Relators' demand for CERCLA funds conflates these bodies of law. Section (c)(5) of the FCA addresses a relator's ability to recover from an "alternate" remedy—that is, a non-FCA recovery such as CERCLA. Relators fail under Section (c)(5) because: (1) the United States intervened and alternate remedies are only available when the government has *not* intervened (*U.S. ex. rel. Barajas v. U.S.*, 258 F.3d 1004, 1010 (9th Cir. 2010)); and, independently, (2) CERCLA does not require proving the same type of falsity or fraud that is necessary under the FCA (*U.S. ex. rel. Kennedy v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021); *U.S. ex rel. Vt. Nat'l Tele Co.v. Northtsar Wireless*, 2025 WL 1113407 (D.D.C. Apr. 15, 2025) (rejecting alternate remedy under type-of-claim analysis and deeming "factual overlap" legally insufficient)). Relators focus on "factual overlap" between the CERCLA and FCA claims, but that is only relevant to relator's share when the contested funds *all* arise from FCA claims and settlements. In *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 371 (8th Cir. 2015), factual overlap was relevant because the government asserted it settled a different *FCA* claim than that plead by the relator. Likewise, in *United States ex rel. Conyers v. Conyers*, 108 F.4th 351, 355 (5th Cir. 2024), factual overlap mattered because the government "notified the parties and the court that it was no longer pursuing [relator's] original claims" and settled on different *FCA* theories. When funds are *not* from a separate FCA settlement, Section (c)(5) "alternate remedy" law controls and, here, bars a CERCLA recovery. ECF Nos. 460 at 15; 472 at 15-17.

### 2. The United States' Proposed Relator's Share and Supporting Analysis

***Governing Standards*:** When the United States intervenes in an action, the FCA provides for a

relator's share of "at least 15 percent but not more than 25 percent depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). While there is no precise formula for measuring "substantial contribution," a share substantially above 15% is reserved for cases "where the person carefully develops all the facts and supporting documentation necessary to make the case," provides the detailed record to the government and remains an active participant in the litigation. 132 Cong. Rec. H9389. The Senate identified three factors as relevant to the inquiry: (1) the significance of the information provided by the relator, (2) the relator's contribution to the final outcome, and (3) whether the government previously knew such information. S. Rep. 99-345 at 28 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266, 5293. The Department of Justice has its own internal, non-binding guidelines to possibly increase a relator share, including if the relator provided first-hand information or testified in deposition or at trial; or if relator and counsel provided substantial assistance during the investigation and litigation or supported and cooperated with the government. These guidelines can support a decrease in share if, among other things, the relator participated in the fraud; delayed reporting the fraud; lacked knowledge of the fraud; or if relator and counsel hampered the government's efforts or unreasonably opposed its positions. *See U.S. ex rel. Williams v. Williams*, 2023 WL 3179331, *4 fn. 53 and 54. (D. Utah May 1, 2023) (setting forth the complete DOJ guidelines).

An award approaching 25% is reserved for relators who "actively and uniquely assist the government in the prosecution of the case," and the burden of proof is on the relator to establish that relator's contribution warrants any particular share amount. *Zediker v. OrthoGeorgia*, 857 F. App'x 600, 604 (11th Cir. 2021) (per curiam); *see, e.g., United States v. General Electric*, 808 F. Supp. 580, 583 (S.D. Ohio 1992); *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 844 F. Supp. 2d 78 (D.D.C. 2012) (awarding 20% where relator "provided extensive first hand details of the fraud to the government").

The FCA further establishes that "[w]hen a person brings a *[qui tam]* action, no person other than the Government may . . . bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Known as the first-to-file rule, the purpose of this provision "is to provide incentives to relators to promptly alert the government to the essential facts of a fraudulent scheme while also keeping in mind the FCA's goal of maintaining the balance between encouraging citizens to report fraud and stifling parasitic lawsuits." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 302 (4th Cir.

UNITED STATES' AND RELATORS' COMBINED STATEMENT ON RELATOR'S SHARE
3:13-CV-3835 JD                                   7

2017) (internal citations omitted). Only the first-to-file relator can claim a relator's share of the settlement proceeds for each claim. Courts apply the "material elements test" to determine whether a later-filed complaint is based on the same facts as an earlier filed complaint. *Id. See also*, *Stein v. Kaiser Found. Health Plan, Inc*., No. 22-15862, 2024 U.S. App. LEXIS 28922, at \*4 (9th Cir. Nov. 14, 2024). "[D]ifferences in specifics—such as geographic location or added facts—will not save a subsequent case." *Carson,* 851 F.3d at 302. (citation omitted). Moreover, the first-to-file rule applies even if multiple relator suits are consolidated or the government intervenes in multiple suits because the rule is an "absolute, unambiguous exception-free rule." *Id.* at 305 (finding "no merit" in relator's argument that his later-filed case should survive the first-to-file rule because the government intervened).

  ***Analysis*:** Three separate groups of relators filed three separate *qui tam* complaints alleging fraud by Tetra Tech at the Hunters Point Naval Shipyard ("HPNS").[1] The FCA Settlement Agreement allocates $51,870,000 (plus interest) to allegations concerning soil sampling fraud and $5,130,000 (plus interest) to allegations concerning the building scan fraud. Relators do not contest this allocation.

  ***A.  Relator's Share for Soil Sampling Fraud*:** The governing standards support a share of no more than 20 percent (that is, $10,374,000 plus a share of interest accrued) of the $51,870,000 in settlement funds allocated to soil sampling fraud to be paid only to the relators in Case No. 3:13-cv-3835 (Jahr, Andrews, Bowers, and Jackson (the "*Jahr* Relators")). Because Relators Smith (Case No. 3:16-cv-01106-JD), Wadsworth and McLean (Case No. 3:16-cv-1107-JD) filed their complaints alleging soil sampling fraud in 2016, over 2 years after the *Jahr* Relators filed their complaint, the first-to-file rule prohibits Smith, Wadsworth, and McLean from being awarded a relator's share for the soil fraud allegations. This Court has already addressed this first-to-file issue in its order on the motion to dismiss the Relators' Combined Third Amended Complaint, finding that the soil allegations in the 2016 complaints are "repetitive of the Original *Jahr* complaint" and that the soil allegations in Smith's 2016 complaint are also precluded by the FCA's public disclosure bar. *See* ECF No. 371 at 11.

  A 20 percent share for the *Jahr* Relators is fair and reasonable given their contributions to the case. The *Jahr* Relators assisted the United States during the pre-litigation investigation, particularly

---

[1] All three separate groups of relators are represented by the same attorney, David Anton.

Relators Andrews and Bowers. Relator Bowers provided helpful testimony during his deposition, which further supports an upward adjustment from 15%. Counsel for the *Jahr* Relators aided the United States during the investigation phase of this matter by organizing and communicating his clients' knowledge and helping to identify and describe the various companies that worked at HPNS.

However, several factors require a downward adjustment. ***First***, the *Jahr* Relators lacked detailed knowledge about the soil fraud. While their complaint discussed soil fraud in general, the *Jahr* Relators lacked specific or detailed knowledge to guide the United States' investigation. The *Jahr* Relators did not (i) identify the key individuals involved in the scheme (including the two Tetra Tech employees who later pleaded guilty to federal crimes in connection with their work at HPNS), (ii) specify dates or locations at HPNS where the fraud occurred, or (iii) describe how the fraudulent scheme was carried out. The United States devoted substantial effort and resources to develop facts and evidence in support of the allegations preceding this litigation, including interviewing dozens of witnesses, analyzing voluminous document productions from Tetra Tech, and engaging two consulting firms to assess the scope of the fraudulent soil sampling and to quantify resulting damages.

***Second***, Relators did not provide substantial assistance to the United States during the litigation. To the contrary, Relators asked the United States to provide them with substantial assistance including requests on multiple occasions for the United States to review and transmit documents from discovery productions to them.

***Third,*** Relators unreasonably opposed the government's positions in this litigation such that, if Relators were successful, it would have hampered the government's efforts. As one example, the Relators, without notice to the United States, joined a letter brief that, if granted, would have unfairly limited the number of depositions that the United States could notice and take in this case. Case No. 3:20-cv-1485, ECF No. 271. Relators also unreasonably opposed the United States' and Tetra Tech's stipulation for a discovery pause to finalize the settlement agreement. Case No. 3:13-cv-3835, ECF No. 443. Had the stipulation not been granted, the United States would have been at a significant disadvantage in litigating (and eventually trying this case to a jury) if the settlement agreement had not been executed.

***B. Relator's Share for Building Scan Fraud***: The governing standards likewise support a share of no more than 20 percent (that is, $1,026,000 plus a share of interest accrued) of the $5,130,000 in

UNITED STATES' AND RELATORS' COMBINED STATEMENT ON RELATOR'S SHARE
3:13-CV-3835 JD                    9

settlement funds allocated to building scan fraud, to be paid only to Relator Smith in Case No. 3:16-cv-01106-JD. None of the other relators are entitled to a share of the FCA Settlement allocated to building scan fraud. The *Jahr* Relators do not allege any facts related to building scan fraud. Relators Wadsworth and McLean likewise do not allege any facts about building scan fraud at HPNS, and each conceded at their depositions that they had no personal knowledge of the alleged fraud.[2]

By contrast, Relator Smith provided first-hand details of the alleged building scan fraud to the United States. He identified multiple individuals who participated or directed that fraud, and explained in detail how the building scan fraud was executed. Smith also assisted the United States during its investigation by touring the HPNS site with investigators and pointing out the specific locations where the fraudulent activities occurred. This information contributed to the final outcome in this litigation.

However, multiple factors necessitate a downward adjustment of the share percentage. The primary factor is Smith's admission, both in a declaration and in deposition testimony, that he participated extensively in the fraud at HPNS. Ex. A, Smith Decl. at ¶¶ 20, 25. *See also,* Ex. B, Smith Dep. 331:13–340:4. Additionally, Smith did not promptly report the fraud to the government but waited years to share this information. Finally, Smith joined in the Relators' unreasonable opposition to the United States' positions in this litigation on multiple occasions, as noted above, to the potential detriment of the government's efforts.

**C. Relators' Exhibit**:  The United States understands that relators will file (under seal) a 98-page narrative about their contributions to the case. The United States does not admit to the accuracy, relevance, or propriety of this document, which exceeds the page limits set by the Court's order.

**D. Order on the FCA Settlement**: Determining the relator's share is not a precondition for finalizing the FCA Settlement. Because the relators do not contest its fairness, the United States respectfully requests that the Court issue an order overruling objections to the FCA Settlement and allowing performance of the Settlement Agreement. ECF No. 476 (Proposed Order).

---

[2] Relator McLean testified that he had no personal knowledge of the fraudulent building scans or soil fraud at HPNS. *See* Ex. C, McLean Dep. 276:3–279:13. Relator Wadsworth also testified that he had no personal knowledge of any conspiracy to commit fraud at HPNS and the information in the complaint came from his attorney. *See* Ex. D, Wadsworth Dep. 293:10–294:19 and 326:10–327:11.

UNITED STATES' AND RELATORS' COMBINED STATEMENT ON RELATOR'S SHARE
3:13-CV-3835 JD                                    10

DATED: April 28, 2025

Respectfully submitted,

*/s/ David C. Anton*
David C. Anton (Cal. SBN 94852)
Margaret E. Roeckl (Cal SBN 129783)
Law Office of David Anton
1717 Redwood Lane
Davis, CA 95616
Tel: 530-220-4435
Email: davidantonlaw@gmail.com

*Counsel for FCA Relators*

*/s/ Jonathan K. Hoerner*
JAMIE YAVELBERG
PATRICK M. KLEIN
A. THOMAS MORRIS
JONATHAN K. HOERNER
ADAM J. DICLEMENTE
Attorneys, Civil Division
United States Department of Justice

      P.O. Box 261, Ben Franklin Station
      Washington, D.C. 20044
      Telephone: (202) 307-6946
      Email: jonathan.k.hoerner@usdoj.gov

PATRICK D. ROBBINS
Acting United States Attorney

*/s/ Savith Iyengar*
SAVITH IYENGAR
MICHAEL T. PYLE
Assistant United States Attorneys

      150 Almaden Boulevard, Suite 900
      San Jose, California 95113
      Telephone: (408) 535-5087
      FAX: (408) 535-5081
      Email: savith.iyengar@usdoj.gov

*Attorneys for the United States of America*