UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES ex rel. JAHR et al., <br><br> Plaintiffs, <br><br> v. <br><br> TETRA TECH EC, INC. et al., <br><br> Defendants. | Case No. 13-cv-03835-JD <br><br> **ORDER RE UNITED STATES' SETTLEMENT AND RELATORS' SHARES UNDER FALSE CLAIMS ACT** |
| UNITED STATES ex rel. SMITH, <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH EC, INC. et al., <br><br> Defendants. | Case No. 16-cv-01106-JD |
| UNITED STATES ex rel. WADSWORTH et al., <br><br> Plaintiffs, <br><br> v. <br><br> TETRA TECH EC, INC. et al., <br><br> Defendants. | Case No. 16-cv-01107-JD |

The United States and Tetra Tech EC, Inc. have advised the Court of an agreement to settle the first through fourth causes of action in the United States' Second Amended Complaint in Intervention. Dkt. No. 452, Ex. 1.[1]  The claims subject to the settlement are: (1) False Claims Act: Presentation of False Claims (31 U.S.C. § 3729(a)(1)(A)); (2) False Claims Act: False

---

[1] Docket number references are to the ECF docket for *Jahr*, Case No. 13-cv-03835-JD.

Statement Material to a False Claim (31 U.S.C. § 3729(a)(1)(B)); (3) Common Law Fraud; and (4) Breach of Contract. Dkt. No. 372 ¶¶ 143-60. Tetra Tech EC has agreed to pay to the United States $57,000,000, plus interest, to settle these claims. Dkt. No. 452, Ex. 1 at 3 ¶ 1. An attachment to the agreement captioned, "United States' Allocation of the Settlement Amount," states that $51,870,000 of the settlement amount is allocated to the "Soil Fraud Allegations," and $5,130,000 is allocated to the "Building Scan Fraud Allegations." *Id.*, Attachment A.

The United States has requested that the Court approve this settlement as "fair, adequate, and reasonable under all the circumstances" under 31 U.S.C. § 3730(c)(2)(B). This order addresses that request, as well as issues raised by the *qui tam* relators about the share of the settlement that they should be awarded under 31 U.S.C. § 3730(d).

I.  **WHETHER RELATORS ARE ENTITLED TO A SHARE OF THE SEPARATE CERCLA SETTLEMENT**

The United States' fifth cause of action in its Second Amended Complaint in Intervention was a claim under CERCLA, 42 U.S.C. § 9607(a), for the recovery of response costs. Dkt. No. 372 ¶¶ 161-78. The United States and Tetra Tech EC settled this claim separately and submitted a proposed consent decree, which the Court has entered. *See* Dkt. Nos. 453, 503.

The consent decree includes a provision under which Tetra Tech EC agrees and is ordered to pay to the U.S. Department of the Navy the sum of $40,000,000. Dkt. No. 503 at 5 ¶ 5. The relators say that they "have a right to share in the CERCLA settlement" in addition to the separate FCA settlement amount. Dkt. No. 487 at 5.

Not so. "The plain text of the False Claims Act confines *qui tam* plaintiffs to recoveries only for claims seeking relief based on the type of fraud or falsehoods covered by that statute." *Unites States ex rel. Kennedy v. Novo A/S*, 5 F.4th 47, 49 (D.C. Cir. 2021). Because the CERCLA claim is not a "type of claim cognizable under the False Claims Act" and does not have the element that Tetra Tech EC engaged in "a false or fraudulent effort to obtain money or property from the United States," *id.*, the relators do not have an entitlement to receive a share of the $40 million paid by Tetra Tech EC as part of the CERCLA consent decree.

2

## II. APPROVAL OF THE FCA SETTLEMENT AS FAIR, ADEQUATE, AND REASONABLE UNDER ALL THE CIRCUMSTANCES

The False Claims Act provides for the Court to approve the proposed FCA settlement as "fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B); *see also United States ex rel. Sharma v. Univ. of S. Cal.*, 217 F.3d 1141, 1143 (9th Cir. 2000) ("The FCA provides that the district court must approve a proposed settlement in a qui tam case (in which a party sues on behalf of the government)"). The United States asks the Court to so approve. Dkt. Nos. 472, 476.

The request is declined on the record as it currently stands. It is true that, in a *qui tam* case, the United States is "agreeing to compromise with respect to its own injuries only, not those of the relator or other absent parties." *United States v. Everglades College, Inc.*, 855 F.3d 1279, 1288 (11th Cir. 2017), *abrogated on other grounds by United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023). As a consequence, the usual settlement approval factors under Federal Rule of Civil Procedure 23 are of limited guidance in this context, and the Court "must afford some degree of respect" to the government's decision to settle. *Id*. at 1288-89.

Even so, "given the FCA's mandate that [courts] review settlements for fairness, [courts] cannot just rubber stamp the government's justifications." *Id*. at 1288-89. That in effect is what the government asks for here. It did not explain in a meaningful way the rationale for entering into this particular settlement, and presented only a quarter of a page of bromides that would apply to any decision to settle a case. *See* Dkt. No. 472 at 5 ("The FCA Settlement is rationally related to accomplishing several valid governmental purposes. These include the certainty of substantial financial recovery ($57 million) weighed against the uncertainty of summary judgment, trial, and appeals; the desire to avoid expending additional governmental resources; and the significant deterrent message of a settlement of this magnitude to other contractors."). This shortcoming is all the more striking because it is not at all obvious that the settlement is fair and reasonable in light of radiation remediation concerns and other serious circumstances present in this case. The government will be given an opportunity to say more in a supplemental submission as detailed below.

3

The government has also urged the Court to approve the FCA settlement before the issue of the relators' shares has been settled. *See* Dkt. No. 487 at 10 ("Determining the relator's share is not a precondition for finalizing the FCA Settlement. Because the relators do not contest its fairness, the United States respectfully requests that the Court issue an order overruling objections to the FCA Settlement and allowing performance of the Settlement Agreement."). But the government did not acknowledge, let alone substantively address, the question of what should happen to the contested portion of the relators' shares in the meantime. *See* James B. Helmer, Jr., *False Claims Act: Whistleblower Litigation* Ch. 16.X. (7th ed. 2017) ("When a Dispute Arises Over the Relator's Share, What Happens to the Contested Portion of the Relator's Share?"). This issue should be tackled in the supplemental submission.

### III. RELATORS' SHARES OF THE SETTLEMENT PROCEEDS

The relators at issue are: Arthur R. Jahr, III, Elbert G. Bowers, Susan V. Andrews, and Archie R. Jackson (Jahr relators); relator Anthony Smith; and relators Donald K. Wadsworth and Robert McLean (Wadsworth relators).

The relators ask for a 23% share of the settlement proceeds "as a group, and any case specific allocation deferred." Dkt. No. 487 at 1. The United States suggests that the Jahr relators should be awarded (as a group) 20% of the $51,870,000 allocated to the "soil sampling fraud," and that Smith, Wadsworth, and McLean are precluded from any award from this amount by "the first-to-file rule." *Id*. at 8. For the $5,1300,000 amount that the United States has allocated to "building scan fraud," the United States says that only relator Smith should receive a 20% award, because none of the other relators alleged any facts related to building scan fraud at HPNS. *Id*. at 9-10.

The suggestions from both sides were hopelessly vague and deficient. Among the many issues the parties failed to address are:

1) The analysis of the relators' shares must be conducted on a claim-by-claim basis. *See United States ex rel. Merena v. SmithKline Beecham Corporation*, 205 F.3d 97, 106 (2d Cir. 2000). The United States' allocation of its settlement proceeds to "soil fraud allegations" and "building scan fraud allegations" is likely too general to be helpful here. *See* Dkt. No. 452, Ex. 1, Attachment A. How should the settlement proceeds be allocated on a more detailed claim-by-claim basis, especially vis-à-vis the specific claims that were alleged in each relator's

4

*qui tam* complaint?  What is the evidentiary support for any proposed allocation?  *See Merena*, 205 F.3d at 107.

2) To the extent the United States argues that any of the relators are barred from recovering an award by the first-to-file rule or any other FCA statutory bar, this too must be done on a claim-by-claim basis and not in broad strokes, as the United States has done in its current filing.  *See* Dkt. No. 487 at 8-10.

3) Arguments about the extent to which any relators have "substantially contributed to the prosecution of the action" (or failed to do so) under 31 U.S.C. § 3730(d)(1) must be made in a succinct manner with specific evidentiary support.  The parties have failed to do so.  The relators' 98-page "Statement of Relators' Contribution to Prosecution of Action," Dkt. No. 490, is stricken, and the associated sealing motion is terminated, Dkt. No. 489.[2]

4) For any proposals that an award be made to any relators as a group, the proposing party must address "whether the Court may properly award any recovery jointly to the pertinent relators, or whether it must specify each relator's award."  *Merena*, 205 F.3d at 108 n.11.

## IV. NEXT STEPS

The parties are directed to file by December 5, 2025, supplemental briefs directed to FCA settlement approval and the relators' shares.  While the parties are not limited to the issues raised in this order, a failure to address an issue expressly highlighted by this order will be deemed a waiver.  Each side may have up to 30 pages for their supplemental briefs, and the Court expects the filings will be supported by declarations and other evidentiary submissions.  If the relators wish to make separate submissions, they may request the Court's permission to do so but will need to explain why a separate submission is necessary and appropriate.  The relators may also request to file one combined brief for their common issues, with separate "add-on" briefs for any individual issues.

After receiving the submissions on December 5, 2025, the Court will call for responses or set an evidentiary hearing, as warranted.

**IT IS SO ORDERED.**

Dated:  November 7, 2025

JAMES DONATO
United States District Judge

---

[2] The relators' proposed order, Dkt. No. 491, is also stricken.